**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated, | |
| | Case No. 22-cv-7014 |
| Plaintiffs, | |
| | Hon. Virginia M. Kendall |
| v. | |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ......................................................................... 1

ARGUMENT ...................................................................................................... 3

I.      Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6). .......................... 3

      A.      Legal Standard ...................................................................................... 3

      B.      Plaintiffs' Claims Are Barred by the McCarran-Ferguson Act. ........... 4

      C.      Plaintiffs Have Not Sufficiently Alleged a Claim for Disparate Impact. .............. 7

            1.      Plaintiffs Fail to Plausibly Allege a Statistical Disparity........................... 7

            2.      Plaintiffs Fail to Identify any Specific Policy. ............................. 9

            3.      Plaintiffs Fail to Allege a Robust Causal Connection. ............................. 10

      D.      Neither Plaintiff Has Stated a Claim to Relief Under § 3605. ............................. 12

      E.      Neither Plaintiff Has Stated a Claim for Relief Under § 3604. ......................... 13

            1.      Neither Plaintiff Has Adequately Alleged a Violation of § 3604(a). ....... 13

            2.      Neither Plaintiff Has Alleged a Violation of § 3604(b)........................... 14

II.     Huskey's Request For Injunctive Relief Should Be Dismissed Under Rule 12(b)(1)...... 15

CONCLUSION.................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page

CASES

*Bloch v. Frischholz*,
  587 F.3d 771 (7th Cir. 2009) ...................................................................13

*Brown v. Glanz*,
  No. 12-cv-587, 2013 WL 6909959 (N.D. Okla. Dec. 31, 2013) ...........................10

*Camarena v. Safeway Ins. Co.*,
  No. 00 C 5826, 2002 WL 472245 (N.D. Ill. Mar. 27, 2002) ................................6, 7

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*,
  200 F.3d 1102 (7th Cir. 2000) ...................................................................5

*Cnty. of Cook, Ill. v. Wells Fargo & Co.*,
  No. 14 C 9548, 2022 WL 17752387 (N.D. Ill. Dec. 19, 2022) ........................8, 12

*Cnty. of Cook v. Bank of Am. Corp.*,
  584 F. Supp. 3d 562 (N.D. Ill. 2022) ...........................................................8

*Commonwealth Ins. Co. v. Stone Container Corp.*,
  No. 99 C 8471, 2001 WL 477151 (N.D. Ill. May 3, 2001) ....................................5

*Connectors Realty Grp. Corp. v. State Farm Fire and Cas. Co.*,
  No. 19 C 743, 2019 WL 5064699 (N.D. Ill. Oct. 9, 2019) ..................................8, 9

*Cox v. City of Dallas, Tex.*,
  430 F.3d 734 (5th Cir. 2005) ....................................................................13

*Cramer v. Ins. Exch. Agency*,
  675 N.E.2d 897 (Ill. 1996) ........................................................................5

*Davis v. Wells Fargo Bank*,
  685 F. Supp. 2d 838 (N.D. Ill. 2010) ..........................................................13

*Doe v. Mut. of Omaha Ins. Co.*,
  179 F.3d 557 (7th Cir. 1999) ..................................................................4, 7

*Flores v. United Airlines*,
  426 F. Supp. 3d 520 (N.D. Ill. 2019) ...........................................................6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ...............................................................................15

*Goplin v. WeConnect, Inc.*,
    893 F.3d 488 (7th Cir. 2018) ..................................................................10

*Grecian Delight Foods, Inc. v. Great Am. Ins. Co. of N.Y.*,
    365 F. Supp. 3d 948 (N.D. Ill. 2019) ........................................................5

*Green v. Diamond*,
    No. 14 C 2601, 2014 WL 5801351 (N.D. Ill. Nov. 7, 2014) ................13

*Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    770 F.3d 676 (7th Cir. 2014) ....................................................................5

*Home Quest Mortg. LLC v. Am. Fam. Mut. Ins. Co.*,
    340 F. Supp. 2d 1177 (D. Kan. 2004) ....................................................13

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
    No. 3:17-cv-206, 2017 WL 3498335 (N.D. Tex. Aug. 16, 2017) ...........11

*Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*,
    No. 3:08-cv-546, 2016 WL 4494322 (N.D. Tex. Aug. 26, 2016) .......9, 10

*Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*,
    55 F.4th 517 (7th Cir. 2022) ....................................................................4

*N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*,
    978 F.2d 287 (7th Cir. 1992) ................................................4, 12, 13, 14

*Nationwide Mut. Ins. Co. v. Cisneros*,
    52 F.3d 1351 (6th Cir. 1995) ..................................................................15

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
    910 F.3d 293 (7th Cir. 2018) ....................................................................3

