**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JACQUELINE HUSKEY and RIIAN WYNN,
on behalf of themselves and all others similarly
situated,

                Plaintiffs,

      v.

STATE FARM FIRE & CASUALTY
COMPANY,

              Defendant.

Case No. 22-cv-7014

Hon. Virginia M. Kendall

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.     Plaintiffs Concede That They Cannot State a Claim Under § 3604(a). ............................ 3

II.    Neither Plaintiff Has Stated a Claim Under § 3604(b). ................................................. 4

III.   *American Family* Forecloses Plaintiffs' Claims Under § 3605. ...................................... 7

IV.   Plaintiffs Have Not Stated a Claim for Disparate Impact. .............................................. 8

       A.    Plaintiffs Have Not Alleged a Relevant Statistical Disparity. ............................... 9

       B.    Plaintiffs Have Not Identified a Specific Policy. ................................................ 10

       C.    Plaintiffs Have Not Pleaded a Robust Causal Connection. ................................ 12

V.    The Claims are Barred by the McCarran-Ferguson Act. ................................................ 14

VI.   Huskey's Request For Injunctive Relief Must Be Dismissed. ........................................ 18

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**C**ASES

*Adams v. City of Indianapolis*,
    742 F.3d 720 (7th Cir. 2014) .................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................9, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 ........................................................................10, 14

*Bloch v. Frischholz*,
    587 F.3d 771 (7th Cir. 2009) (en banc) ........................................4, 5, 6

*Camarena v. Safeway Ins. Co.*,
    No. 00 C 5826, 2002 WL 472245 (N.D. Ill. Mar. 27, 2002) .................................18

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*,
    200 F.3d 1102 (7th Cir. 2000) ...............................................................15

*City of Joliet, Ill. v. New West, L.P.*,
    825 F.3d 827 (7th Cir. 2016) .............................................................3

*Cohen v. American Security Insurance Co.*,
    735 F.3d 601 (7th Cir. 2013) ...............................................................18

*Committee Concerning Community Improvement v. City of Modesto*,
    583 F.3d 690 (9th Cir. 2009) ..............................................................5

*Connectors Realty Grp. Corp. v. State Farm Fire and Cas. Co.*,
    No. 19 C 743, 2019 WL 5064699 (N.D. Ill. Oct. 9, 2019) ...............................9, 10

*Corbin v. Allstate Corp.*,
    140 N.E.3d 810 (Ill. App. Ct. 2019) .......................................................18

*Cramer v. Ins. Exch. Agency*,
    675 N.E.2d 897 (Ill. 1996).................................................................15

*Doe v. Mut. of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) .........................................................15, 16

*Ellis v. City of Minneapolis*,
    860 F.3d 1106 (8th Cir. 2017) ..............................................................9

*Flores v. United Airlines*,
426 F. Supp. 3d 520 (N.D. Ill. 2019) ........................................................................17

*Georgia State Conference of the NAACP v. City of LaGrange*,
940 F.3d 627 (11th Cir. 2019) ...............................................................................5, 7

*Golden Rule Ins. Co. v. Schwartz*,
786 N.E.2d 1010 (Ill. 2003) ....................................................................................15

*Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*,
388 F.3d 327 (7th Cir. 2004) .....................................................................................6

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999).................................................................................................16

*Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*,
No. 3:08-cv-546, 2016 WL 4494322 (N.D. Tex. Aug. 26, 2016) ..........................10

*J.B. v. Woodard*,
997 F.3d 714 (7th Cir. 2021) .....................................................................................1

*Menotti v. Metro. Life Ins. Co.*,
No. 08 C 2767, 2009 WL 1064605 (N.D. Ill. Apr. 20, 2009)..................................15

*N.A.A.C.P. v. American Family Mutual Insurance Co.*,
978 F.2d 287 (7th Cir. 1992) ........................................................................... *passim*

*National Fair Housing Alliance v. Deutsche Bank*,
2018 WL 6045216 (N.D. Ill. Nov. 19, 2018) .........................................................11

*National Fair Housing Alliance v. Deutsche Bank National Trust*,
2019 WL 5963633 (N.D. Ill. Nov. 13, 2019) .........................................................11

*Patel v. Zillow, Inc.*,
No. 17-CV-4008, 2017 WL 3620812 (N.D. Ill. Aug. 23, 2017) .............................14

*Reiser v. Residential Funding Corp.*,
380 F.3d 1027 (7th Cir. 2004) ...............................................................................5, 8

*TBS Grp., LLC v. City of Zion, Ill.*,
No. 16-cv-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) .............................9, 12

*Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015).......................................................................................... *passim*

*Trafficante v. Metropolitan Life Insurance Co.*,
409 U.S. 205 (1972)...................................................................................................6

*Verderber v. City of Chi.*,
  No. 21-cv-06211, 2023 WL 2572474 (N.D. Ill. Mar. 20, 2023) ...........................................10

*Viens v. America Empire Surplus Lines Ins. Co.*,
  113 F.Supp. 3d 555 (D. Conn. 2015) ...........................................................................5, 6, 7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................................................9

*Watts v. Emergency Twenty Four, Inc.*,
  No. 20-cv-1820, 2021 WL 2529613 (N.D. Ill. June 21, 2021).................................................12

*Wetzel v. Glen St. Andrew Living Cmty., LLC*,
  901 F.3d 856 (7th Cir. 2018) .....................................................................................................4

**STATUTES**

215 ILCS 5/154.6...................................................................................................................17

215 ILCS 5/155...........................................................................................................15, 16, 17

215 ILCS 5/424...................................................................................................................18

