UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Jacqueline Huskey and Riian Wynn, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**State Farm Fire & Casualty Company,**<br><br>*Defendant*. | Case No.: 22-cv-7014<br><br>Hon. Jeffrey I. Cummings |

## JOINT STATUS REPORT PER 12/4/2023 ORDER

Plaintiffs Jaqueline Huskey and Riian Wynn ("Plaintiffs") and Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm") by and through their respective counsel, submit this Joint Status Report pursuant to the Order issued by the Court on December 4, 2023 (Dkt. 66).

**I.     Background**

In this proposed class action, Plaintiffs assert that State Farm handled the homeowners insurance claims of Black policyholders with greater scrutiny because of their race, allegedly in violation of Section 3604(b) of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(b). (Dkt. 52 at 1.) Plaintiffs allege that State Farm is liable under a disparate-impact theory. (*Id.* at 1, 14.) Specifically, they allege that State Farm has a policy of using automated systems, including the use of algorithmic decision-making tools, to process homeowners' insurance claims, and as a result of that policy, State Farm subjects claims of Black claimants to greater scrutiny and delay than those of white claimants. *See, e.g.*, First Amended Complaint (Dkt. 23), at ¶¶ 6, 14-20, 68-82. On September 11, 2023, the Court granted in part and denied in part State Farm's motion to dismiss the case. (Dkt. 52.) State Farm filed its answer on October 9, 2023. (Dkt. 59.)

On November 8, 2023, Plaintiffs and State Farm (collectively, "Parties") filed a Joint Initial Status Report for Reassigned Case (Dkt. 63) pursuant to the Court's Standing Order Regarding Reassigned Cases. On December 4, 2023, the Court entered an Order (Dkt. 66) that accepted the Parties' agreed deadline of April 1, 2024 for motions to amend pleading or add parties, and directed the parties to do the following:

> By 1/31/24, the parties shall file a joint status report setting forth what discovery has been completed, what discovery remains, and whether any discovery disputes require the Court's attention. The parties shall also meet and confer and shall include an agreed, proposed deadline for the completion of fact discovery.

The Parties have met and conferred in accordance with the Court's Order, and now submit this Joint Status Report, although as explained further in Sections II and III below, the Parties have not been able to agree on a proposed deadline for the completion of fact discovery.

## II. Discovery Status

### A. Discovery That Has Occurred to Date

Plaintiffs propounded their first set of requests for production of documents ("RFPs") pursuant to Federal Rule of Civil Procedure 34 on October 27, 2023, and State Farm propounded its first set of RFPs on November 1, 2023. State Farm requested an extension of its deadline to respond and offered a reciprocal extension to Plaintiffs. Thereafter, the Parties timely served written objections and responses to the other side's first set of RFPs.

State Farm has produced the nonprivileged portions of the claim files for Plaintiffs' insurance claims, the claim file for the insurance claim of Plaintiff Wynn's neighbor that is referenced in Plaintiffs' First Amended Complaint, and Plaintiffs' certified policies (approximately 5,000 pages). State Farm is in the process of collecting, reviewing, and preparing for production the other documents that it agreed to produce in its responses to Plaintiffs' first set of RFPs. State Farm will produce those documents on a rolling basis as they are ready, and expects to largely complete that process by the end of February 2024. Plaintiffs dispute that State Farm's contemplated production will be adequate or fully responsive to Plaintiffs' RFPs. Plaintiffs have produced fifty-eight documents (approximately 640 pages) in response to State Farm's first set of RFPs.

Both Plaintiffs and State Farm have also served a second set of RFPs, and a first set of interrogatories. State Farm requested an extension of the deadline for responses to this second set of discovery requests. Plaintiffs consented, and by agreement of the Parties, the responses and objections to those discovery requests are now due on February 21, 2024.

### B. Discovery Remaining

As the Parties indicated in their Joint Initial Status Report, discovery in this case is still in its early stages. (*See* Dkt. 63 at 3.) Written discovery and document production are ongoing, and depositions have not yet commenced. The Parties also expect to conduct expert discovery, which likewise has not yet begun.

