UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Jacqueline Huskey and Riian Wynn, on behalf of themselves and all others similarly situated,** <br><br> *Plaintiffs*, <br><br> v. <br><br> **State Farm Fire & Casualty Company,** <br><br> *Defendant*. | Case No.: 22-cv-7014 <br><br> Hon. Jeffrey I. Cummings <br><br> Magistrate Judge Sunil R. Harjani |

## JOINT STATUS REPORT PER 2/12/24 ORDER

Plaintiffs Jaqueline Huskey and Riian Wynn ("Plaintiffs") and Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm"), by and through their respective counsel, submit this Joint Status Report. As described in greater detail in the Parties' January 31, 2024 Joint Status Report (Dkt. 70), the case is currently in the early stages of discovery. On February 8, 2024, the case was referred to the Honorable Sunil R. Harjani for discovery supervision and scheduling (Dkt. 74). On February 12, 2024, the Court issued the following order (Dkt. 75):

> The parties are ordered to meet and confer and discuss this Court's orders in *Williams v. State Farm*, 20 cv 1121. The Court has already entered certain discovery management orders in that case. In addition, the parties should discuss whether it makes sense to coordinate discovery with that case given the overlapping issues. Status report on these matters are due 2/20/2024.

The Parties have met and conferred in accordance with the Court's order. The Parties agreed that pre-class certification discovery in this case should proceed in phases, but disagree as to the nature of such phasing. The Parties' separate positions with respect to that issue are set forth below. Additionally, the Parties have met and conferred regarding the entry of an ESI protocol, taking into account the Court's direction in *Williams* regarding search terms and custodians, and do not believe that the Court's involvement is necessary at this time regarding the ESI protocol. Finally, the Parties agree that, given the difference in geographic and substantive scope between this case and *Williams*, coordination of discovery across the two cases is not warranted and could lead to inefficiencies.

### I. The Parties' Positions with Respect to Phasing of Discovery

As noted, the Parties agree that pre-class certification discovery should proceed in phases. The Parties further agree that classwide claims data and claimant data discovery should not occur in Phase One of discovery. The Parties also agree that Phase One will not include expert discovery. The Parties otherwise disagree as to how discovery should be phased. Their separate positions with respect to that issue are set forth below.

*Plaintiffs' Position.*

### A. Phase One: Classwide Discovery into State Farm's Policies, Practices, and Procedures (Including Algorithmic Tools) Regarding Claims Processing

In accordance with the structure in *Williams*, Plaintiffs submit that Phase One should focus on classwide non-statistical discovery for State Farm's policies, practices, and procedures for claims processing, including, but not limited to, discovery into its data analytics and algorithmic decision-making tools. This specifically contemplates discovery into State Farm's use of algorithmic decision-making tools in connection with homeowners insurance claims, including how such tools are developed and how they work; their inputs and outputs; and how they are deployed, reviewed and audited. It also includes discovery of State Farm's policies and practices for collecting data about claimants and property, as well as the manner in which State Farm uses and analyzes such data in connection with homeowners insurance claims, including any "Rule Engines" or other rules or procedures for evaluating such data in connection with homeowners insurance claims.

Plaintiffs define "algorithmic decision-making tools" to be tools that use algorithms, statistics, data analytics, machine learning, deep learning, natural language processing, artificial intelligence, or any other data science tools or concepts to label data, predict outcomes, or assist with decision-making. Such a tool can be computer-based and/or automated, as well as a non-computerized ruleset derived from statistical procedures (such as weighted checklists) or heuristics.

Plaintiffs submit that Phase One should include policy documents as well as communications such as emails, and other ESI, that discuss or describe State Farm's policies, practices, and procedures for processing and/or prioritizing insureds' claims. Moreover, all discovery devices should be available to seek information about State Farm's policies, practices, and procedures, including document requests, interrogatories, requests for admission, and depositions, including but not limited to 30(b)(6) deposition(s). In addition, since algorithmic decision-making tools are developed, trained, evaluated, and modified using data, Phase One would include discovery of the data sets that State Farm has used and is using in connection with such tools. However, in accordance with the Court's order in *Williams*, Plaintiffs propose that discovery into claims data for members of the proposed class occur in Phase Two. Plaintiffs respectfully request that Phase One should take place over a six-month period, with State Farm substantially completing its production of documents within the first three months.

