UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>　　　　　Defendant. | Case No. 22-cv-07014<br><br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge Jeffrey T. Gilbert |

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

Defendant State Farm Fire & Casualty Company ("State Farm"), through its counsel, hereby moves pursuant to Federal Rule of Civil Procedure 26(c) for entry of a protective order to enforce the limits of discovery provided by Rule 26(b) and this Court's discovery phasing order (Dkt. 79) by precluding the discovery sought by Plaintiffs Jacqueline Huskey and Riian Wynn in document subpoenas served by Plaintiffs on nonparties Crawford & Company ("Crawford"), Duck Creek Technologies Inc. ("Duck Creek"), Eberl Claims Service LLC ("Eberl"), E.A. Renfroe & Company, Inc. ("Renfroe"), Salesforce Inc. ("Salesforce"), Symbility Solutions Corp. ("Symbility"), and Verisk Analytics, Inc. ("Verisk"), true and correct copies of which are attached hereto as Exhibits 1 through 7. In the alternative, State Farm requests pursuant to Federal Rule of Civil Procedure 45 that the Court quash the subpoenas to Crawford, Duck Creek, Eberl, Renfroe, Salesforce, and Verisk because they infringe on State Farm's legitimate interest in protecting its confidential commercial business information.

## INTRODUCTION AND BACKGROUND

In this purported disparate-impact case, Plaintiffs allege that State Farm "delegates … the initial assessment of the homeowners insurance claims it receives" to "algorithmic decision-making tools" that allegedly "are designed to, among other things, predict the likelihood of fraud and to sort 'no touch' or 'low touch' claims (which are paid out immediately or near immediately) from 'high touch' claims (which trigger additional scrutiny)." First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32; *see also id.* ¶ 40 (referencing State Farm's alleged "policy of delegating the initial assessment of claims to its algorithmic decision-making tools"); ¶ 48 (referencing State Farm's alleged "policy of delegating the initial claims processing review to its algorithmic decision-making tools"); ¶ 49 (referencing State Farm's alleged "delegation of the initial claims processing review to its algorithmic decision-making tools"); *see also* Tr. of Feb. 22, 2024 Status Hearing, attached as Exhibit 8, at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating the initial sort of sorting of claims" to "some sort of machine process"); *id.* at 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, the initial sort of sorting of claims.").[1] Plaintiffs further allege that this supposed delegation of the initial assessment or sorting of homeowners insurance claims to "algorithmic decision-making tools" has a disparate impact on Black policyholders in six states, purportedly causing claims from Black homeowners to receive "greater scrutiny" than the claims of white homeowners. FAC ¶¶ 3-6.[2]

---

[1] State Farm notes that it has made minor redactions to the copy of the transcript attached as Exhibit 8 to protect certain Confidential information of State Farm. None of the redacted text is cited or relied on in this Memorandum.

[2] Plaintiffs' allegations of disparate impact are based on information purportedly derived from a 2021 survey by YouGov. FAC ¶¶ 14–20. In responding to State Farm's arguments about those allegations in its motion to dismiss the FAC (which Plaintiffs characterized as "nitpick[ing]"), Plaintiffs asserted they were not required, at the pleading stage, to defend their methodology, and

On February 8, 2024, this case was referred to Magistrate Judge Sunil Harjani for discovery supervision and scheduling. Dkt. 74. On February 20, 2024, the parties filed a joint status report with Judge Harjani in which they agreed that pre-class certification discovery in this case should proceed in phases, but disagreed as to the nature of such phasing. Dkt. 76. On February 23, 2024, following a hearing held on February 22, Judge Harjani entered an order on the phasing of discovery. *See* Dkt. 79. Specifically, Judge Harjani ordered that "Phase I discovery shall be limited to algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims. This is the gravamen of Plaintiffs' amended complaint." *Id.* Judge Harjani further ordered that "Phase I should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, before the parties start exploring such voluminous ESI discovery around communications and documents about their use, and the means and methods in which they are used that could, allegedly, result in a disparate impact." *Id.*

Judge Harjani accordingly ordered the parties to propose a discovery schedule for Phase I that "includes a preliminary focus on the identification of these tools." *Id.* Judge Harjani explained that this discovery

> should include some initial answers to interrogatories, some initial production of documents, and potentially a short Rule 30(b)(6) deposition all done expeditiously. The parties should identify the tools first through these discovery devices before the deep dive into the tools.