*O'Brien v. Vill. of Lincolnshire*,
    955 F.3d 616 (7th Cir. 2020) ..................................................................10

*Ojo v. Farmers Grp., Inc.*,
    356 S.W.3d 421 (Tex. 2011)....................................................................6

*Ojo v. Farmers Grp., Inc.*,
    600 F.3d 1201 (9th Cir. 2010) ..................................................................6

*Owens v. Nationwide Mut. Ins. Co.*,
    No. 3:03-cv-1184, 2005 WL 1837959 (N.D. Tex. Aug. 2, 2005) ...........15

*Prop. Cas. Insurers Ass'n of Am. v. Donovan*,
    66 F. Supp. 3d 1018 (N.D. Ill. 2014) ......................................................4

*Purtue v. Wis. Dep't of Corr.*,
   963 F.3d 598 (7th Cir. 2020) ..................................................................8

*Saunders v. Farmers Ins. Exch.*,
   537 F.3d 961 (8th Cir. 2008) ..................................................................6

*Simic v. City of Chi.*,
   851 F.3d 734 (7th Cir. 2017) ................................................................15

*Sullivan v. Liberty Mut. Ins. Co.*,
   606 F.Supp.3d 796 (N.D. Ill. 2022) ......................................................15

*TBS Grp., LLC v. City of Zion, Ill.*,
   No. 16-cv-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) ...............11

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
   576 U.S. 519 (2015)..............................................................7, 9, 11, 12

*Western Howard Corp. v. Indian Harbor Ins. Co.*,
   No. 10-cv-7857, 2011 WL 2582353 (N.D. Ill. June 29, 2011)................5

*Wetzel v. Glen St. Andrew Living Community, LLC*,
   901 F.3d 856 (7th Cir. 2018) ................................................................14

## Statutes

215 ILCS 5/154.6 ..........................................................................................4

215 ILCS 5/154.7 ..........................................................................................4

215 ILCS 5/155 ..............................................................................................5

15 U.S.C. § 1012 .................................................................................1, 4, 5, 6

42 U.S.C. § 3604.................................................................................*passim*

42 U.S.C. § 3605.................................................................................*passim*

## Rules

Fed. R. Civ. P. 12(b)(1).............................................................................1, 15

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 3

## Other Authorities

50 Ill. Admin. Code tit. 50, § 919.50 ...........................................................8

## INTRODUCTION

Plaintiffs Jacqueline Huskey and Riian Wynn allege that they are Black homeowners whose claims for damage to their insured properties were improperly handled by State Farm Fire and Casualty Company ("State Farm"). Plaintiffs also conclusorily allege that State Farm uses an unspecified combination of "algorithmic decision-making tools" in its claim-handling process that somehow disparately impacts its handling of the claims of Black policyholders, in violation of §§ 3604 and 3605 of the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.* Plaintiffs' complaint should be dismissed pursuant to Rule 12(b)(6) because the claims are preempted under the McCarran-Ferguson Act, Plaintiffs do not plausibly allege a disparate-impact claim in any event, and neither Plaintiff adequately alleges the elements of an FHA violation. In addition, Huskey's request for an injunction should be dismissed under Rule 12(b)(1) for lack of standing.

## PLAINTIFFS' ALLEGATIONS

### *Huskey's Alleged Property Damage and Insurance Claim with State Farm*

In June 2021, Plaintiff Huskey's home in Matteson, Illinois, which was insured under a State Farm homeowners policy, was allegedly damaged by hail. (Dkt. 23, Am. Compl., ¶ 11.) Huskey asserts that she promptly submitted an insurance claim for her purported loss, but did not receive a response from State Farm until July 22, 2021. (*Id.*) According to Huskey, State Farm sent an adjuster to inspect the damage a few weeks later, but the adjuster initially limited that inspection to the interior of her property. (*Id.*) After more calls with State Farm, Huskey alleges that State Farm sent an adjuster to inspect her roof. (*Id.*) Huskey asserts that State Farm approved payments for internal repairs approximately four months after she submitted her claim but, despite twenty to thirty conversations regarding the claim, State Farm has yet to approve any payments for external damage. (*Id.*) Huskey alleges that, as "a result of State Farm's delay," her kitchen and two of her bathrooms have been damaged by water, which decreased the value of her home. (*Id.*)

***Wynn's Alleged Property Damage and Insurance Claim with State Farm***

In March 2022, a storm allegedly damaged the roof of Plaintiff Wynn's State Farm-insured townhome in Evanston, Illinois. (*Id.* ¶ 12.) Wynn submitted a claim to State Farm, which State Farm resolved, although Wynn alleges it took more than eight months (and at least fifty interactions with State Farm) to do so. (*Id.*) Wynn alleges that her claim took approximately three months longer to process than a claim for similar damage submitted to State Farm by her white neighbor, and that her home sustained further damage during that time. (*Id.*)[1]