15 U.S.C. § 1012 ............................................................................................................ *passim*

42 U.S.C. § 1981 .....................................................................................................................3

42 U.S.C. § 3604 ............................................................................................................ *passim*

42 U.S.C. § 3605...............................................................................................................1, 2, 7, 8

**RULES**

Fed. R. Evid. 201 ....................................................................................................................14

**OTHER AUTHORITIES**

24 C.F.R. § 100.65 ...................................................................................................................7

24 C.F.R. § 100.70..................................................................................................................6, 7

ILL. ADMIN. CODE tit. 50, § 919.10 ...........................................................................................15

## INTRODUCTION

Plaintiffs' Response in Opposition to State Farm's Motion to Dismiss (Dkt. 33 ("Opposition")) confirms that Plaintiffs do not have, and cannot plead, a viable Fair Housing Act ("FHA") claim. Their Amended Complaint must therefore be dismissed.

The original complaint filed by Plaintiff Jacqueline Huskey attempted to allege a race-related statistical disparity in State Farm's handling of homeowners claims based on a 2021 survey by YouGov, and then speculated that the purported disparity was caused by State Farm's alleged use of "a combination of internal and third-party tools"—in particular, a tool called the "FRISS Score"—to "process homeowners claims." (Dkt. 1 ¶¶ 32, 37–40.) Based on this theory, Huskey sought to assert disparate-impact claims on behalf of a purported class under §§ 3604(a), 3604(b) and 3605 of the FHA.

Before State Farm had even responded to that pleading, FRISS, Inc. sent a sworn letter to Plaintiffs' counsel advising that, contrary to their speculative, information-and-belief allegations, State Farm has never been a customer of FRISS and does not use the FRISS Score. (*See* Dkt. 25, State Farm's Mem. of Law in Support of Its Mot. to Dismiss ("Brief"), at 3.)[1] Plaintiffs then filed their Amended Complaint (Dkt. 23), which abandoned the FRISS theory and offered brand new and different "information and belief" allegations as to State Farm's supposed used of an unspecified combination of vaguely described "algorithmic decision-making tools" (Br. at 3).

Like the original complaint, the Amended Complaint purports to assert disparate-impact claims under §§ 3604(a), 3604(b) and 3605 of the FHA. Plaintiffs now concede in their Opposition that controlling Seventh Circuit precedent precludes them from pursuing a claim under § 3604(a).

---

[1] Contrary to what Plaintiffs suggest (Opp. at 12 n.1), the Court may take judicial notice of (and thus may consider in resolving State Farm's motion to dismiss) all "matters of public record, including court filings." *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021).

1

(*See* Opp. at 7 n.3.) But Plaintiffs also have not stated a claim under § 3604(b), because they have not pleaded (and cannot plead) a connection between the claim-handling conduct they allege and the "terms, conditions, or privileges of sale" of their properties. 42 U.S.C. § 3604(b). Nor can Plaintiffs proceed under § 3605, because the Seventh Circuit has unequivocally held that property insurers do not provide "financial assistance" within the meaning of the FHA, and therefore do not engage in "residential real estate-related transactions" under that section. Plaintiffs' Opposition fails to rebut any of these arguments. For these reasons alone, the Amended Complaint fails to state an FHA claim and must be dismissed.

Nor have Plaintiffs sufficiently alleged the elements of an FHA disparate-impact theory: a relevant statistical disparity, and a specific State Farm policy that has a "robust" causal connection to the purported disparity. Instead, Plaintiffs allege, on information and belief, no more than that State Farm used some (unspecified) kind of algorithm to process some (unspecified) information in some (unspecified) way that Plaintiffs conclusorily assert is "the only plausible cause" (Dkt. 23 ¶ 40) of the results from the YouGov survey. The alleged survey results, moreover, do not plausibly reflect a meaningful disparity in the first place, as the survey categories were arbitrary and nonsensically overlapping, and the survey did not account for variables critical to determining whether the survey respondents' insurance claims were materially similar to the Plaintiffs' claims. Under *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), this is not enough.

Finally, Plaintiffs fail to refute State Farm's argument that the claims they seek to assert are preempted under the McCarran-Ferguson Act. In asserting that State Farm's alleged claim-handling policies and practices violate federal law based on purported statistical disparities, not intentional discrimination, Plaintiffs seek to impose liability for alleged practices that do not

violate any provision of Illinois insurance law. Putting aside the numerous substantive flaws with their claims, by pursuing a disparate-impact theory, Plaintiffs would have this Court—under the guise of federal law—supersede and interfere with the responsibility of the Illinois Director of Insurance and the established state regulatory regime governing the investigation, handling and payment of claims, and do so in a manner that would not merely "duplicate" this regime but displace it. McCarran-Ferguson prohibits such a result.

That Plaintiffs do not have, and cannot plead, a claim under the FHA does not necessarily mean they would be without a remedy (for example, under 42 U.S.C. § 1981) if their individual homeowners claims were allegedly handled differently from those of other, similarly situated policyholders because of their race (which State Farm denies). But Plaintiffs' path forward cannot and does not lie in an FHA claim, much less a disparate-impact class action, which is what they have attempted (but failed) to plead. *See City of Joliet, Ill. v. New West, L.P.*, 825 F.3d 827, 830 (7th Cir. 2016) (explaining that "[d]isparate-impact analysis looks at the effects of policies, not one-off decisions, which are analyzed for disparate treatment").[2] Plaintiffs' Amended Complaint must be dismissed.