### C. Discovery Disputes

#### i. The Parties Will Meet and Confer on Production Deficiencies

The Parties have just begun the process of exchanging views on the deficiencies in their respective responses and will meet and confer thereon. On January 22, 2024, Plaintiffs' counsel sent to State Farm's counsel a detailed letter setting forth what Plaintiffs contend are deficiencies in State Farm's responses to Plaintiffs' first set of RFPs. State Farm's counsel are preparing a written response to that letter, after which the Parties will meet and confer regarding the issues raised by Plaintiffs as required by Rule 37(a)(1).

State Farm's counsel are also preparing a letter to Plaintiffs' counsel regarding what State Farm contends are deficiencies in Plaintiffs' responses to State Farm's first set of RFPs. For example, Plaintiffs have refused to produce the 2021 YouGov survey of homeowners in Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin with State Farm insurance policies that purports to underlie their First Amended Complaint and which they allege demonstrates statistically significant racial disparities between Black and white policyholders. (Dkt. 23, ¶¶ 14-18.)

The Parties will meet and confer on these matters to see if any of their disputes can be resolved before they are brought before the Court.

    ii. **ESI Protocol**

        a. Plaintiffs' Position

Plaintiffs expect to file a motion to compel an ESI search protocol. As background, Plaintiffs proposed to State Farm a protocol that would require the Parties to "cooperate in good faith regarding identification of custodians and sources of ESI, as well as the formulation of appropriate search methods and queries to be used to collect and cull Documents and ESI." Plaintiffs' proposal essentially required the Parties to (1) disclose custodians, sources, and search methodologies for ESI, and (2) meet and confer in good faith to resolve any disputes. If any Party used search terms, the proposal called for standard "hit report" data so that the Parties could cooperatively refine search terms as necessary.

State Farm rejected Plaintiffs' proposal *in toto*, without proposing line edits. State Farm has since categorically refused to agree to such a protocol for cooperating on ESI sources, custodians, and search methodology.[1] The Parties have subsequently met and conferred and remain at an impasse.

Rather than collaborate on sources and methodology, State Farm intends to conduct discovery behind closed doors without providing Plaintiffs any insight into the custodians, sources, and search methodologies it uses. Contrary to State Farm's framing, *infra*, Plaintiffs' proposed protocol does not "dictate" specific search methodologies, but simply requires a measure of transparency and iterative cooperation. The proposal embodies the kind of collaboration that courts in this district regularly endorse for ESI. *See, e.g.*, *Corona v. City of Chicago*, No. 21 CV 6777, 2023 WL 4665674, at *4 (N.D. Ill. July 20, 2023) (Cummings, J.) (directing parties, at the outset of discovery, to "meet and confer to reach a resolution regarding the appropriate search terms and parameters" of ESI production); *Charvat v. Valente*, 82 F. Supp. 3d 713, 722-23 (N.D. Ill. 2015) (ordering parties to a proposed class action to "file an agreed plan for completion of [ ] ESI discovery," including additional custodian searches), *objections overruled*, No. 12-CV-05746, 2016 WL 98570 (N.D. Ill. Jan. 8, 2016); *Kleen Prod. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *5, *6 (N.D. Ill. Sept. 28, 2012) (recounting how the Court "urged the parties" to a class action to confer on search terms and a protocol to address requests for custodians to be searched), *objections overruled*, No. 10 C 5711, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) ("Selecting search terms and data custodians should be a matter of cooperation and transparency among parties."). *See also* Seventh

---

[1] As State Farm notes below, the Parties are negotiating a separate protocol on the limited issues of production format and metadata.

Circuit Electronic Discovery Committee, *Principles Relating to the Discovery of Electronically Stored Information* (Second Edition, Rev. Jan. 2018), https://www.ediscoverycouncil.com/sites/default/files/7thCircuitESIPilotProgramPrinciplesSecondEdition2018.pdf (noting parties' "duty" to confer with Plaintiffs on the identification of ESI sources and on methodologies used to cull responsive ESI).