### B. Phase Two: Classwide Claims Data and Subsequent Proceedings

Plaintiffs submit that Phase Two of discovery should focus on classwide data, including demographic and other data on State Farm homeowners insurance policyholders and claimants, data on insured properties, and statistical data pertaining to State Farm's investigation and adjustment of homeowners insurance claims (*i.e.*, claims data files). In a disparate impact case, such data is essential to show Plaintiffs were injured by the same policies and practices as class members, and Plaintiffs require insight into the merits of classwide claims—made possible through an examination of claims data—to demonstrate typicality. *See, e.g.*, *Marshall v. Grubhub, Inc.*, No. 19-cv-3718, 2022 WL 1055484, at *4 (N.D. Ill. Apr. 5, 2022) (finding "myopic" defendant's

discovery proposal that "might allow it to prove atypicality, but to the possible exclusion of discovery relevant to whatever arguments [plaintiff] may present in response or in support of certification").

Plaintiffs further submit that Phase Two of discovery should include depositions, and that Plaintiffs will be able to reserve part of its 30(b)(6) deposition for phase two, without it counting as more than one deposition. Plaintiffs submit that Phase Two should take place over a four-month period. Phase Two does not include expert discovery. Plaintiffs recognize that Phase Two of discovery may reveal information about State Farm's policies, practices, and procedures. Therefore, some further discovery into policies, practices, and procedures may be necessary upon the completion of Phase Two, and no party waives its right to seek such discovery following Phase Two.

Plaintiffs further submit that, after completion of Phase Two, the Parties will meet and confer to agree upon a schedule that would set deadlines for 1) the remainder of discovery, including expert discovery; 2) class certification; and 3) dispositive motions.

*State Farm's Position*

### A. Phase One: Discovery into State Farm's Alleged Use of Machine-Learning Algorithms and Artificial-Intelligence Tools.

State Farm submits that the first phase of discovery should focus on non-statistical discovery relating to Plaintiffs' allegations—which State Farm has denied—that State Farm uses "machine-learning algorithms and artificial-intelligence tools" (which Plaintiffs collectively define as "algorithmic decision-making tools") to "screen out potentially fraudulent or complex ('high touch')" homeowners insurance claims from "legitimate or straightforward ('low touch' or 'no touch') claims." First Am. Compl. (Dkt. 23), ¶ 4. As Plaintiffs recognized in opposing State Farm's motion to dismiss their First Amended Complaint, "[t]o state a disparate impact claim under the FHA," they were required to allege both a statistical disparity and that State Farm "maintained *a specific policy* which … caused the disparity." Plfs. Resp. in Opp. to Def. State Farm's Mot. to Dismiss (Dkt. 33) at 13 (emphasis added, internal quotation marks and citation omitted). The "specific policy" to which Plaintiffs pointed to avoid dismissal of this action was the purported policy of using "algorithmic decision-making tools" that is alleged in Paragraph 4 of their FAC. *See id.* And it was that allegation of a "specific policy" on which Judge Kendall relied in holding that Plaintiffs had sufficiently stated an FHA disparate-impact claim and denying State Farm's motion. Mem. Op. at Order (Dkt. 52), at 16 ("Plaintiffs' point to a specific policy: State Farm's decision to use algorithmic decision-making tools to automate claims processing."). It is therefore entirely appropriate—and consistent with the approach this Court took in *Williams*— for the first phase of discovery to focus on non-statistical data relating to the threshold question of whether State Farm even uses machine-learning algorithms and artificial-intelligence tools to screen homeowners insurance claims as Plaintiffs allege or in the manner Plaintiffs allege.[1]

---

[1] Indeed, State Farm believes the most appropriate scope of Phase One discovery would be limited to whether State Farm used any such machine-learning algorithms or artificial-intelligence

3

State Farm further proposes that, for purposes of this discovery, the terms "machine-learning" and "artificial intelligence" will refer to an automated process in which a system begins recognizing patterns without being specifically programmed to achieve a pre-determined result. (State Farm submits that Plaintiffs' proposed definition of "algorithmic decision-making tools" is overly broad and unworkable.) Phase One discovery will be limited to the six states encompassed by Plaintiffs' proposed class definition (Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin) and the time period from January 1, 2018 to the present. Discovery of data relating to insurance claims, claimants or policyholders other than the named Plaintiffs will not occur in Phase One.