*Id.* On March 5, 2024, Judge Harjani entered a "discovery schedule *for the preliminary focus* of Phase I discovery." Dkt. 81 (emphasis added). That discovery is to culminate in Rule 30(b)(6)

---

that State Farm would be "free to explore" the details of the survey in discovery. Dkt. 33 at 16-17; *see also* Mem. Op. and Order dated Sept. 11, 2023 (Dkt. 52) at 16 (agreeing with Plaintiffs that they were not required to defend their methodology at the pleading stage and that State Farm would be "free to explore" those details in discovery). Despite these representations, Plaintiffs have refused to produce *any* discovery relating to the YouGov survey.

3

deposition to be completed by August 9, 2024, after which the parties "shall meet and confer for a schedule to complete Phase I discovery." *Id.*

On March 27, 2024, Plaintiffs propounded written discovery requests to State Farm, and also notified State Farm that they were serving subpoenas on the seven nonparty entities identified above. *See* Exs. 1-7, 9. Those subpoenas plainly violate the Court's orders concerning the phasing of discovery. They are not limited to discovery concerning "algorithmic tools [that] are used at the outset to sort potentially fraudulent/complex claims from straightforward claims," but instead purport to require the subpoenaed entities to produce documents relating to a much broader universe of products and services (including, for instance, products such as Xactimate that Plaintiffs certainly know are used to estimate the cost to repair or replace damaged property, not to sort potentially fraudulent or complex claims from straightforward claims). They are also not limited to the "identification" of such tools, but instead purport to require the subpoenaed entities to provide exactly the kind of "voluminous ESI discovery around communications and documents about" the tools that Judge Harjani explicitly stated would *not* be allowed at this stage. Nor are the subpoenas even limited to Phase I discovery (much less the "preliminary focus of Phase I discovery" contemplated by Judge Harjani's order), but instead include requests that Plaintiffs expressly identify as "Phase 2" discovery. Finally, in addition to violating the Court's discovery phasing orders, the discovery sought by the subpoenas would also needlessly infringe upon State Farm's legitimate business interests.

Pursuant to Local Rule 37.2, the undersigned certifies that after consultation by telephone and good faith attempts to resolve differences the parties were unable to reach an accord regarding the issues raised in this motion. Specifically, on April 2, 2024, State Farm's counsel notified Plaintiffs' counsel by email of State Farm's objection to the subpoenas. *See* Exhibit 10. On April

4

5, 2024, the Parties conferred by telephone regarding State Farm's objections to the subpoenas. Plaintiffs declined to withdraw or modify their subpoenas in response to State Farm's objections. State Farm therefore brings the instant motion seeking a protective order prohibiting Plaintiffs from pursuing these subpoenas.

## LEGAL STANDARD

The "relevance and proportionality limits in Rule 26 that guide the proper scope of discovery" as to parties "apply with equal force to nonparty discovery under Rule 45." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-1028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020); *see also Buonavolanto v. LG Chem, Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *2 (N.D. Ill. March 8, 2019) (similar). Rule 26 defines the scope of discovery as follows: "Unless otherwise limited by court order, … Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, of course, the scope of discovery has been "otherwise limited by court order"—specifically, the discovery phasing orders discussed above.