***Plaintiffs' Allegations of Discrimination***

Plaintiffs allege on information and belief that State Farm's use of an unspecified combination of "algorithmic decision-making tools" causes claims submitted by Black policyholders to receive "greater scrutiny." (*Id.* ¶¶ 3–6, 38–41.) Plaintiffs base this alleged belief in part on information purportedly derived from a 2021 survey by YouGov, an international research-data and analytics group that offers "opinion data" and data "on consumer attitudes." (*Id.* ¶¶ 14–20; https://today.yougov.com/about/.) According to Plaintiffs, YouGov surveyed approximately 800 white or Black individuals in the Midwest (defined as Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin) who had State Farm homeowners policies. (Dkt. 23 ¶ 14.) Plaintiffs allege the survey showed race-based differences in: (1) the time it took State Farm to pay claims; (2) the extent to which State Farm requested "supplemental paperwork" during its handling of those claims; and (3) the "number of interactions" claimants had with State Farm representatives before the claims were paid. (*Id.*)[2]

---

[1] She also asserts that she "lost use of her home" during the time it took to process her claim, although she provides no facts or explanation to support that conclusory allegation. (Dkt. 23 ¶ 12.)

[2] The YouGov survey appears to have been initiated by Plaintiffs' attorneys. *See* https://www.law.nyu.edu/news/deborah-archer-cril-alexander-rose-state-farm (naming Deborah Archer of NYU Law's Center for Race, Inequality, and the Law (CRIL), and the law firm Fairmark Partners, as having worked with YouGov to conduct the study).

Plaintiffs claim, as noted above, that these alleged disparities resulted from State Farm's purported use of "algorithmic decision-making tools" (*id.* ¶¶ 4, 12), but they do not allege how State Farm supposedly uses such tools, or how the use of such tools supposedly caused those disparities. Plaintiffs instead allege generally, again on information and belief, that State Farm collects various "data and information on its policyholders," and that State Farm uses some (unspecified) "combination" of claim-related tools to (somehow) "leverage" those data. (*Id.* ¶¶ 34, 36, 38–41.)

***Plaintiffs' Suit Against State Farm***

Huskey filed this putative class action against State Farm in December 2022, asserting that State Farm's claim-handling methods disparately impact Black policyholders in violation of §§ 3604 and 3605 of the FHA. (Dkt. 1, Compl., ¶¶ 67–81.) Huskey alleged that State Farm uses "a combination of internal and third-party tools"—including, in particular, a tool called the "FRISS Score"—"to process homeowners insurance claims." (*Id.* ¶¶ 32, 37–40.) Around January 20, 2023, however, FRISS, Inc., sent a sworn letter to Plaintiffs' counsel informing them that State Farm has never been a customer of FRISS and does not use the FRISS Score. *See The Connectors Realty Group Corp. v. State Farm Fire and Cas. Co.*, No. 19-cv-743 (N.D. Ill.), Dkt. 245-6. In March 2023, Huskey amended her complaint, adding Wynn as plaintiff, abandoning her FRISS theory, and devising new and different "information and belief" allegations as to the "algorithmic decision-making tools" supposedly used by State Farm. (Dkt. 23 ¶¶ 12, 37–38.)

## ARGUMENT

### I. Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6).

#### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff "must allege enough facts to state a claim to relief that is plausible on its face." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*,

910 F.3d 293, 299 (7th Cir. 2018) (citation and internal quotation marks omitted). While well-pleaded factual allegations are viewed in the plaintiff's favor, legal conclusions and conclusory allegations "are not entitled to this presumption of truth." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022).

## B. Plaintiffs' Claims Are Barred by the McCarran-Ferguson Act.

No reported case in the Seventh Circuit has applied FHA disparate-impact liability to insurers, and there are strong arguments against doing so. *Cf. Prop. Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1027–29 (N.D. Ill. 2014) (discussing cases); *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 290–91 (7th Cir. 1992) (questioning whether the FHA allows for such claims). But even if such claims were cognizable, Plaintiffs here cannot proceed because the disparate-impact claims they seek to assert are barred by the McCarran-Ferguson Act ("McCarran-Ferguson"), 15 U.S.C. § 1011, *et seq.*

McCarran-Ferguson "forbids construing a federal statute to 'impair … or supersede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance." *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 563 (7th Cir. 1999) (quoting 15 U.S.C. § 1012(b)). While the FHA has been held to apply to some insurance-related activities, the statute itself does not "specifically relate[] to the business of insurance." 15 U.S.C. § 1012(b). And construing it to allow Plaintiffs' claims here would impermissibly interfere with Illinois' insurance regulatory regime.