## ARGUMENT

### I.  Plaintiffs Concede That They Cannot State a Claim Under § 3604(a).

It is unlawful under § 3604(a) of the FHA to "make unavailable or deny … a dwelling to any person because of race." 42 U.S.C. § 3604(a). As State Farm previously explained, because Plaintiffs own their homes, they do not and cannot allege that State Farm has "denied" them those dwellings, and Plaintiffs do not allege that State Farm's claim handling made either Plaintiff's home "unavailable"

---

[2] Contrary to what Plaintiffs assert, State Farm has not "waived" or forfeited any arguments concerning disparate-impact claims. (*See* Opp. at 7 n.2.) In its opening brief, State Farm explained, among other things, that no reported case in the Seventh Circuit has applied FHA disparate-impact liability to insurers, and cited courts' discussions of the reasons against doing so. (Br. at 4.)

within the meaning of this provision. (Br. at 13–14.) Plaintiffs now concede, as they must, that under Seventh Circuit precedent, they cannot proceed under § 3604(a). (Opp. at 7 n.3.) Plaintiffs' § 3604(a) claims should accordingly be dismissed, with prejudice.

## II.     Neither Plaintiff Has Stated a Claim Under § 3604(b).

Plaintiffs' Opposition also confirms that their Amended Complaint does not state a claim under § 3604(b). Plaintiffs' principal argument—that § 3604(b) can apply to conduct that occurs after the sale of a dwelling (Opp. at 8–9)—misses the point, because State Farm does not contend that § 3604(b) reaches *no* post-acquisition conduct. Rather, as explained in State Farm's opening brief, that provision does not reach the purported post-acquisition conduct alleged *here*, because Plaintiffs have not pleaded (and cannot plead) a "connection" between that conduct (claim handling) and the "terms, conditions, or privileges of sale." (*See* Br. at 14–15.) Plaintiffs' Opposition wholly fails to rebut that argument.

The Seventh Circuit has explicitly (and repeatedly) held that, for a "service" to fall within the scope of § 3604(b), it must be "linked to … the terms, conditions, or privileges that accompanied or were related to the plaintiffs' purchase of their propert[ies]." *Bloch v. Frischholz*, 587 F.3d 771, 780 (7th Cir. 2009) (en banc) (condominium owners alleging religious discrimination by their condo association could proceed under § 3604(b) because their "agreement to subject their rights to the restrictions imposed by" the association "was a '*condition*' of [their] purchase," such that the association's "power to restrict [those] rights flow[ed] from the *terms of the sale*") (emphases added); *see also* *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 866–67 (7th Cir. 2018) (similar, as to the *terms* of the plaintiff's rental agreement and related "*privileges* of [her] rental" (discussing *Bloch*, 587 F.3d at 779–81)) (emphasis added). Because this requisite "link" is missing here, Plaintiffs' Amended Complaint fails to state a claim under § 3604(b).

The legal authorities cited by Plaintiffs do not support a different result. In *N.A.A.C.P. v. American Family Mutual Insurance Co.* (*see* Opp. at 8), the Seventh Circuit held that § 3604 could apply to an insurer's allegedly discriminatory "refus[als] to *write* policies" (or racially discriminatory redlining), where doing so "effectively preclude[s] ownership of housing." 978 F.2d 287, 290, 297–98, 301 (7th Cir. 1992) (emphasis added). The case did not address the applicability of § 3604(b) to post-acquisition conduct at all, much less to insurer claim handling, and Plaintiffs do not contend that the manner in which State Farm handled their claims effectively precluded ownership of their homes. In *Georgia State Conference of the NAACP v. City of LaGrange* (Opp. at 9, 11), the Eleventh Circuit cited *Bloch* with approval and held that "a service within the meaning of § 3604(b) must be a housing-related service that is directly connected to the sale or rental of a dwelling," 940 F.3d 627, 634 (11th Cir. 2019).[3] The Eleventh Circuit notably declined to follow the decision of the Ninth Circuit in *The Committee Concerning Community Improvement v. City of Modesto*, on which Plaintiffs also rely (Opp. at 9), finding the Ninth Circuit's "expansive view of services covered by § 3604(b) unpersuasive," 940 F.3d at 633.[4] Finally, *Viens v. America Empire Surplus Lines Ins. Co.* (Opp. at 9, 11) is inapposite, both because the court adopted the Ninth Circuit's view of the scope of § 3604(b) as set forth in *City of Modesto*, rejecting the Seventh Circuit's approach in *Bloch*, and because the challenged insurance practice

---

[3] The issue in *City of LaGrange* was the plaintiffs' alleged inability to obtain or maintain water, gas and electricity services provided by the defendant municipality. 940 F.3d at 634. The Eleventh Circuit concluded that these services fell within the scope of § 3604(b) because they "are essential to the habitability of a dwelling and closely connected with the sale or rental of housing." *Id.* The insurance claim handling at issue here does not share either of those characteristics.

[4] To the extent *City of Modesto* is inconsistent with the decision of the Seventh Circuit in *Bloch*, this Court must, of course, follow *Bloch*. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (explaining that district courts in the Seventh Circuit "must follow the decisions" of that court of appeals).

was not claim handling, 113 F. Supp. 3d 555, 558–59, 567–68 (D. Conn. 2015). Plaintiffs have not cited a single case holding that § 3604(b) applies to claim handling.

Plaintiffs' argument that the claim-handling conduct they allege is connected to the "condition" of homeownership (Opp. at 11–12) is both unsupported and unpersuasive. A mortgage-lender's "investment" in a mortgaged property is no less protected when a property insurance claim takes thirty-two days to resolve rather than thirty, or four "interactions" with the carrier rather than three (Dkt. 23 ¶¶ 16, 18). Plaintiffs certainly have not alleged—and could not plausibly allege—that a reasonable lender would decline to extend a loan on such grounds.