Without an *ex ante* agreement to negotiate and disclose ESI sources, custodians, and search methodologies, the Parties will be more likely to need to seek "discovery on discovery" (e.g., discovery requests seeking information solely about the opposing party's search methodology) to determine whether the opposing party has reasonably complied with its discovery obligations. *See, e.g.*, *DeGeer*, 755 F. Supp. 2d at 929 ("If Defendants and Huron had disclosed proposed search terms and data custodians, they might have been able to resolve their differences without court intervention and avoided the substantial time and expense they spent briefing electronic discovery issues."). This is why the preferred—and far more common—approach is to require disclosure of search methodologies, sources, and custodians as a matter of course. *See, e.g.*, *BookXchange FL, LLC v. Book Runners*, LLC, No. 19 C 506, 2020 WL 8674187, at *3 (N.D. Ill. Nov. 30, 2020) (Finnegan, J.) ("Typically, parties confer about search terms before running [ESI] searches to ensure transparency and avoid the potential need for new searches if there is a dispute about the process after the search has been completed."); *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019) ("An appropriately detailed accounting of the search conducted is especially critical in the context of searches for electronically stored information." (citing *DeGeer*, 755 F. Supp. 2d at 929)); *The Case for Cooperation*, 10 Sedona Conf. J. 339, 344 (2009) (noting party should "identify a reasonable search protocol, rather than making boilerplate objections" or "unilaterally" make decisions "without disclosure to opposing counsel").

      b. State Farm's Position

State Farm disagrees with Plaintiffs' decision to attempt to litigate the entry of an ESI search methodology protocol in the joint status report and only briefly responds to Plaintiffs' position here. As an initial matter, Plaintiffs' recitation of the ESI protocol discussions between the parties is inaccurate. On October 16, 2023, State Farm transmitted a proposed ESI protocol to Plaintiffs. On November 10, 2023, Plaintiffs responded to State Farm's proposal with a rewrite of the suggested protocol that would have imposed onerous burdens on State Farm and presumptively required discovery on discovery, both of which are inconsistent with the Federal Rules of Civil Procedure. State Farm informed Plaintiffs that it did not agree to Plaintiffs' burdensome and improper protocol, but agreed to consider a revised version that would address issues such as production format and metadata. Plaintiffs subsequently proposed such a protocol, and State Farm has provided proposed edits to that document. The Parties' discussions of that proposed protocol are ongoing, and State Farm believes the Parties potentially can reach an agreement regarding entry of an ESI protocol scaled to format and metadata.

State Farm agrees that the Parties are presently at an impasse regarding the entry of an ESI protocol that includes search terms, custodians and data sources. However, State Farm's originally proposed ESI protocol, and its disagreement with Plaintiffs' November 10, 2023 wholesale rewrite of that protocol, are consistent with the Federal Rules of Civil Procedure, including Rules 26 and 34, as well as the guidance provided in The Sedona Principles (*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* 19 Sedona Conf. J. 1 (2018), and case law from this District. *See, e.g.* The Sedona

Principles, 19 Sedona Conf. J. at 120, 123 (Principle 6: "a responding party is best situated to determine which procedures, methodologies, and technologies are appropriate for . . . producing its own ESI," and therefore, "as a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations"); *Livingston v. City of Chicago,* 2020 WL 5253848, at *3 (N.D. Ill. Sept. 30, 2020) (noting that agreed ESI protocol did not dictate a specific search methodology and declining to grant plaintiff's motion to compel defendants to use its chosen search method, as the producing party is in the best position to decided how to search for and produce responsive documents); *Hansen v. Country Mut. Ins. Co.*, No. 18-244, 2021 WL 353885, at *3 (N.D. Ill. Feb. 2, 2021) ("ESI is produced in a 'reasonably usable form' under Rule 34 'when it is searchable and/or sortable by metadata fields.'") (citation omitted). In a complex case such as this, where a variety of approaches may be utilized to locate responsive materials, Plaintiffs' specific concerns regarding search methodology and sources of ESI are best addressed in response to specific Rule 34 requests, not globally in the ESI protocol.

The bulk of the cases that Plaintiffs cite generally direct the parties to meet and confer regarding search terms and search parameters. They do not stand for the proposition that a court should enter an ESI protocol, over a party's objection, which includes the kind of provisions regarding search terms, custodians, and data sources that Plaintiffs seek to impose on State Farm. *See Corona*, 2023 WL 4665674 at *4 (directing the parties to meet and confer regarding search terms and making no reference to the entry of an ESI protocol); *DeGeer*, 755 F. Supp. 2d at 930 (directing the parties to meet and confer regarding search terms and making no reference to the entry of an ESI protocol); *Kleen Prod. LLC*, 2012 WL 4498465, at *3, 6 (indicating that the court entered a stipulated protocol for production format and that discussions regarding the entry of an ESI search methodology occurred thereafter); *Charvat*, 82 F. Supp. 3d at 722-23 (directing the parties to meet and confer regarding searches that had already been run and to discuss any follow up searches); *V5 Techs.*, 332 F.R.D. at 359 (discussing ESI of a non-party with no reference to an ESI protocol).[2]

### III.  Deadline for Completion of Fact Discovery

The Parties met and conferred by both email and by videoconference (on January 25 and 29, 2024) regarding a proposed deadline for the completion of fact discovery, but have not been able to reach agreement. The Parties therefore have separately set forth their positions below.