### B. Proceedings Following the Completion of Phase One Discovery

State Farm submits that a determination of how this case should proceed following the completion of Phase One discovery—including whether there should or will be a second phase of discovery, and if so the proper scope of and schedule for such discovery—must await the completion of Phase One discovery into the threshold question of whether State Farm even uses machine-learning algorithms and artificial-intelligence tools to screen homeowners insurance claims as Plaintiffs allege or in the manner Plaintiffs allege. State Farm proposes that, consistent with the approach reflected in this Court's phased discovery order in *Williams*, the Parties will meet and confer at the end of Phase One discovery to discuss how the case should proceed from that point, and will present either an agreed proposal or, if the Parties are unable to agree, their competing proposals, to the Court for consideration.

## II. ESI

The Parties have met and conferred on the issue of a substantive ESI protocol and are working together to agree upon a protocol for transparency and cooperation as to sources, custodians, and search methodology. The Parties expect to resolve their disagreement on this issue shortly. There are other remaining disagreements between the Parties regarding the language of the draft ESI protocol, but they are negotiating in good faith and believe they will be able to reach agreement without requiring the Court's involvement.

## III. Distinctions from *Williams* Would Make Coordination of Discovery Inefficient

---

tools in connection with the homeowners insurance claim of either of the named Plaintiffs in this action. For Plaintiffs to pursue an FHA disparate impact claim, either for themselves or on behalf of a proposed class, they must have been personally injured by the alleged discriminatory practice. *Ferrell v. Butler University*, 421 F.3d 609, 617 (7th Cir. 2005). Furthermore, to satisfy the commonality requirement of Rule 23(a)(4) Plaintiffs will have to point to a practice that was uniformly applied to *all* members of the proposed class, *including Plaintiffs*. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). A hypothetical "algorithmic decision-making tool" that did not impact either named Plaintiffs' claim would necessarily *not* satisfy commonality. Nevertheless, in the spirit of compromise, and guided by this Court's order in *Williams*, State Farm proposes the broader scope of Phase One discovery keyed to Plaintiffs' allegations that is set forth in the text.

The Parties agree that the facts and law in *Williams* are sufficiently distinct from the instant case that coordination of discovery would not be efficient. The *Williams* case includes six current and former State Farm insurance agents who assert disparate treatment discrimination claims pursuant to 42 U.S.C. § 1981 on behalf of a proposed nationwide class, and one former TICA agent who purports to assert discrimination claims pursuant to Title VII, also on behalf of a proposed nationwide class. *Williams*, No. 1:20-cv-01121 (Dkt. 107). By contrast, here, Plaintiffs allege an FHA disparate-impact class action relating to homeowners insurance policyholders in six states. (Dkt. 22.) Thus, the Parties anticipate that discovery will be distinct in these two cases and that any attempt at coordination will result in inefficiencies.

Dated: February 20, 2024

/s/      David Tracey

**SANFORD HEISLER SHARP, LLP**
David Tracey (*Pro Hac Vice*)
Albert Powell (*Pro Hac Vice*)
Sharon Kim (*Pro Hac Vice*)
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
sharonkim@sanfordheisler.com

**FAIRMARK PARTNERS, LLP**
Alexander Rose (*Pro Hac Vice*)
Jamie Crooks (*Pro Hac Vice*)
Michael Lieberman (*Pro Hac Vice*
Forthcoming)
1825 7th St NW, #821
Washington, DC 20001
Phone: (301) 458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

**CENTER ON RACE, INEQUALITY, AND THE LAW
AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (*Pro Hac Vice*)
Jason D. Williamson (*Pro Hac Vice*)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

/s/      Sondra A. Hemeryck

**RILEY SAFER HOLMES & CANCILA LLP**
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
70 W. Madison St., Suite 2900
Chicago, IL 60602
Phone: 312-471-8700
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire and Casualty Company*

*Counsel for Plaintiffs and the Proposed Class*