A party may "seek a protective order under Rule 26 to limit discovery [sought] from a third party" that is "outside the scope permitted by Rule 26(b)(1)." *DeLeon-Reyes*, 2020 WL 3050230, at *3; *see also Buonavolanto*, 2019 WL 8301068, at *2 (holding that defendants had standing to seek a Rule 26(c) protective order as to subpoenas issued to nonparties "to enforce the limits on discovery provided by Fed. R. Civ. P. 26(b)"); *Allstate Ins. Co. v. Electrolux Home Prods. Inc.*, No. 16-cv- 4161, 2017 WL 5478297, at *3 (N.D. Ill. Nov. 15, 2017) (similar, collecting cases). The Court's "broad discretion [to] manag[e] discovery" includes the discretion to enter such a protective order. *DeLeon-Reyes*, 2020 WL 3050230, at *3 (quoting *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013)) (internal quotation marks omitted); *see, e.g.*, *Buonavolanto*, 2019 WL 8301068, at *3

(granting defendants' motion for a protective order based on court's finding that the information requested by plaintiff's subpoenas was outside the scope of discovery allowed by Rule 26(b)).

In addition, a party has standing to move to quash a nonparty subpoena pursuant to Federal Rule of Civil Procedure 45 when "the subpoena infringes upon" the party's "legitimate interests." *PrimeSource Bldgs. Prods., Inc. v. Felten,* No. 16 CV 11468, 2018 WL 10425599, at *2 (N.D. Ill. Apr. 27, 2018). Examples of legitimate interests include "interference with business relationships." *DeLeon-Reyes*, 2020 WL 3050230, at *2. Rule 45 specifically permits courts to quash subpoenas "to protect a person . . . affected by a subpoena . . . if" the subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

**ARGUMENT**

I. **The Subpoenas Violate the Court's Discovery Phasing Orders As Well as the Relevance and Proportionality Requirements of Rule 26(b)(1).**

The Court's February 23, 2024 order is clear: "Phase I discovery *shall* be limited to algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims." Dkt. 79 (emphasis added). The Court further ordered that "Phase I should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before the parties start exploring such voluminous ESI discovery around communications and documents about their use*[.]" *Id.* (emphasis added). And Judge Harjani expressly limited the discovery schedule he entered to "*the preliminary focus* of Phase I discovery." Dkt. 81 (emphasis added). All of Plaintiffs' subpoena requests go far beyond the scope set out in Judge Harjani's orders.

In addition, the reason Judge Harjani limited Phase I discovery to "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from

straightforward homeowners insurance claims" was because he determined that is "the gravamen of Plaintiffs' amended complaint." Dkt. 79. As discussed *infra*, however, none of Plaintiffs' requests to the subpoenaed entities are properly within that scope of discovery (much less within the "preliminary focus of Phase I discovery" as defined by the Court's orders). As a result, the requests not only directly violate Judge Harjani's discovery phasing orders, they also fail the relevance and proportionality requirements of Rule 26(b)(1).[3]

*Phase 1 Request Nos. 1-4*

Plaintiffs' first request seeks all agreements that each of the subpoenaed companies has or had with State Farm concerning **all products or services that in any way use or incorporate an algorithmic tool** and are capable of assisting in the identification of potentially fraudulent or complex homeowners insurance claims. *See* Exs. 1-7, Req. No. 1. The second, third and fourth requests to each entity seek documents and communications sufficient to identify:

- **all products or services** the subpoenaed entity provided to State Farm **that in any way use or incorporate an algorithmic tool** and are capable of assisting in the identification of potentially fraudulent or complex homeowners insurance claims (Exs. 1-7, Req. No. 2);

- **all products or services** the entity provided to State Farm **that in any way use or incorporate an algorithmic tool** and are capable of assisting with sorting, screening, labeling, routing, tracking, or categorizing homeowners insurance policyholders or claims in any manner that may affect or influence how an insurer processes and/or adjusts such claims (Exs. 1-7, Req. No. 3); and

- **all products or services** the entity provided to State Farm **that in any way use or incorporate an algorithmic tool** and are capable of assisting with development, evaluation, or modification of policies, procedures, and/or criteria for identifying homeowners claims as potentially fraudulent or complex (Exs. 1-7, Req. No. 4).