Illinois closely regulates the claim-handling practices that Plaintiffs say caused their alleged injuries. *See* 215 ILCS 5/154.6(c)–(d). With limited exception, Illinois law "vests the State Director of Insurance"—not private individuals—"with the authority to penalize such practices" when appropriate. *Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 330 (7th Cir. 2022) (discussing 215 ILCS 5/154.6 and 5/154.7). Individual policyholders may challenge an insurer's conduct in

court only: (1) through Section 155 of the Illinois Insurance Code, which "provides an extracontractual remedy for … vexatious and unreasonable" claim handling, *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996) (discussing 215 ILCS 5/155); or (2) by alleging "a separate and independent tort," *id.* at 904—that is, tortious conduct *beyond* mere unreasonable claim handling (such as fraudulent inducement, *see Commonwealth Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2001 WL 477151, at *3 (N.D. Ill. May 3, 2001), or tortious interference with contract, *see Grecian Delight Foods, Inc. v. Great Am. Ins. Co. of N.Y.*, 365 F. Supp. 3d 948, 953–54 (N.D. Ill. 2019)).

Plaintiffs here do not allege any tortious conduct "separate and independent" from unreasonable claim handling. *Cramer*, 675 N.E.2d at 904. Their disparate-impact claims are based solely on State Farm's allegedly unreasonable investigation of their insurance claims, and an alleged "failure … to fairly investigate" insurance claims may be raised only through Section 155. *Western Howard Corp. v. Indian Harbor Ins. Co.*, No. 10-cv-7857, 2011 WL 2582353, at *5 (N.D. Ill. June 29, 2011). Section 155, however, not only requires a concomitant "action on the policy," *Cramer*, 675 N.E.2d at 902—which Plaintiffs have not brought—it also applies only to "behavior [that] was *willful*," *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (emphasis added). Plaintiffs' disparate-*impact* claims necessarily do not assert any willful conduct by State Farm. Thus, Plaintiffs' claims conflict and interfere with Illinois insurance law, as they are preempted by (and do not pass muster under) Section 155. The claims are therefore prohibited by McCarran-Ferguson. *Cf. Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 770 F.3d 676, 679 (7th Cir. 2014) (observing that Section 155 is "a state regulation of the insurance business" within the meaning of McCarran-Ferguson).

In addition, Plaintiffs' claims are prohibited by McCarran-Ferguson because adjudicating them would require this Court to assess the actuarial soundness of the prices Plaintiffs paid for their policies—an assessment within the exclusive province of the Illinois Department of Insurance. Although Plaintiffs' complaint focuses on State Farm's alleged claim-handling practices and its supposed "delays" in resolving Plaintiffs' insurance claims, Plaintiffs also complain that those "delays" mean they "receive[d] a less valuable [insurance] product" than did white State Farm policyholders. (Dkt. 23 ¶¶ 6, 52.) In other words, Plaintiffs complain that "the price that they paid" for their policies was too high given the services they received in exchange. (*Id.* ¶ 6.) A court in this Circuit previously held that where a complaint alleges that the insurance services a policyholder has received were "unreasonable in relation to the cost" she paid for them, it is preempted under McCarran-Ferguson. *Camarena v. Safeway Ins. Co.*, No. 00 C 5826, 2002 WL 472245, at *5 (N.D. Ill. Mar. 27, 2002). As the court there explained, to resolve such an alleged overpayment issue, it would have to do precisely what it cannot: "examine the rates [the carrier] charges for the coverage and claims handling services it provides." *Id.* at *7; *see also Flores v. United Airlines*, 426 F. Supp. 3d 520, 538–39 (N.D. Ill. 2019) (dismissing, for the same reason, RICO claims asserting that the plaintiff had "paid too high a premium for her travel insurance").[3] Though styled as claim-handling discrimination, Plaintiffs' allegations here include a similar rate-based component. Because "[s]tate regulation of insurance is comprehensive and includes rate and coverage issues," and because determining the reasonableness of rates charged would therefore result in a federal court "stepping on the toes of state insurance commissioners," Plaintiffs'

---

[3] *Cf. Ojo v. Farmers Grp., Inc.*, 600 F.3d 1201, 1204–05 (9th Cir. 2010) (certifying to the Texas Supreme Court the question of whether Texas law reverse-preempted an FHA disparate-impact claim concerning insurance premium rates); *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 434 (Tex. 2011) (answering in the affirmative); *Saunders v. Farmers Ins. Exch.*, 537 F.3d 961, 967–68 (8th Cir. 2008) (holding that McCarran-Ferguson prohibited similar claims in Missouri).

discrimination claims are likewise precluded. *Camarena*, 2002 WL 472245, at *5–7 (quoting *Mutual of Omaha*, 179 F.3d at 564).