Plaintiffs' argument that their § 3604(b) claim may proceed because property insurance makes a home "safe[] and comfortabl[e]," which is a "privilege" of homeownership (Opp. at 9–10), is similarly without merit. Plaintiffs plead no facts suggesting that State Farm's supposed conduct made their houses unsafe. And State Farm is not aware of any case holding that mere "comfort" is a cognizable "privilege" under the FHA.[5] To the contrary, the Seventh Circuit has "made it clear that § 3604(b) is *not* broad enough to provide a blanket 'privilege' to be free from all discrimination from any source." Bloch, 587 F.3d at 780 (emphasis added).[6]

Finally, Plaintiffs' reliance on 24 C.F.R. § 100.70(d)(4) (Opp. at 10) is misplaced. For starters, Section 100.70, which provides examples of conduct that the Department of Housing and

---

[5] If Plaintiffs' strained understanding of "privilege" were correct, § 3604(b) would reach any alleged discrimination in the sale of home furnishings, for example, or the provision of house-cleaning services. That cannot be right—and it isn't.

[6] The Supreme Court's reference to the "broad and inclusive" language of the FHA in *Trafficante v. Metropolitan Life Insurance Co.* (Opp. at 6 (quoting 409 U.S. 205, 209 (1972)) appears only in a discussion of who constitutes an "aggrieved" person within the meaning of the statute, and thus who may bring suit for a violation of its terms. *See* 409 U.S. at 208–10. *Trafficante* did not "contain[] a considered holding on the scope of the Fair Housing Act in general or its application to [other] case[s]." *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (emphasis omitted).

Urban Development ("HUD") believes "denies dwellings" or "makes" them "unavailable," 24 C.F.R. §§ 100.70(b), (d), represents HUD's interpretation not of § 3604(b) but § 3604(*a*), *see* 42 U.S.C. § 3604(a) (making it unlawful to "make unavailable or deny … a dwelling to any person because of race"). The regulation that applies to § 3604(*b*) is 24 C.F.R. § 100.65, which does not mention insurance. *Compare* 24 C.F.R. §§ 100.65(a)–(b) (presenting HUD's view of actions that unlawfully "impose different terms, conditions or privileges relating to the sale or rental of a dwelling") *with* 42 U.S.C. § 3604(b) (making it unlawful to "discriminate against any person" in such "terms, conditions, or privileges"). In any event, as the Eleventh Circuit noted in *City of LaGrange*, "[b]ecause § 3604(b) is unambiguous," the Court should "not consider the interpretations of § 3604(b) by federal agencies advanced by the plaintiffs." 940 F.3d at 633 n.3.

## III.    *American Family* **Forecloses Plaintiffs' Claims Under § 3605.**

In *American Family*, the Seventh Circuit was unequivocal: property insurers do not provide "financial assistance" within the meaning of the FHA, and therefore do not engage in "residential real estate-related transactions" under § 3605 of that Act. 978 F.2d at 297. Insurance, as the court explained, is not "assistance" but a *product* for which the customer pays (by a premium), just as she would pay for food or "a bottle of aspirin." *Id.* (distinguishing insurance from loans, whereby "a lender advances cash, with repayment deferred").[7] That insurance product—and the Seventh Circuit's discussion of it in *American Family*—unquestionably includes the (possible) payment of proceeds to the insured (*see* Opp. at 13), and therefore forecloses Plaintiffs' § 3605 claim.

*Viens*, on which Plaintiffs also rely (Opp. at 12–13), cannot rescue their § 3605 claim. First, in holding that property insurance is "financial assistance," the Connecticut district court expressly

---

[7] Plaintiffs necessarily recognize as much, as this payment-for-product nature of insurance is the basis of their claim that they "receive[d] a less valuable [insurance] *product* than white State Farm policyholders [did] … for the *price that they paid*" in exchange. (Dkt. 23 ¶ 6 (emphases added).)

7

departed from the Seventh Circuit precedent that is binding on this Court. *See* 113 F. Supp. 3d at 571 ("respectfully disagree[ing]" with the holding in *American Family*). In addition, neither *Viens* nor the argument Plaintiffs derive from it is correct. It is not "difficult to imagine" the type of "financial assistance" (other than loans) that "Congress was contemplating when it … included 'repairs' and 'maintenance' in the list of activities encompassed by § 3605(b)(1)(A)." (Opp. at 12.) Subsidies from "public agencies," not insurance proceeds, are what Congress had in mind. *American Family*, 978 F.2d at 297.[8] While Plaintiffs may disagree with the Seventh Circuit's ruling in *American Family*, it is the law of this Circuit and binds this Court. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Plaintiffs' § 3605 claim must be dismissed.

## IV.     Plaintiffs Have Not Stated a Claim for Disparate Impact.

As State Farm argued in its opening brief, even if it were possible to state an FHA disparate-impact claim against an insurer, these Plaintiffs have not done so. (Br. at 7–12.) Where a plaintiff seeks to assert a disparate-impact claim based on a statistical disparity, as Plaintiffs attempt here, the claim "must fail if the plaintiff cannot point to a … policy or policies causing that disparity." *Inclusive Communities*, 576 U.S. at 542. Moreover, plaintiffs must "allege facts at the pleading stage" that plausibly suggest the required "robust" causal connection. *Id.* at 542–43. Plaintiffs' Opposition fails to refute State Farm's arguments that they have not alleged an FHA disparate-impact claim under *Inclusive Communities*.