### A.  Plaintiffs' Position

Plaintiffs propose the following schedule through the completion of fact discovery:

| Item | On or Before Deadline Date |
|---|---|
| Motions to Amend Pleadings or Add Parties | May 1, 2024 |

---

[2] State Farm has not addressed the *BookXchange FL, LLC* case or the Sedona Conference Journal article that Plaintiffs cite due to both time constraints (they were included in edits that Plaintiffs provided after business hours on the date this status report was due to be filed), and to avoid further burdening the Court. State Farm would be happy to submit a supplemental filing addressing those authorities if that would be helpful to the Court.

| Item | On or Before Deadline Date |
|---|---|
| Deadline for Substantial Completion of Documents and Data for Requests Submitted to Defendant Prior to March 1, 2024 | July 15, 2024 |
| Fact Discovery Deadline* | January 15, 2025 |
| Expert Witness Disclosures and Reports* | February 17, 2025 |
| Rebuttal Expert Disclosures and Reports* | March 19, 2025 |
| Completion of Expert Discovery* | April 18, 2025 |
| Motion to Certify Class and Dispositive Motion Opposition | June 2, 2025 |
| Opposition to Motion to Certify Class and Dispositive Motion Opposition | July 17, 2025 |
| Reply in Support of Motion to Certify Class and in Support of Dispositive Motions | August 21, 2025 |
| * Following a decision on class certification, the parties may conduct additional fact and/or expert discovery as to class wide damages if a class is certified. The parties shall jointly propose a schedule for such discovery within fourteen days of the certification decision. | |

Plaintiffs' proposed schedule provides concrete and realistic deadlines that will allow for the efficient prosecution of this action. In addition to providing a deadline for fact discovery, the schedule ensures that briefing on class certification and dispositive motions remain on track. The schedule does, however, allow for damages discovery post-certification, as the scope of the certified class may affect the precise calculation of damages.

State Farm has flatly rejected the above proposal. Instead, it stands pat on the proposed schedule from the Joint Initial Status Report (Dkt. 63). But that schedule does not shepherd this case towards a meaningful "deadline for the completion of fact discovery," (Dkt. 66). Indeed, as State Farm frames it, that schedule is *specifically designed* to skirt the merits of the class claims. According to State Farm, *infra*, the schedule limits discovery "to class certification and the merits of the named Plaintiffs' individual claims." Notably, Plaintiffs *never agreed* to such limitation in the Joint Initial Status Report, which specifically reserved all parties' "right[s] to seek or object to discovery." (Dkt. 63 at 3.)

State Farm's position is plainly unsuitable for a class-wide *disparate impact* case like this one. In such a case, the merits of the named plaintiffs' individual claims, the merits of the class's claims, and the merits of class certification are all intertwined: they all hinge on the Defendant's "practices that have a 'disproportionately adverse effect on minorities.'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015). In disparate impact cases like this, it is simply nonsensical to limit merits discovery to the "merits of the named Plaintiffs' individuals claims," as State Farm advocates below. "This [case] involves policies and practices that apply to all of the potential Plaintiffs." *Lucas* v. Vee Pak, Inc., No. 12 C 9672, 2014 WL 12932245, at *3 (N.D. Ill. Nov. 13, 2014).

6

State Farm is also wrong that Plaintiffs are seeking discovery that is "effectively unlimited in scope," or that would require dissection of a million individual insurance claims. To the contrary, Plaintiffs seek discovery into State Farm's policies and practices and their disparate impact on Black claimants. This is the appropriate scope of pre-certification discovery in a disparate impact case. *See, e.g.*, *Lucas*, 2014 WL 12932245, at *3 (N.D. Ill. Nov. 13, 2014) (ruling against bifurcating between class and merits in mixed disparate impact and disparate treatment case); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298-01 (S.D.N.Y. 2012) (denying defendant's attempt to bifurcate discovery prior to class certification in a gender discrimination disparate impact case as the record must be fully developed before a class motion is considered). Notably, State Farm relies below on cases like *Reid* and *Harris*, which are not disparate impact cases.