---

[3] Although Phase II discovery may never occur, and consequently its potential scope has not been defined, Judge Harjani's February 23, 2024 Order suggested that Phase II discovery (if it occurs) would focus on "[c]lass-wide claims and statistical data." Dkt. 79. There is no suggestion in any of Judge Harjani's orders that the scope of discovery in this case will at any point include discovery into products or services provided by the subpoenaed entities other than "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims." *Id.*

7

Plaintiffs broadly define "algorithmic tool" as "a tool that uses algorithms, statistics, data analytics, machine learning, deep learning, natural language processing, artificial intelligence, or any other data science tools or concepts to label data, predict outcomes, or assist with decision-making." Exs. 1-7, Definition No. 1.

These requests go well beyond what the Court's discovery phasing orders provide. Those orders direct the parties to engage in discovery to identify what algorithmic tools State Farm uses at the outset of a claim "to sort potentially fraudulent/complex claims from straightforward claims." The Court's orders do not contemplate discovery regarding any and all products or services that use or incorporate an algorithmic tool (again, as broadly defined by Plaintiffs) that might be able to identify or aid in the identification of a potentially fraudulent or complex claim, or that might affect or influence how an insurer processes and/or adjusts a homeowners claim, or that might be capable of assisting with the development policies, procedures or criteria for identifying claims as potentially fraudulent or complex, as Plaintiffs' requests seek. The Court should therefore enter an order "forbidding the … discovery" sought by these requests, Fed. R. Civ. P. 26(c), or limit the requests to documents sufficient to identify any algorithmic tools the subpoenaed entity provides to State Farm that State Farm uses at the outset of a claim "to sort potentially fraudulent/complex claims from straightforward claims."[4]

---

[4] State Farm recognizes that the subpoenaed entities might well object to these requests even if they were so limited, on the ground that they would still be unnecessarily cumulative and duplicative of discovery that Plaintiffs have already sought from State Farm. *See, e.g.*, *Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 17740419, at *1, *4 (N.D. Ill. Dec. 16, 2022) (recognizing that a court "may limit discovery … if the information sought is cumulative or duplicative of other discovery," and stating that the court was "not inclined to subject a nonparty to unduly burdensome discovery for information that is, for the most part, readily available from a party"); *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015) ("A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative"; granting motion to quash on this ground); *see also* Chart Comparing Plaintiffs' Discovery Requests to State Farm with Plaintiffs'

*Phase 1 Request No. 5*

Plaintiffs' fifth request to each subpoenaed entity other than Eberl seeks documents and communications sufficient to demonstrate State Farm's "use, employment, or deployment of, and/or access to," a broad swath of entity-specific products and services, apparently identified largely from Google searches, without regard to either what those products or services do—*i.e.*, whether State Farm uses the identified products or services "to sort potentially fraudulent/complex claims from straightforward claims"—or whether the identified products or services are "algorithmic tools." For example, the Crawford subpoena requests documents and communications regarding Trulook, Digital Desk, Crawford OnDemand Estimates, and/or Asservio. Ex. 1, Req. No. 5.[5] To the extent any of the products or services identified in these requests are in fact "algorithmic tools" that State Farm uses "to sort potentially fraudulent/complex claims from straightforward claims," documents "sufficient to identity" those tools are requested by Plaintiffs' first four requests (which are themselves overly broad, as discussed *supra*), making

---

Subpoena Requests, attached as Exhibit 11. Indeed, at least one court within this district has held that a party may seek a Rule 26(c) protective order "[t]o prevent cumulative and unnecessary burden to … subpoenaed third-parties in producing documents that" the issuing party "can acquire directly from" another party in the litigation). *PrimeSource Buildings Prods., Inc.*, 2018 WL 10425599, at *3.