### C. Plaintiffs Have Not Sufficiently Alleged a Claim for Disparate Impact.

Even if one could state an FHA disparate-impact claim against an insurer, Plaintiffs do not do so here. To state an FHA disparate-impact claim, a plaintiff must allege, among other things, that an "artificial, arbitrary, and unnecessary" policy of the defendant has impacted members of one race differently than another. *See* 42 U.S.C. §§ 3604(a), (b); *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542–46 (2015). Where a plaintiff seeks to assert a disparate-impact claim that relies on a statistical disparity, as Plaintiffs do here, the claim "must fail if the plaintiff cannot point to a … policy or policies *causing* that disparity." 576 U.S. at 542 (emphasis added). This "robust causality requirement ensures that racial imbalance does not, without more, establish a prima facie case of disparate impact," and "thus protects defendants from being held liable for racial disparities they did not create." *Id.* (citation and internal brackets, ellipsis, and quotation marks omitted). Plaintiffs here do not even plausibly allege a statistical disparity, much less identify a specific State Farm policy that allegedly caused the supposed disparity.

#### 1. Plaintiffs Fail to Plausibly Allege a Statistical Disparity.

Plaintiffs attempt to allege a race-related statistical disparity by referring to a 2021 survey by YouGov. (Dkt. 23 ¶¶ 14–18.) Plaintiffs' reliance on the YouGov survey, however, is misplaced, for several reasons. First, the lines drawn by the YouGov survey are patently arbitrary: The survey distinguished between claim-handling times of "one month or less" and more than one month, but no explanation is given for why thirty days was considered acceptable while thirty-two days, for

example, was not. (*Id.* ¶ 16.)[4] Similarly, no explanation is given for why YouGov deemed three "interactions" with State Farm employees appropriate but four such "interactions" too many. (*Id.* ¶ 18.) The response categories for the number of such "interactions," moreover, overlap. (*See id.* (purporting to contrast "one to-*three* interactions" with "*three* or more interactions") (emphases added).) The resulting data are therefore nonsensical, and because "the data, nature, and methodology of the analysis are unclear," no inference of a statistically significant disparity may reasonably be drawn from that analysis. *Connectors Realty Grp. Corp. v. State Farm Fire and Cas. Co.*, No. 19 C 743, 2019 WL 5064699, at *7 (N.D. Ill. Oct. 9, 2019) (dismissing disparate-impact claim in part because "deficiencies in the [statistical] analysis" at issue "call[ed] into question [its] validity").

There is also no indication that the YouGov survey controlled for any variables other than race. Courts have rejected as methodologically unreliable or unsound analyses suffering from similar defects. *See Cnty. of Cook v. Bank of Am. Corp.*, 584 F. Supp. 3d 562, 577–81 (N.D. Ill. 2022) (describing as overly, and fatally, "simplistic" a "bivariate statistical model" that did not "control for numerous other variables" that "could account for the statistical disparities … observed"); *see also Cnty. of Cook, Ill. v. Wells Fargo & Co.*, No. 14 C 9548, 2022 WL 17752387, at *3–4 (N.D. Ill. Dec. 19, 2022) (excluding expert opinion in a disparate-impact case based on a similar "bivariate analysis" because there was "no evidence … establish[ing] the reliability of th[at] methodology"). "To raise an inference of discrimination, statistical comparators must be directly comparable to the plaintiff in all material respects …." *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 603 (7th Cir. 2020) (citation and internal quotation marks omitted). There is no

---

[4] The Illinois Administrative Code measures the amount of time in which an insurer must offer payment or provide a written explanation of its decision from the date the insurer completes its investigation and determines liability. *See* 50 ILL. ADMIN. CODE tit. 50, § 919.50(a). Nothing in the Code suggests that thirty days from submission of a claim is a meaningful metric.

indication that the insurance claims of the YouGov survey respondents were materially comparable to Plaintiffs' insurance claims (or to one another), such as with respect to the type, scope, or complexity of the claimed loss or damage. As Plaintiffs have not presented "a sufficient pleading regarding a statistical disparity," they have not "stated a claim under a disparate impact theory." *Connectors*, 2019 WL 5064699, at *7.

### 2. *Plaintiffs Fail to Identify any Specific Policy.*

In addition, Plaintiffs have not identified a *specific* State Farm policy that (they say) caused the disparity they allege. As the district court in *Inclusive Communities* explained on remand, plaintiffs attempting to plead a disparate-impact claim under the FHA must identify "the offending policy *with precision*"; otherwise, the court "cannot evaluate whether [that alleged] policy caused a statistically significant disparity." *Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 3:08-cv-546, 2016 WL 4494322, at *6 (N.D. Tex. Aug. 26, 2016) (emphasis added). In their pleading here, Plaintiffs point to State Farm's alleged policy of using "algorithmic decision-making tools" in various "aspects of" its claim-handling process, such as to sort or screen "complex" claims from "straightforward" ones. (Dkt. 23 ¶¶ 4, 32.) Though Plaintiffs *label* this purported policy a "specific" one (*id.* ¶ 4), their allegations do not support this conclusory characterization.