---

[8] *See, e.g.*, https://www.chicago.gov/city/en/depts/doh/provdrs/homeowners/svcs/home-repair-program.html (describing a Chicago home-repair program offering grants to "income-eligible homeowners for improvements to their roof or porch"); https://www.rd.usda.gov/programs-services/single-family-housing-programs/single-family-housing-repair-loans-grants/il (describing an Illinois home-repair program offering grants to elderly low-income homeowners "to remove health and safety hazards" from their properties).

## A.     Plaintiffs Have Not Alleged a Relevant Statistical Disparity.

Plaintiffs avoid addressing on the merits State Farm's argument that the YouGov survey categories are arbitrary and nonsensically overlapping. (*See* Br. at 7–8; Opp. at 15–17.) Nor do Plaintiffs dispute that the survey did not account for variables critical to determining whether the survey respondents' insurance claims were materially similar to the Plaintiffs' claims (or one another). (*See* Br. at 8–9; Opp. at 15–17.) Plaintiffs instead assert that these deficiencies are not a problem for them *yet*, because this case is still "at the pleading stage," and at that stage, Plaintiffs need do no more than allege a statistical difference of any sort, so long as the difference is mathematically "significant" and in some way related to race. (Opp. at 15–17.)[9]

Not so. A complaint asserting an FHA disparate-impact claim, like any other pleading, must include factual allegations that "*plausibly* give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). And with respect to FHA disparate-impact claims in particular, the Supreme Court in *Inclusive Communities* "caution[ed] lower courts to evaluate these cases carefully, even at the pleading stage." *TBS Grp., LLC v. City of Zion, Ill.*, No. 16-cv-5855, 2017 WL 5129008, at *8 (N.D. Ill. Nov. 6, 2017); *see also Ellis v. City of Minneapolis*, 860 F.3d 1106, 1111–12 (8th Cir. 2017) (similar). It is thus entirely appropriate—indeed, required—for the Court to review and assess whether the purported statistical differences alleged by Plaintiffs plausibly give rise to an entitlement to relief under the FHA. *See, e.g.*, *TBS Grp.*, 2017 WL 5129008, at *9–10 (dismissing FHA disparate-impact claim where the plaintiff's cited statistics "d[id] not plausibly suggest a disparate impact"); *Connectors Realty Grp. Corp. v. State*

---

[9] Plaintiffs also reference Wynn's allegations that her claim was handled differently than that of her white neighbor (Opp. at 16), but those allegations have no bearing on whether Plaintiffs have sufficiently identified a meaningful *statistical* disparity. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011) (finding anecdotal evidence was insufficient "to raise any inference that all the individual, discretionary personnel decisions [were] discriminatory").

*Farm Fire and Cas. Co.*, No. 19 C 743, 2019 WL 5064699, at *7 (N.D. Ill. Oct. 9, 2019) (identifying "deficiencies in the [plaintiffs' statistical] analysis" in resolving a motion to dismiss).[10] They do not, for the reasons set forth in State Farm's opening brief (Br. at 7–9), and the Amended Complaint should accordingly be dismissed.[11]

> ### B.        Plaintiffs Have Not Identified a Specific Policy.

Plaintiffs assert in their Opposition that they *have* identified a "specific policy," which they describe as State Farm's alleged "decision to employ an automated artificial-intelligence system, instead of human judgment, to decide how closely to scrutinize any given claim." (Opp. at 17.) But as State Farm previously explained, an examination of what Plaintiffs actually allege shows that the purported "policy" is anything but specific. (*See* Br. at 9–10.) Plaintiffs allege (on information and belief) that State Farm "screens" insurance claims using an unspecified combination of "internal and third-party tools" that employ some unspecified kind of algorithm to process some unspecified policyholder information in some unspecified way. (*Id.*) These vague allegations of a nebulous and generalized "policy" do not suffice to state a claim. *See, e.g.*, *Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 3:08-cv-546, 2016

---

[10] Plaintiffs argue that the particular statistical deficiencies identified by the court in *Connectors* differ from those identified in this case, such that *Connectors*' reasoning does not apply. (Opp. at 17 n.7.) Plaintiffs miss the point. In keeping with the Supreme Court's instruction in *Inclusive Communities*, the court in *Connectors* properly examined the sufficiency of plaintiff's statistical allegations at the pleading stage. This Court can and should do the same.

[11] Plaintiffs wrongly suggest that in resolving the present motion, this Court cannot rely on any summary judgment decisions. (Opp. at 14–15.) As the Seventh Circuit has observed, "there's nothing wrong with relying on summary-judgment cases at the pleading stage to explain the substantive legal standards that apply to the case." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (characterizing the contrary argument as "a nonstarter," as "[e]ven the Supreme Court in *Twombly*—the seminal pleading-standards case—looked to an opinion rendered at the summary-judgment stage" for this purpose); *see also Verderber v. City of Chi.*, No. 21-cv-06211, 2023 WL 2572474, at *6 (N.D. Ill. Mar. 20, 2023) (rejecting plaintiff's argument that the court could not rely on summary judgment decisions in ruling on a motion to dismiss).

WL 4494322, at *6 (N.D. Tex. Aug. 26, 2016) (stating that it is not "sufficient … to point to a generalized policy").