Moreover, contrary to Defendant's assertions, *infra*, Plaintiffs require insight into the merits of other class members' claims in order to demonstrate typicality. *See, e.g.*, *Marshall v. Grubhub, Inc.*, No. 19 C 3718, 2022 WL 1055484, at *4 (N.D. Ill. Apr. 5, 2022) (finding "myopic" defendant's discovery proposal that "might allow it to provide atypicality, but to the possible exclusion of discovery relevant to whatever arguments [plaintiff] may present in response or in support of certification"). Logically, to show Plaintiffs were injured by the same policies and practices as class members, Plaintiffs need discovery into how those policies and practice impacted class members. *Id.* State Farm's approach would wrongfully cut off Plaintiffs' access to that discovery based solely on its bald assertion that Plaintiffs and other class member were subjected to dissimilar policies and practices.

Accordingly, the Court should enter a schedule that encompasses appropriate class and merits discovery for a disparate impact case, as contemplated by Plaintiffs' above proposal.

Separately, State Farm's proposal is deficient because it fails to account for the relative lack of progress—and emerging disputes—since the Joint Initial Status Report filed on November 8, 2023. To date, State Farm has requested extensions for all of Plaintiffs' discovery requests and has produced a total of five documents—claim files relating to the two named Plaintiffs and one of the Plaintiff's neighbors. Moreover, the Parties are exchanging deficiency letters, and Plaintiffs anticipate filing a motion to compel an ESI search protocol, as discussed above. Plaintiffs' proposed schedule accounts for these delays as well as foreseeable disputes and imposes substantial completion obligations on the Parties to prevent such disputes from resulting in voluminous productions just before the close of fact discovery. By contrast, Defendant has failed to adjust its proposed deadlines despite this case's current posture. Accordingly, even if the Court were inclined to accept the structure of State Farm's proposed schedule, the dates should be extended by approximately five months to account for delays, foreseeable disputes, and fulsome class-wide discovery.

### B. State Farm's Position.

State Farm does not agree with the new schedule that Plaintiffs have proposed. As already noted, the Parties previously agreed upon and proposed a schedule for this case through the completion of briefing on class certification, as follows:

| Item | On or Before Deadline Date |
|---|---|
| Motions to Amend Pleadings or Add Parties | April 1, 2024 |
| Expert Witness Disclosures and Reports Relating to Class Certification | September 27, 2024 |
| Rebuttal Expert Disclosures and Reports Relating to Class Certification | November 1, 2024 |
| Completion of Expert Discovery Relating to Class Certification | December 13, 2024 |
| Motion to Certify Class | January 31, 2025 |
| Opposition to Motion to Certify Class | March 17, 2025 |
| Reply in Support of Motion to Certify Class | April 21, 2025 |

Dkt. 63 at 3.

State Farm understands the Court's December 4, 2023 Order as a straightforward directive to the Parties to propose only one additional deadline—for the completion of fact discovery—not an entirely new schedule, as Plaintiffs have done.

State Farm accordingly requests that the Court enter the proposed agreed schedule to which Parties previously stipulated and submitted (rather than the new schedule Plaintiffs now advocate), but with one new deadline (highlighted in yellow):

| Item | On or Before Deadline Date |
|---|---|
| Motions to Amend Pleadings or Add Parties | April 1, 2024 |
| Completion of Fact Discovery Relating to Class Certification and the Named Plaintiffs' Individual Claims | August 16, 2024 |
| Expert Witness Disclosures and Reports Relating to Class Certification | September 27, 2024 |
| Rebuttal Expert Disclosures and Reports Relating to Class Certification | November 1, 2024 |
| Completion of Expert Discovery Relating to Class Certification | December 13, 2024 |
| Motion to Certify Class | January 31, 2025 |
| Opposition to Motion to Certify Class | March 17, 2025 |
| Reply in Support of Motion to Certify Class | April 21, 2025 |

Contrary to the assertions of Plaintiffs, State Farm is not seeking to bifurcate class certification discovery and merits discovery. Rather, in response to the Court's request that the

Parties propose a deadline for the completion of fact discovery, State Farm proposes a deadline that appropriately recognizes that the scope of relevant discovery prior to a ruling by the Court on class certification is different from the scope of relevant discovery that may be needed after that ruling. It preserves the Parties' ability, if needed, to conduct discovery after the Court has ruled on class certification, without requiring the Parties and the Court to prematurely conduct burdensome discovery that is not relevant to the class certification decision.