[5] The Duck Creek subpoena seeks documents and communications about Duck Creek Claims, Duck Creek On Demand, and/or Duck Creek Claims Management Software. Ex. 2, Req. No. 5. The Renfroe subpoena seeks documents and communications about Estimates on Demand and Renfroe's Claims Management and Consulting Services. Ex. 4, Req. No. 5. The Salesforce subpoena seeks documents and communications about Salesforce's Customer Relationship Management software, Customer 360 Product Portfolio, Financial Services Cloud, Service Cloud, and Einstein 1. Ex. 5, Req. No. 5. The Symbility subpoena seeks documents and communications about Claims Connect, Desk Adjuster and/or Quality Connect. Ex. 6, Req. No. 5. The Verisk Subpoena seeks documents and communications about ClaimsSearch, ClaimXperience, Xactimate, XactAnalysis, XactAnalysis Insights, any other product or service "within [Verisk's] Xactware Property Estimating Solutions," ClaimDirector, ClaimDirector Architect, Anti-Fraud One, DecisionNet, NetMap, and any other product or service "within [Verisk's] Anti-Fraud Claims Solution Category," and products that use or incorporate Verisk Artificial Intelligence Technology. Ex. 7, Req. No. 5.

9

this request superfluous. To the extent Plaintiffs purport by these requests to seek documents regarding *other* products or services, the requested discovery is outside the scope of the Court's phasing orders. The Court should therefore enter an order "forbidding the … discovery" sought by this request. Fed. R. Civ. P. 26(c).

*Phase 1 Request Nos. 6-7*[6]

The Plaintiffs' subpoenas also directly violate the Court's discovery phasing orders by requesting **all documents and communications describing or explaining** and **all documents and communications concerning** each of the products or services the subpoenaed entity provided to State Farm that "in any way use or incorporate one or more Algorithmic Tools" to:

a. Identify or assist in the identification of potentially fraudulent or complex Homeowners Insurance claims;

b. Assist with sorting, screening, labeling, routing, tracking, or categorizing Homeowners Insurance policyholders or claims in any manner that may affect or influence how an insurer processes Homeowners Insurance claims, including the speed with which the insurer processes and/or adjusts such claims; the amount and nature of documentation or proof the insurer requests in connection with such claims; the number of interactions the insurer's employees or agents have with the claimant; the amount of any payment or negotiated award; and the likelihood that such claim is identified as complex, potentially fraudulent, or gets directed to Special Investigation Unit (SIU) or law enforcement; and/or

c. Assist in developing, evaluating, or modifying policies, procedures, and/or criteria for identifying Homeowners Insurance claims as potentially fraudulent or complex.

Exs. 1-2, 4-7, Req. Nos. 6 and 7; Ex. 3, Req. No. 5. In other words, these requests broadly seek "all documents and communications" concerning the products and services that are the subject of Plaintiffs' Request Nos. 2 through 4.[7] Thus, these requests are beyond the scope of the discovery allowed by the Court's phasing orders for the same reasons as Request Nos. 2 through 4. But these

---

[6] The corresponding requests in the Eberl subpoena are numbered 5 and 6. *See* Ex. 3.

[7] Subparts a through c of each of these requests correspond to Plaintiffs Request Nos. 2 through 4, respectively.

requests also directly violate Judge Harjani's orders in another way, because rather than limiting the requests to documents sufficient to *identify* "what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims," Dkt. 79, they seek "**all documents and communications**" describing, explaining, or concerning any products or services the subpoenaed entities provided to that meet the (overly broad) criteria in the requests. That is exactly the kind of "voluminous ESI discovery around communications and documents" and "deep dive into the tools" that the Court expressly stated would *not* be part of the current stage of discovery. *Id.* The Court should therefore enter an order "forbidding the … discovery" sought by these requests. Fed. R. Civ. P. 26(c).