Plaintiffs allege: that "[a]ccording to its website," State Farm collects a broad range of "data and information" on its policyholders; that, with "a combination of internal and third-party tools," State Farm "leverage[s]" and "uses this data in a variety of ways … and for a variety of purposes," including to create consumer profiles and "process … claims"; and that these claim-processing tools employ (unnamed) "algorithms." (Dkt. 23 ¶¶ 31–39.) As an initial matter, Plaintiffs appear to have derived the list of the kinds of personal information they say State Farm collects (*see* Dkt. 23 ¶ 34), as well as the purposes for which they say State Farm collects that

information (*see id.* ¶ 35), from the portion of State Farm's "website" concerning only *California* policyholders.[5] Neither Huskey nor Wynn nor any member of the putative class is in California. (Dkt. 23 ¶¶ 11–12, 60.) But even assuming that State Farm collected such data as to both Plaintiffs and the putative class, Plaintiffs fail to allege how exactly those data were or are supposedly used: Plaintiffs make no allegation concerning which (if any) of the long list of data categories they identify is employed in any claim-handling algorithms, third-party or otherwise. Plaintiffs make no allegation as to what those algorithms are or entail, or how State Farm purportedly implements those algorithms to "screen out" claims.

In short, Plaintiffs assert that State Farm "screens" insurance claims using some (unspecified) kind of algorithm to process some (unspecified) information in some (unspecified) kind of way. Plaintiffs cannot satisfy the specific-policy requirement with such vague allegations. *See Brown v. Glanz*, No. 12-cv-587, 2013 WL 6909959, at *6 (N.D. Okla. Dec. 31, 2013) (holding that "vague allegations of racial stereotyping, [and the defendant's purported use of] 'arbitrary and/or subjective criteria,' … do not identify [the] *specific* practice" required to state a claim for disparate impact). The practice or "policy" to which Plaintiffs point here is nebulous and generalized at best, and in pleading a disparate-impact claim, it is not "sufficient … to point to a generalized policy." *Inclusive Communities*, 2016 WL 4494322, at *6.

### 3. Plaintiffs Fail to Allege a Robust Causal Connection.

Finally, Plaintiffs have not alleged how State Farm's (generalized) "policy" supposedly *caused* the purported disparities on which they rely. A disparate-impact claim "must fail if the

---

[5] *See* https://www.statefarm.com/customer-care/privacy-security/privacy/california-privacy-rights. In resolving this motion, the Court may consider materials that "are central to the complaint and are referred to in it." *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020) (citation omitted); *see also* Dkt. 23 ¶¶ 34–35 (referring to and purporting to quote from State Farm's website). The Court may also consider information subject to judicial notice, *see O'Brien*, 955 F.3d at 621, such as information from a party's website, *see Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018).

plaintiff cannot point to a defendant's policy or policies *causing* th[e] disparity" at issue. *Inclusive Communities*, 576 U.S. at 542 (emphasis added). To satisfy this robust causality requirement, plaintiffs must "lay out a chain of inferences explaining how the [policy in question] will cause a racially disparate impact." *TBS Grp., LLC v. City of Zion, Ill.*, No. 16-cv-5855, 2017 WL 5129008, at *9 (N.D. Ill. Nov. 6, 2017) (emphasis omitted). Plaintiffs here do no such thing.

At bottom, Plaintiffs allege merely that because State Farm uses the same "algorithmic decision-making tools" to handle all insurance claims, and because some *other* algorithmic tools—purportedly employed by other entities, in other industries—"have been known to cause bias," State Farm's use of "algorithmic decision-making" *must* have caused the (supposed) race-related discrepancies on which Plaintiffs rely. (Dkt. 23 ¶¶ 4–5, 26, 42.) With these sweeping information-and-belief allegations, Plaintiffs draw inferences that cannot plausibly be drawn: That algorithmic decision-making generally has "the *potential* for bias" (*id.* ¶ 42 (emphasis added)) does not reasonably suggest that every algorithmic decision-making program is biased against or in favor of a given characteristic. Plaintiffs do not allege any biases specific to the (unidentified) algorithms in question here, or identify the way in which those algorithms are allegedly biased in favor of white policyholders. Nor do Plaintiffs explain—plausibly or otherwise—how or even whether these supposed algorithms impacted the handling of Plaintiffs' claims.