Plaintiffs rely primarily on *National Fair Housing Alliance v. Deutsche Bank National Trust* ("*Deutsche Bank II*")—in particular, on the court's reference to its previous finding in *National Fair Housing Alliance v. Deutsche Bank* ("*Deutsche Bank I*") that the plaintiffs' allegations of "an 'abdication' policy whereby the Deutsche Bank Defendants relinquished and outsourced all responsibility for maintaining the [real-estate owned] properties to servicers suffice[d] to state a 'policy' for a disparate impact claim." No. 18 CV 839, 2019 WL 5963633, at *16 (N.D. Ill. Nov. 13, 2019) (citing *Deutsche Bank I*, 2018 WL 6045216, at *12 (N.D. Ill. Nov. 19, 2018)). But those decisions do not assist Plaintiffs. In addition to being factually inapposite, the pleadings in the *Deutsche Bank* case alleged the purported policy with far more specificity than Plaintiffs have done here.

The *Deutsche Bank* plaintiffs sued two groups of defendants: the trustees (and owners of record) of thousands of real-estate owned ("REO") properties, *and* the "servicers allegedly charged with maintaining those REO properties." *Deutsche Bank I*, 2018 WL 6045216, at *1. By naming the "servicers" as defendants, the plaintiffs thus specifically identified through their pleading the purported delegates to whom the other (trustee) defendants had "relinquished and outsourced" their property-maintenance responsibilities, *id.* at *12. In addition, the agreements allegedly allocating such responsibilities "allocate[d] *all* responsibility for property maintenance to the servicers alone." *Id.* at *5 (emphasis added); *see id.* at *12 (similar). That is a far cry from Plaintiffs' vague and conclusory allegations that State Farm's use of some unspecified combination of "internal and third-party tools," which employ some unspecified kind of algorithm

to process some unspecified policyholder information, "cabins the discretion of [State Farm's] employees" and "informs the[ir] mindset" in some unspecified way. (Dkt. 23 ¶¶ 36, 38.)

No matter how characterized or framed, the "policy" that Plaintiffs allege here does not satisfy *Inclusive Communities*' specificity requirement. Without even the most basic, fundamental factual allegations describing the "what" and the "how" of State Farm's purported algorithmic-software use, Plaintiffs cannot and do not plausibly link that supposed use to any supposed disparity. (*See* Br. at 9–12; *infra* at 12–14.) Nor are Plaintiffs excused from including those indispensable allegations, or plausibly alleging that link, simply because State Farm, just like other businesses, reasonably does not publicize its every practice or procedure. (*See* Opp. at 18.) The "pleading standard[s] … take into account" such scenarios (*id.* (citation omitted)) by permitting plaintiffs to allege certain facts "on information and belief," *TBS Grp.*, 2017 WL 5129008, at *5. But Plaintiffs cannot "unlock the doors of discovery" by alleging mere *conclusions* based on such beliefs. *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). They must still plead *facts* supporting each of the elements necessary to state a plausible claim, *see Iqbal*, 556 U.S. at 678–79—including facts concerning a specific policy.[12] Plaintiffs have not done so.

### C.    Plaintiffs Have Not Pleaded a Robust Causal Connection.

Nor have Plaintiffs adequately alleged a "robust … causal connection" between the purported policy and disparity on which they rely. *Inclusive Communities*, 576 U.S. at 542–43.

---

[12] *Cf. Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at *4 (N.D. Ill. June 21, 2021) (explaining, in dismissing a claim that the defendant had used an automatic-dialing system in violation of the Telephone Consumer Protection Act, that "even though a plaintiff will rarely, if ever, know the specific functionality of a system used by a defendant before discovery, the plaintiff must still allege sufficient facts to nudge [her] claim across the line from conceivable to plausible") (citations and internal quotation marks omitted).

Though they claim to have "identified a chain of inferences explaining" causation (Opp. at 19 (internal quotation marks omitted)), this "chain" is missing integral steps.

According to Plaintiffs, one may infer that State Farm's purported use of algorithmic tools caused the disparity they allege because Plaintiffs have pleaded that algorithmic tools "*like this* have been known to cause bias in" other products. (*Id.* (emphasis added).)[13] This argument merely begs the question: Algorithmic tools like *what*? Although Plaintiffs baldly state that they have provided "detailed allegations" of State Farm's claim-handling process (Opp. at 17), they have done no such thing (*see supra* at 10–12; Br. at 9–10). Indeed, Plaintiffs contend that the "policy" at issue is simply State Farm's alleged "decision" to employ the (unspecified) algorithmic tools, period. (Opp. at 17.) With zero facts alleged about what those tools entail, Plaintiffs have pleaded no basis on which to compare them to any others, and thus no basis to plausibly conclude that the handling of Plaintiffs' claims was even "potential[ly] biased" (Dkt. 23 ¶ 42), let alone actually biased, in any respect.

Nor do Plaintiffs dispute that the personal information they (conclusorily) say is "leverage[d]" by State Farm's algorithmic tools pertains only to California policyholders. (*Id.* ¶ 36; Br. at 9–10.) Plaintiffs instead suggest that, because the State Farm website reflecting the California-specific nature of this information is "outside of the complaint," this Court cannot consider it. (Opp. at 6 n.1.) Plaintiffs are again wrong. Plaintiffs referred to and quoted from the very same website in their pleading, and the corresponding allegations are central to their claim that State Farm (somehow) handled their insurance claims in a racially-biased way. (Dkt. 23 ¶¶ 34–

---

[13] Plaintiffs vaguely allege that "algorithmic decision-making tools" have been known to cause "bias" in "financial products generally and within home products specifically" (Dkt. 23 ¶ 5), but homeowners insurance is not a "financial product," and Plaintiffs nowhere explain what they mean by the term "home products." Strikingly absent from Plaintiffs' pleading is any allegation that State Farm is using any specific tool that is "known to cause bias." (*Id.*)

36.). The Court therefore can and should "take notice of the full contents of the [webpage] from which the truncated quotations were drawn." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (citing Fed. R. Evid. 201); *see also, e.g.*, *Patel v. Zillow, Inc.*, No. 17-CV-4008, 2017 WL 3620812, at *1 n.2 (N.D. Ill. Aug. 23, 2017) (considering, on a motion to dismiss, "the full" contents of a webpage referred to and quoted in part in the plaintiff's complaint). The full contents of the webpage here also reveal another causal break: the allegedly "leveraged" California data do not pertain to Plaintiffs, who reside in the Midwest. (Dkt. 23 ¶¶ 11–12, 60.)