The Advisory Committee notes to Rule 23 recognize that "it is appropriate to conduct *controlled discovery* into the 'merits,' limited to those aspects *relevant to making the certification decision* on an informed basis." Fed. R. Civ. P. 23, advisory committee notes on 2003 Amendment (emphases added). In addition, Rule 26 provides that discovery must be "proportional to the needs of the case," which includes consideration of the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Courts in this district have accordingly recognized that "pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification." *Miner v. Gov't Payment Serv., Inc.*, Case No. 14-cv-7474, 2017 WL 3909508, at *4 (N.D. Ill. Sept. 5, 2017); *see also Bilek v. Fed'l Ins. Co.*, No. 21 CV 1651, 2022 WL 18912277, at *3 (similar); *Harris v. comScore, Inc.*, No. 11 CV 5807, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012) (observing that "[p]roceeding with merits discovery" prior to a determination on whether a case will be certified may delay the certification decision and "frustrate the court's effort" to decide the certification question "[a]t an early practicable time, as mandated by Rule 23(c)(1)(A)"). Thus, "[d]iscovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification, but at the same time, a defendant should be protected from overly burdensome or irrelevant discovery." *Loy v. Motorola, Inc.*, 2004 WL 2967069, at *3 (N.D. Ill. Nov. 23, 2004); *see also Miner*, 2017 WL 3909508, at *4 (noting that, in managing discovery in class actions, district courts must balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties).

State Farm's proposed deadline for the completion of fact discovery relating to class certification and the merits of the named Plaintiffs' individual claims appropriately balances these considerations. Limiting "merits" discovery to the named Plaintiffs' individual claims is consistent with both the Rule 23 requirement that Plaintiffs' claims be typical of the class they seek to represent, and the Article III requirement that Plaintiffs allege an injury in fact that is fairly traceable to State Farm's conduct. *See Ferrell v. Butler University*, 421 F.3d 609, 617 (7th Cir. 2005) ("To have standing to bring a disparate impact claim, a plaintiff must show that she was personally injured *by the defendant's alleged discriminatory practice*.") (emphasis added).Thus, for example, Plaintiffs should not be permitted to engage in a fishing expedition for documents and information relating to how State Farm handles potentially fraudulent claims because neither Plaintiff's insurance claim was ever identified as potentially fraudulent, so they could not possibly have been injured by any such practices.

The cases that Plaintiffs cite do not support their position that pre-certification discovery should be effectively unlimited in scope. For example, in *Lucas v. Vee Pak, Inc.*, No. 12 C 9672, 2014 WL 12932245 (N.D. Ill. Nov. 13, 2014), the court noted that, "a decision on whether to bifurcate discovery depends on the specific facts of a case." *Id.*at *1. In denying the defendants' motion to bifurcate "class and merits discovery," the court distinguished two cases in which such

9

bifurcation *was* granted—*Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893 (N.D. Ill. 2013), and *Harris*, *supra*—on the grounds that the proposed class in *Lucas* was "significantly smaller" than those at issue in *Reid* and *Harris*, the proposed class was limited to a single state, and the defendants had not shown that discovery was likely to expand to the proportions at issue in those cases. *Lucas*, 2014 WL 12932245, at *2. In addition, the court noted that the case involved "policies and practices that applied to all of the potential Plaintiffs." *Id.* at *3.