*Phase 1 Requests Nos. 8-9*

Plaintiffs' subpoenas to Duck Creek, Salesforce, and Verisk also purport to require those entities to produce "[a]ll agreements" those entities have with each other relating to any products or services any of those entities provide to State Farm. *See* Exs. 2, 5 and 7, Req. No. 8. This unqualified request does not even give lip service to the Court's phasing orders limiting the initial phase of discovery to the identification of algorithmic tools that State Farm uses to sort potentially fraudulent/complex claims from straightforward claims. Dkt. 79. And Request No. 9 is even farther afield, purporting to require each of Duck Creek, Salesforce and Verisk to produce "[a]ll Documents and Communications describing or explaining each of the products or services" that the subpoenaed entity "provided, sold, or licensed to" one or both of the other two, that "in any way use or incorporate one or more Algorithmic Tool(s)" that meet the criteria set forth in one or more of the three sub-parts of Request No. 9. *See* Exs. 2, 5 and 7, Req. No. 9. This request does not reference State Farm at all, much less any use of any algorithmic tool(s) by State Farm per the

11

Court's discovery phasing orders. The Court should therefore enter an order "forbidding the … discovery" sought by these requests. Fed. R. Civ. P. 26(c).

### *Phase 2 Requests*

Finally, and with complete disregard for the Court's discovery phasing orders, Plaintiffs labeled a subset of their requests as "Specific Requests for Production—Phase 2." Exs. 1 and 3-7, Phase 2 Request Nos. 1-4; Ex. 2, Phase 2 Request Nos. 1-5. Plaintiffs' "Instructions" to each of the subpoenaed entities include the following statement regarding the "Phase 2" requests:

> [T]hese requests are reserved for Phase II of discovery as articulated in the Court's scheduling order of February 24, 2024 and Plaintiffs accordingly do not seek responses by April 10, 2024. Plaintiffs are willing to meet and confer with You regarding an appropriate response time for the [Phase 2 requests].

Exs. 1-7, Section II (Instructions), Instruction No. 2. The "Instruction" is both misleading, and purports to impose on the subpoenaed entities a burden with respect to "Phase II" discovery (to "meet and confer" with Plaintiffs' counsel) that, again, directly violates the Court's discovery phasing orders.

As an initial matter, there is no "scheduling order of February 24, 2024." Plaintiffs presumably intended to refer to the Court's February 23, 2024 discovery phasing order, although they notably failed to provide the subpoenaed entities with a copy of that order (or, indeed, any of the Court's discovery orders). Further, the only reference to Phase II discovery in the Court's February 23, 2024 order is the following: "Class-wide claims data and statistical data will be reserved for Phase Two." Dkt. 79. None of the Phase 2 requests to the subpoenaed entities seek discovery of that type – to the contrary, the requests purport to require production of even *broader* categories of documents than Plaintiffs seek in their already overly broad Phase 1 requests.[8]

---

[8] For example, each of the subpoenas seeks production of "[a]ll Documents concerning State Farm's use" of *any* "software, analytics programs and/or Algorithmic Tools" that the subpoenaed entity "provided to State Farm." Exs. 1-7, Req. Nos. 2 and 3.

Plaintiffs' requests for "Phase 2" discovery are also misleading, and grossly premature, because the actual discovery schedule that Judge Harjani entered does not reference Phase II *at all*. Dkt. 81. Rather, the Order sets a schedule for the completion of "the preliminary focus of Phase I discovery," and provides that, once that "preliminary focus" discovery is completed, the parties "shall meet and confer for a schedule to complete Phase I discovery." *Id.* There is no schedule, deadline, or defined scope for Phase II discovery, which may never in fact occur. Plaintiffs' service at this juncture of subpoenas that purport to require nonparties to produce documents that even they recognize are *not* within the scope of the current phase of discovery would entirely defeat the purpose of the Court's phased discovery orders. *See, e.g.*, *Christian v. Generation Mortg. Co.*, No. 12 C 5336, 2013 WL 2151681, at *4 (N.D. Ill. May 16, 2013) (recognizing that the purpose of bifurcating discovery is to "promote efficiency and economy" and avoid burdening a defendant with "onerous and expensive discovery" that may prove to be unnecessary); *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at * 3 (N.D. Ill. Nov. 17, 2010) (ordering phased discovery "to ensure that discovery is proportional to the specific circumstances of th[e] case, and to secure the just, speedy, and inexpensive determination of th[e] action."). The Court should therefore enter an order "forbidding the … discovery" sought by Plaintiffs' purported "Phase 2" requests. Fed. R. Civ. P. 26(c).