Moreover, while Plaintiffs claim that some algorithmic "inputs" may in theory function as "proxies for race" (*id.* ¶¶ 48, 54), critically, Plaintiffs do not identify which if any such inputs they believe *State Farm* uses when handling homeowners insurance claims. Nor do Plaintiffs account for any factors unrelated to race that would bear on the time or paperwork required to handle their claims. (*See supra* at 8–9.) Accordingly, there "is no way for the Court to link [State Farm's purported] policy with the alleged statistical disparities in Plaintiff[s'] allegations." *Inclusive*

*Communities Project, Inc. v. Lincoln Prop. Co.*, No. 3:17-cv-206, 2017 WL 3498335, at *9 (N.D. Tex. Aug. 16, 2017); *cf. also Wells Fargo*, 2022 WL 17752387, at *12 (holding that an expert's analysis that failed to "account for [relevant] non-racial … characteristics" could not "show any robust causality between" the alleged policy and purported disparate impact on minorities) (citation and internal quotation marks omitted). As the Supreme Court explained in *Inclusive Communities*, plaintiffs have a difficult burden, even at the pleading stage, of showing causation in disparate-impact cases because of the "multiple factors that go into" decision-making. 576 U.S. at 543. Plaintiffs have not met their burden here.

> ### D.      Neither Plaintiff Has Stated a Claim to Relief Under § 3605.

Plaintiffs' § 3605 claim (Count II) should be dismissed for the additional reason that the Seventh Circuit has already determined this provision does not apply to insurers. Section 3605 of the FHA makes it "unlawful for any person or other entity whose business includes *engaging in residential real estate-related transactions* to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race." 42 U.S.C. § 3605(a) (emphasis added). "[R]esidential real estate-related transaction," in turn, is defined in relevant part as "[t]he making or purchasing of loans or providing other financial assistance … for purchasing, constructing, improving, repairing or maintaining a dwelling." *Id.* § 3605(b). Plaintiffs assert that State Farm "provide[s] … financial assistance" to its policyholders. (Dkt. 23 ¶¶ 79–80.) But the Seventh Circuit has held unequivocally that insurers do *not* provide such assistance. *American Family*, 978 F.2d at 297. "It would strain language past the breaking point," the court explained, "to treat property or casualty insurance as 'financial assistance'—let alone assistance 'for purchasing … a dwelling,'" because insurers "do not subsidize their customers or act as channels through which public agencies extend subsidies." *Id.* (omission in original). Nor "do [they] 'assist' customers even in the colloquial sense that loans are 'assistance,'" as payment "runs

*from* the customer *to* the insurer." *Id.* (emphases added).[6] As State Farm does not "provid[e] …

financial assistance" to its policyholders, it does not "engag[e] in residential real estate-related

transactions." 42 U.S.C. § 3605(a)–(b). Plaintiffs' § 3605 claim therefore fails.

### E.   Neither Plaintiff Has Stated a Claim for Relief Under § 3604.

#### 1.   *Neither Plaintiff Has Adequately Alleged a Violation of § 3604(a).*

Section 3604(a) of the FHA renders it unlawful to "make unavailable or deny … a dwelling

to any person because of race." 42 U.S.C. § 3604(a). Plaintiffs, who own their homes (Dkt. 23

¶¶ 11–12), cannot and do not allege that State Farm has "denied" them those dwellings. Nor has

either Plaintiff sufficiently alleged that State Farm's purported claim-handling procedures made

her home "unavailable" to her within the meaning of this provision. When applied, as here, to

conduct occurring after a homeowner has already acquired her residence, to "make unavailable"

as used in § 3604(a) means to constructively evict—that is, to make the plaintiff's residence "unfit

for occupancy, often to the point that she is compelled to leave." *Bloch v. Frischholz*, 587 F.3d

771, 776–77 (7th Cir. 2009) (en banc) (citation and internal quotation marks omitted). Huskey

alleges nothing of the kind. She alleges merely that, as a result of State Farm's purported actions,

she experienced some "water damage to her kitchen and to two bathrooms" and "a decrease to her

home's overall value." (Dkt. 23 ¶ 11.) There is no suggestion that her home became "unfit for

occupancy," and the Seventh Circuit has explicitly rejected the proposition that "a mere diminution

in property values" is sufficient to plead a violation of § 3604(a). *Bloch*, 587 F.3d at 777; *see also*

*Cox v. City of Dallas, Tex.*, 430 F.3d 734, 742–43 (5th Cir. 2005) (holding that § 3604(a) "gives