Plaintiffs insist that they are not attempting to hold State Farm liable "for racial disparities [it] did not create." (Opp. at 19 (quoting *Inclusive Communities*, 576 U.S. at 542).) But without any allegations plausibly and robustly tying State Farm's purported conduct to the disparity Plaintiffs claim, that is precisely what they are trying to do. As Plaintiffs have not satisfied the pleading requirements of *Inclusive Communities*, their disparate-impact claims should be dismissed.

## V.     The Claims are Barred by the McCarran-Ferguson Act.

Plaintiffs argue that the McCarran-Ferguson Act ("McCarran-Ferguson") poses no obstacle to their FHA claims principally on the basis that the FHA, in their view, runs "in harmony with," is "aligned" and "consistent" with, or merely "duplicat[es]" Illinois insurance law. (*See* Opp. at 20–23.) Plaintiffs' argument misses the mark. Plaintiffs' contention here is that State Farm's claim-handling policies and practices violate federal law due to alleged statistical disparities, not intentional discrimination. Plaintiffs thus seek to impose liability on State Farm for claim-handling practices that are not alleged to violate any provision of Illinois insurance law. Putting aside the numerous substantive flaws with their claims, by pursuing a disparate-impact theory, Plaintiffs would have this Court—under the guise of federal law—supersede and interfere with the responsibility of the Illinois Director of Insurance ("Director") and the established state

regulatory regime governing the investigation, handling and payment of claims, and do so in a manner that would not merely "duplicate" this regime but displace it. McCarran-Ferguson prohibits such a result.

As noted in State Farm's opening brief, with limited exceptions (neither of which applies here), only the Director is vested with authority to oversee compliance with statutory obligations related to insurance claim handling in Illinois. (Br. at 4–5.) Where an insurer is believed to have improperly handled claims, the Director may bring administrative proceedings pursuant to rules and regulations promulgated by the Illinois Department of Insurance ("Department"). *See* ILL. ADMIN. CODE tit. 50, § 919.10, *et seq.*[14] Given this regulatory framework, allowing Plaintiffs' claims to proceed under a disparate-impact theory would require a federal court to evaluate State Farm's claim practices in a manner that would necessarily "step[] on the toes" of the Director. *Doe v. Mut. of Omaha Ins. Co.,* 179 F.3d 557, 564 (7th Cir. 1999).

For example, if Plaintiffs were able to make a *prima facie* showing that State Farm employed an artificial, arbitrary and unnecessary policy or practice that caused a significant

---

[14] Under Section 155 of the Insurance Code, an insured may recover damages from an insurer, including attorneys' fees, if the insurer unreasonably disputes the amount of the loss payable on a claim, delays settling a claim, or refuses to provide coverage that is due. 215 ILCS 5/155(1). Importantly, however, to bring such a claim the insurer's conduct must be willfully unreasonable. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). Plaintiffs grossly mischaracterize Section 155 as merely "an attorney's fees provision." (Opp. at 23.) Though it does permit attorneys' fees in certain situations, the point is that, because insurance claim-handling practices are within the exclusive purview of the Department, as to private litigants "§ 155 provides the exclusive remedy for an insurer's bad faith" conduct, *Menotti v. Metro. Life Ins. Co.*, No. 08 C 2767, 2009 WL 1064605, at *3 (N.D. Ill. Apr. 20, 2009), that "does not rise to the level of a well-established tort," *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 904 (Ill. 1996); *see also Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003) ("Illinois courts have regarded section 155 as the legislature's remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.") (citation and internal quotation marks omitted).

statistical disparity on the basis of race (which has not even been properly pleaded), State Farm would be entitled to show that the policy or practice has a sufficient non-discriminatory business justification. *Inclusive Communities*, 576 U.S. at 541. This Court would then be required to assess, among other things, the legitimacy of State Farm's claim-handling practices and whether alternative practices consistent with Illinois insurance law are available to achieve State Farm's legitimate interests with less discriminatory effect. *Id.* at 533. As in *Mutual of Omaha*, "displacing the[] administration [of insurer claim-handling practices] into federal court—requiring a *federal* court to decide whether an insurance [claim-handling practice] is consistent with *state* law—obviously would interfere with the administration of state law. The states are not indifferent to who enforces their laws." 179 F.3d at 564.