Plaintiffs here propose exactly the kind of "large, multi-state class action" that the court in *Lucas* recognized tends to support bifurcation. Although it is impossible for State Farm to determine who actually meets the criteria for inclusion in Plaintiffs' proposed class—in particular, State Farm does not have data that would allow it to identify "Black individuals" who made claims under their policies—the total number of claims submitted by policyholders in the six states encompassed by Plaintiffs' proposed class over the five years since January 1, 2018 is certainly in the hundreds of thousands, and possibly millions.[3] Plaintiffs have sought discovery relating to every one of those claims. In addition, unlike the plaintiffs in *Lucas*, Plaintiffs are seeking extraordinarily broad discovery regarding State Farm claim handling policies and software used by State Farm, without regard to whether they applied to the named Plaintiffs' insurance claims.[4] And contrary to Plaintiffs' argument, it makes perfect sense to limit discovery to the merits of the named Plaintiffs' individual insurance claims. If the named Plaintiffs' individual insurance claims were not "subject to processing via" the kind of "algorithmic decision-making tools" Plaintiffs describe in their Amended Complaint (*see* Dkt. 23 ¶ 39), then their FHA claims fail, and the fact that they have alleged a disparate impact theory of liability does not change that. Or, put another way, Plaintiffs must show that State Farm used some "algorithmic decision-making tool" that has a disparate impact in its handling of *the named Plaintiffs' individual claims*. Thus, the focus of pre-certification discovery is appropriately on the merits of *their individual claims*.

As the court in the *Harris* case noted, an important consideration in determining the appropriate scope of pre-certification discovery is "expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification issue." 2012 WL 686709, at *3. Here, limiting pre-certification discovery to that which is "necessary to permit the Court to make an informed decision on class certification," *Miner*, 2017 WL 3909508 at *4, will be far more expeditious than the unlimited discovery Plaintiffs seek, as evidenced by the fact that Plaintiffs have now proposed a schedule that pushes the filing of their motion for class

---

[3] State Farm has not as yet engaged in the exercise that would be required to determine the precise number of such claims. In another case currently pending in this district, however, State Farm filed a declaration explaining that, for the period between January 1, 2015 and December 29, 2021, for just a subset of Illinois ZIP Codes, State Farm received 54,777 claims. *See The Connectors Realty Group Corp. v. State Farm Fire and Casualty Co.*, No. 19-cv-00743 (N.D. Ill.), Dkt. 143-9.

[4] *Marshall v. Grubhub, Inc.*, No. 19 C 3718 (N.D. Ill. Apr. 5, 2022), and *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012), are inapposite. In *Marshall*, the defendant proposed a phasing of discovery that bears no resemblance to State Farm's proposal that the Court set a deadline for the completion of fact discovery that is relevant to class certification and the named Plaintiffs' individual claims. And in *Chen-Oster*, the plaintiffs had identified the *specific* employment practices that were allegedly common to *all* the members of the proposed class, including the named plaintiffs, and sought discovery related to the impact of *those* practices.

certification out by almost four months. As Judge Kendall noted in her ruling on State Farm's motion to dismiss, however, "[d]isparate-impact cases … require prompt resolution." (Dkt. 52 at 14 (internal quotation marks omitted).) Plaintiffs' proposal runs afoul of that principle, Rule 23 and Rule 26.

Finally, State Farm notes that even Plaintiffs recognize it is not feasible in a putative class action to have a pre-certification deadline for the completion of *all* fact discovery. If, however, the Court determines it is necessary to have a single deadline for the completion of all fact discovery, State Farm submits that any such deadline should be set at 3-6 months after the Court has ruled on class certification.

Dated: January 31, 2024

/s/ *David Tracey*

**SANFORD HEISLER SHARP, LLP**
David Tracey (*Pro Hac Vice*)
Albert Powell (*Pro Hac Vice*)
Sharon Kim (*Pro Hac Vice*)
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
sharonkim@sanfordheisler.com

**FAIRMARK PARTNERS, LLP**
Alexander Rose (*Pro Hac Vice*)
Jamie Crooks (*Pro Hac Vice*)
Michael Lieberman (*Pro Hac Vice*
Forthcoming)
1825 7th St NW, #821
Washington, DC 20001
Phone: (301) 458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

**CENTER ON RACE, INEQUALITY, AND THE LAW
AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (*Pro Hac Vice*)
Jason D. Williamson (*Pro Hac Vice*)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882

/s/ *Sondra A. Hemeryck*
**RILEY SAFER HOLMES & CANCILA LLP**
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
70 W. Madison St., Suite 2900
Chicago, IL 60602
Phone: 312-471-8700
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire & Casualty Company*

11

deborah.archer@nyu.edu
jason.williamson@nyu.edu

*Counsel for Plaintiffs and the Proposed Class*