\*     \*     \*

Plaintiffs cannot avoid or end-run the Court's discovery phasing orders by serving nonparties with subpoenas that seek discovery beyond the scope of what the Court has allowed. *See, e.g., The Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co.*, No. 19-cv-00743, Dkt. 247 (N.D. Ill. Jan, 31, 2023) (granting motion for protective order regarding plaintiffs' subpoena to a nonparty that sought categories of State Farm documents "identical to those that Plaintiffs

13

sought from Defendant, many of them already disallowed by the court as improper"); *Cardona v. Vivint Solar, Inc.,* No. 2:19-MC-00161, 2019 WL 4686556, at *2–3 (E.D. Pa. Sept. 26, 2019) (granting motion to quash third-party document subpoena and reasoning that to hold otherwise would allow plaintiff to obtain information from a third party that plaintiff was prohibited from obtaining from defendant, thereby rendering the court's discovery order meaningless). Plaintiffs may not obtain from nonparties discovery that this Court's orders currently prohibit them from seeking from State Farm. Plaintiffs' subpoenas to the nonparties should therefore be barred. *Connectors Realty Group*, Dkt. 247; *Cardona* , 2019 WL 4686556, at *2-3; *see also Buonavolanto*, 2019 WL 8301068, at *3 (granting party's motion for protective order because third-party subpoenas failed "the proportionality and relevancy tests under Rule 26(b)").

**II.     The Subpoenas to Crawford, Duck Creek, Eberl, Renfroe, Salesforce and Verisk Infringe Upon State Farm's Interests**

In addition to violating the Court's discovery phasing orders, Plaintiff's subpoenas to Crawford, Duck Creek, Eberl, Renfroe, Salesforce, and Verisk infringe on State Farm's legitimate interest in protecting its confidential commercial business information. Most of the requests seek documents (to the extent they exist) that specifically relate to the subpoenaed entities' contractual, business relationships with State Farm. Accordingly, State Farm has standing under both Rule 26(c) and Rule 45 to seek a protective order or an order quashing the subpoenas, and the Court should enter such an order. *See PrimeSource Bldgs. Prods., Inc.*, 2018 WL 10425599, at *2 ("PrimeSource has shown that the categories of information sought from third parties represent the kinds of financial and business information that can give rise to a privacy interest. For example, among the categories of information sought are valuations of PrimeSource, agreements related to the transaction between PrimeSource and Platinum Equity, and confidential information memoranda used with potential PrimeSource investors."); *see also Countryman v. Comty. Link*

14

*Fed. Credit Union*, No. 1:11-CV-136, 2012 WL 1143572, at *3 (N.D. Ind. Apr. 3, 2012) ("Businesses have a legitimate interest in the privacy of their financial information that can confer standing to challenge a subpoena to a third party to produce that information.").

## **CONCLUSION**

For the foregoing reasons, State Farm respectfully requests that the Court enter a protective order pursuant to Federal Rule of Civil Procedure 26(c) "forbidding the … discovery sought by Plaintiffs' subpoenas to Crawford & Company, Duck Creek Technologies Inc., Eberl Claims Service LLC, E.A. Renfroe & Company, Inc., Salesforce Inc., Symbility Solutions Corp., and Verisk Analytics, Inc. or, in the alternative, quashing the subpoenas to Crawford, Duck Creek, Eberl, Renfroe, Salesforce, and Verisk pursuant to Federal Rule of Civil Procedure 45.

Dated: April 10, 2024

Respectfully submitted,

/s/     Sondra A. Hemeryck
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
Fax: 312-471-8701
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Attorneys for Defendant State Farm Fire & Casualty Company*

15