---

[6] *See also Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 844 (N.D. Ill. 2010) (explaining that this provision of the statute "applies only to transactions involving the making or purchasing of loans") (citations and internal quotation marks omitted); *Green v. Diamond*, No. 14 C 2601, 2014 WL 5801351, at *5 (N.D. Ill. Nov. 7, 2014) (similar); *Home Quest Mortg. LLC v. Am. Fam. Mut. Ins. Co.*, 340 F. Supp. 2d 1177, 1187 (D. Kan. 2004) (observing that insurance "is a form of financial *protection*, not financial assistance") (emphasis added).

no right of action to current owners claiming that the value or 'habitability' of their property has decreased due to discrimination"). Wynn alleges that she "lost use of her home" (Dkt. 23 ¶ 12), but the allegation is wholly conclusory—she alleges no facts plausibly suggesting that her home became "unfit for occupancy," or that she was unable to occupy her home because of the way in which State Farm handled her claim.

### 2. Neither Plaintiff Has Alleged a Violation of § 3604(b).

Section 3604(b) is also unavailable to Plaintiffs because they have not alleged any discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). The "conditions … of sale" of a property may include the *acquisition* of property insurance, such that insurance may, in certain instances, be considered "a 'service' rendered 'in connection' with the sale of a dwelling." *American Family*, 978 F.2d at 297–98, 301. But the Seventh Circuit has never held that the "services" referenced in § 3604(b) encompass claim handling. They do not.

For an alleged 'service' to fall within the ambit of § 3604(b), it must be provided "*in connection*" with the "terms, conditions, or privileges" of sale or rental of a dwelling. 42 U.S.C. § 3604(b) (emphasis added). In *Wetzel v. Glen St. Andrew Living Community, LLC*, for instance, the Seventh Circuit held that a plaintiff alleging discrimination in the provision of "services" and "facilities" in her rental-apartment complex could proceed with her claim against the complex's owner under § 3604(b) because the owner's actions constituted "concrete violations of [the plaintiff's rental] Agreement." 901 F.3d 856, 860–61, 867 (7th Cir. 2018). There was a direct "connection," in other words, between the defendant's purported conduct and the "terms" of the plaintiff's rental. 42 U.S.C. § 3604(b).

Plaintiffs have pleaded no such connection. The term, condition, or privilege of sale to which they attempt to link State Farm's alleged "services" is the "condition" that a homeowner

have insurance to maintain financing for the continued ownership of her home. (Dkt. 23 ¶ 73.) This condition, however, is entirely agnostic to the manner in which insurance claims are handled *after* the insurance policy has been obtained or renewed. Any insurance-related "services" relevant to this "condition" therefore cannot and do not include claim handling. *Accord Owens v. Nationwide Mut. Ins. Co.*, No. 3:03-cv-1184, 2005 WL 1837959, at *5 (N.D. Tex. Aug. 2, 2005) (concluding that § 3604(b) applies to conduct responding to a plaintiff's *seeking* of insurance, whether "in connection with the maintenance of a previously purchased home or with an application to purchase a home"); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1360 (6th Cir. 1995) (affirming that "insurance *underwriting practices* are governed by the Fair Housing Act") (emphasis added). As Plaintiffs have not pleaded the requisite connection between State Farm's alleged conduct and the "terms, conditions, or privileges" of their homeownership, 42 U.S.C. § 3604(b), their § 3604(b) claim fails.

## II.  Huskey's Request For Injunctive Relief Should Be Dismissed Under Rule 12(b)(1).

A "plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "To have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury." *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017) (citation and internal quotation marks omitted). A "past injury alone is insufficient." *Id.* Here, both Plaintiffs purport to seek injunctive relief (Dkt. 23 at 27), but Huskey cancelled her policy with State Farm before she filed this suit. (Ex. A ¶ 3.) Huskey therefore does not face a threat of future injury, and the request for injunctive relief should be dismissed as to her. *Sullivan v. Liberty Mut. Ins. Co.*, 606 F.Supp.3d 796, 800–03 (N.D. Ill. 2022).

## CONCLUSION

State Farm respectfully requests that Plaintiffs' claims be dismissed with prejudice.

Dated: May 15, 2023                    Respectfully submitted,

                                       /s/ Patricia Brown Holmes
                                       Patricia Brown Holmes
                                       Joseph A. Cancila, Jr.
                                       Sondra A. Hemeryck
                                       Sarah E. Finch
                                       RILEY SAFER HOLMES & CANCILA LLP
                                       70 W. Madison St., Suite 2900
                                       Chicago, IL 60602
                                       Tel: 312-471-8700
                                       Fax: 312-471-8701
                                       pholmes@rshc-law.com
                                       jcancila@rshc-law.com
                                       shemeryck@rshc-law.com
                                       sfinch@rshc-law.com

                                       *Attorneys for Defendant State Farm Fire &
                                       Casualty Company*