Moreover, Plaintiffs' disparate-impact claims would potentially result in the imposition of federal liability for claim-handling practices that are lawful under state law, even in the absence of any discriminatory intent. That would both interfere with the State's administrative regime and impair and supersede state insurance law. And contrary to Plaintiffs' restrictive interpretation, "[d]irect conflict with state law is not required to trigger" McCarran-Ferguson. *Id.*

Plaintiffs' reliance on *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), is misplaced. (Opp. at 20–22.) In *Humana*, the Supreme Court held that a suit brought by insurance policy beneficiaries under the Racketeer Influenced and Corrupt Organizations Act (RICO) did not impair Nevada law, noting that the Nevada Unfair Insurance Practices Act "does not exclude application of other state laws, statutory or decisional." 525 U.S. at 312. But unlike the Nevada statute, Section 155 provides the exclusive remedy for Illinois private litigants for any alleged mishandling of their insurance claims that does not constitute a well-established tort. (*See supra* at 15 n.14.) Similarly, Plaintiffs misread *American Family*, *supra*, when they assert that State Farm must "identif[y an] Illinois law

16

that requires, condones, or approves claims-processing systems that disparately impact Black policyholders." (Opp. at 22.) Not so. Unlike the Wisconsin statutes at issue in *American Family,* Section 155 cannot be characterized as "adding remedies to the arsenal established by federal law," 978 F.2d at 295–96, for alleged unintentional, disparate impact. Rather, Section 155 is the exclusive remedy for allegedly improper claim handling.[15]

Plaintiffs argue that Sections 154.6(c)–(d) of the Insurance Code, which require insurers to settle claims in a "prompt, fair and equitable" manner, is consistent with the FHA. (Opp. at 22–23.) But Plaintiffs seek to impose liability on State Farm on far broader grounds based on alleged statistical disparities in the absence of any discriminatory intent. In essence, Plaintiffs are seeking to federalize allegedly unfair insurance claim practices as an end-run around established Illinois insurance law and regulations specifically governing such practices.

Finally, despite specifically alleging that "Black State Farm policyholders receive a *less valuable* insurance product for the same *price* as white State Farm policyholders" (Dkt. 23 ¶¶ 3, 52) (emphases added), Plaintiffs dispute that this Court would need to assess the "actuarial soundness of the prices Plaintiffs paid for their policies" to resolve their claims (Opp. at 23–24). First, Plaintiffs argue their pricing allegations relate only to damages, not liability. (*Id.* at 24.) That is beside the point. By challenging the price paid for their policies, Plaintiffs are squarely implicating matters that are prohibited under McCarran-Ferguson. *See Flores v. United Airlines,* 426 F. Supp. 3d 520, 538–39 (N.D. Ill. 2019). Similarly, Plaintiffs contend that the Court would not be required to engage in "underwriting" or to evaluate the actuarial soundness of State Farm's

---

[15] Plaintiffs also assert in passing that because Illinois courts have looked to the FHA to interpret the Illinois Human Rights Act, the FHA and Illinois state law are aligned. (Opp. at 21.) But use of the FHA to interpret one specific Illinois statute does not mitigate the FHA's interference with the exclusive remedy and administrative regime governing alleged improper claim handling.

rates because their damages theory focuses only on the "the diminution in value caused by State Farm's [allegedly] discriminatory claims-processing practices." (Opp. at 24.) But as State Farm previously explained, courts in this Circuit have made clear that claims based on similar allegations are prohibited under McCarran-Ferguson. (Br. at 6–7.)

Plaintiffs' reliance on *Cohen v. American Security Insurance Co.*, 735 F.3d 601 (7th Cir. 2013), and *Corbin v. Allstate Corp.*, 140 N.E.3d 810 (Ill. App. Ct. 2019), to assert that the Director lacks "authority to regulate property-insurance rates" (Opp. at 25) is misplaced. While the Department does not pre-approve property insurance rates, the Director enforces the Illinois Insurance Code, which requires insurers to utilize actuarially justified risk factors to classify individuals on the basis of risk, and it prohibits "unfair discrimination between individuals … *because of* … race," not unintentional, disparate impacts. 215 ILCS 5/424(3) (emphasis added). *Cohen* and *Corbin* merely stand for the proposition that insurers cannot employ the filed-rate doctrine as a defense against a claim that their premiums are too high because insurers' rates are not expressly "approve[d]" by the insurance commissioner. *Cohen*, 735 F.3d at 607. These cases do not suggest that Illinois law does not require rates to be actuarially sound or that McCarran-Ferguson is somehow inapplicable in the context of pricing. *See Camarena v. Safeway Ins. Co.*, No. 00 C 5826, 2002 WL 472245, at *7 (N.D. Ill. Mar. 27, 2002) (explaining that it would be improper for a federal court to "decide whether an insurance policy is actuarially sound and consistent with [Illinois] law").

## VI.    **Huskey's Request For Injunctive Relief Must Be Dismissed.**

Plaintiffs do not dispute that Huskey lacks standing to seek injunctive relief. (*See* Opp. at 25.) Her request for such relief must therefore be dismissed.

## **CONCLUSION**

State Farm respectfully requests that Plaintiffs' claims be dismissed. And as Plaintiffs have already amended their pleading, and further attempts to cure deficiencies would be futile, the claims should be dismissed with prejudice. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

Dated: July 31, 2023       Respectfully submitted,

               /s/ Patricia Brown Holmes
               Patricia Brown Holmes
               Joseph A. Cancila, Jr.
               Sondra A. Hemeryck
               Sarah E. Finch
               Lauren Abendshien
               RILEY SAFER HOLMES & CANCILA LLP
               70 W. Madison St., Suite 2900
               Chicago, IL 60602
               Tel: 312-471-8700
               Fax: 312-471-8701
               pholmes@rshc-law.com
               jcancila@rshc-law.com
               shemeryck@rshc-law.com
               sfinch@rshc-law.com
               labendshien@rshc-law.com

               *Attorneys for Defendant State Farm Fire & Casualty Company*