**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jacqueline Huskey and Riian Wynn, on behalf of themselves and all others similarly situated, | Case No.: 22-cv-7014 |
| *Plaintiffs*, | Hon. Jeffrey I. Cummings |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| State Farm Fire & Casualty Company, *Defendant*. | |

## OPPOSITION TO STATE FARM'S MOTION FOR A PROTECTIVE ORDER

This case is about the disparate impact of algorithmic tools that Defendant State Farm uses to process homeowners' insurance claims. Yet, through six months of discovery, State Farm has failed to give straight answers about what algorithmic tools it uses. Ex. A (Chart of Equivocations). Indeed, on February 23, 2024, Judge Harjani noted that "State Farm did not seem entirely sure" (Dkt. 79)—even though Plaintiffs had issued on-point Requests for Production in October 2023 (and this case has been pending since December 2022). Despite State Farm's equivocations and denials, Plaintiffs discovered hundreds of references to third-party algorithmic providers in claim files that State Farm provided through discovery, as well as in public sources. Ex. A at 1. Accordingly, Plaintiffs subpoenaed third parties, each of whom offer algorithmic tools and provide services to State Farm or its vendors.

Plaintiffs took care to structure their subpoenas in accordance with Judge Harjani's February 24, 2024 Order, Dkt. 79. Per the Order, Plaintiffs split their requests into Phase I and Phase II and instructed the third parties <u>not to respond</u> to Phase II requests at this time. They also focused their Phase I request on the "'algorithmic decision-making tools' employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims" (referred to

1

hereafter as "Algorithmic Sorting Tools"). *Id*.; *See also* Dkt. 81 (ordering a date for written discovery on that topic). Additionally, Plaintiffs informed State Farm that they were prepared to further phase their Phase I requests so that third parties first produce documents "sufficient to identify" the algorithmic tools at issue and later provide documents and communications "describing or explaining" such tools. Ex. B (Parties' Email Exchange).

Contrary to State Farm's conclusory arguments, Plaintiffs' Phase I requests seek relevant information and are proportional to the needs of the case. The subjects of Plaintiffs' requests—third parties' Algorithmic Sorting Tools and their relationships with State Farm—all directly bear upon the central question of Phase I: whether and how State Farm uses such tools. Dkt. 79. This third-party discovery is critical to "resolving the issues" about State Farm's algorithmic tools, especially given that State Farm is not "entirely sure" what tools it uses. Dkt. 79; Fed. R. Civ. Proc. 26(b)(1); *see also* Ex. A. Moreover, the "issues at stake" are significant: class-wide allegations of algorithmic bias spanning six states. Fed. R. Civ. Proc. 26(b)(1). Plaintiffs also have almost no "access to relevant information" compared to State Farm and the third parties. *Id.* Algorithmic tools are classic "black boxes," particularly inscrutable to outsiders like Plaintiffs. *See* n. 20, *infra*. With only cursory arguments to the contrary, State Farm fails "to establish the request[s] [are] improper." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020).

Nor do State Farm's alleged privacy concerns justify a protective order or quashing the subpoenas. This case's general protective order already offers ample protection.

Thus, State Farm should not be permitted to "hide the ball" with boilerplate objections of relevance, proportionality, or privacy. Discovery is a "search for truth." *Id.* (citation omitted). Plaintiffs' subpoenas are well-tailored to that end and conform with all phasing requirements.

**BACKGROUND**

I.     **Procedural Background**

In this proposed class action, Plaintiffs assert disparate impact claims against State Farm under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. *See generally* Pls.' First Amend. Compl. ("FAC"), Dkt. 23. Plaintiffs allege that State Farm has a policy of using automated systems that use, incorporate, and rely on algorithmic decision-making tools to process and handle homeowners' insurance claims, and that as a result of that policy, State Farm has subjected claims of Black claimants to greater scrutiny and delay than those of white claimants. *Id.*

Contrary to what State Farm contends, Plaintiffs' allegations are not limited to the initial assessment of homeowners' insurance claims: they cover all steps—initial and thereafter—of the claims processes. *See, e.g., id.* ¶ 4 ("This discrimination is the result of a specific policy: State Farm's decision to employ an automated system—in lieu of human judgment—to determine how the high-volume of homeowners' insurances claims it receives <u>should be processed</u>[1]"); ¶ 32 ("State Farm made the decision to automate <u>claims processing, or major aspects of it</u>, and thereby replace human judgment with algorithms.").[2] As Judge Kendall noted, "Plaintiffs point to a specific policy:

---

[1] Merriam Webster defines the word "process" as "a series of actions or operations conducing to an end." <u>Process</u>, MERRIAM-WEBSTER'S DICTIONARY (last visited Apr. 24, 2024).

[2] *See also* ¶ 5 ("It is thus reasonable to attribute a systematic difference in the rate of claims subjected to heightened scrutiny to State Farm's policy of using algorithmic decision-making tools <u>to screen and address</u> all policyholder claims.") (emphasis added); ¶ 33 ("State Farm harnesses a variety of tools to collect extensive data about policyholders and uses that data in <u>claims processing and fraud detection</u>.") (emphasis added); ¶ 36 ("State Farm also uses a combination of internal and third-party tools to leverage the vast troves of data it collects <u>to process</u> homeowners insurance claims. . . . State Farm executes <u>automated processes based on code and data relationships</u>.") (emphasis added); ¶ 38 ("State Farm has used Salesforce's Financial Services Cloud, Duck Creek Claims, and/or other similar internal and external algorithmic decision-making tools <u>to process</u> its homeowners insurance claims[.]") (emphasis added); ¶ 62 (common questions include, "Whether State Farm uses algorithmic decision-making tools <u>to triage and process</u> homeowners insurance claims, and the nature, scope, and operation of those tools[.]") (emphasis added).

3

State Farm's decision to use algorithmic decision-making tools to automate claims-processing. Plaintiffs need not pin down the policy with greater precision at this stage." Dkt. 52 at 16.

Beginning in October 2023, Plaintiffs propounded discovery requests. In response, State Farm equivocated on whether they even use Algorithmic Tools. *E.g. Compare* Ex. C, Excerpted Resp. to Pls' First RFPs at Req. 7 (stating State Farm would produce documents sufficient to describe the operation of "any computer-based [or] automated" tools "that were used in the routing of Plaintiffs' insurance claims.") *with id.* at Req. 15 (Denying that State Farm "use[d] in connection with Plaintiffs' insurance claims . . . any computer-based or automated tool that uses . . . data science tools or concepts to . . . assist with decision-making.").[3] Yet Plaintiffs' claim files painted a clearer picture—they contain hundreds of references to algorithmic tool providers. Ex. A.

Plaintiffs were awaiting State Farm's response to their deficiency letter when this case was referred to Magistrate Judge Sunil R. Harjani for discovery supervision and scheduling. Dkt. 71, 74. After a status hearing on February 22, 2024, Judge Harjani entered a discovery phasing Order, limiting Phase I discovery to:

> algorithmic decision−making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims.

Dkt. No. 79. After observing that "State Farm did not seem entirely sure," whether they used Algorithmic Tools, Judge Harjani also wrote:

> Thus, Phase I should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, before the parties start exploring such voluminous ESI discovery around communications and documents about their use, and the means and methods in which they are used that could, allegedly, result in a disparate impact.

*Id*. On March 5, 2024, Magistrate Judge Harjani entered a discovery schedule, which stated:

---

[3] *See also* Ex. D (Excerpted Resp. to Pls's Second RFPs, Reqs. 4-6, 8-10); Ex. E (Amended Resp. to Pls's ROG 5).

4

> Written discovery focused on the algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims shall issue by March 27, 2024.

Dkt. No. 81. Thereafter, Plaintiffs issued the third-party written discovery at issue here, which is targeted at providers of algorithmic tools that were identified through public information and State Farm's discovery responses, most notably Plaintiffs' claim files.

### II. The Subpoenaed Non-Parties Use Algorithms and Integrate with State Farm Or its Vendors

Plaintiffs carefully selected third-party vendors that: (a) use algorithmic tools to "screen out potentially fraudulent or complex claims from straightforward claims," Dkt. 79, and (b) have direct ties to State Farm or to vendors that State Farm uses to process claims.

███████████████████████████████ appears hundreds of times in Plaintiffs' claim files. Ex. A at 1-2. Specifically, State Farm's productions indicate that it uses ███████ a "robust fraud detection platform"[4] that employs "sophisticated algorithms" to search for prior claims and "fraud indicators";[5] produce color-coded recommendations—red, yellow, and green—for high, medium, and low levels of investigation,[6] and generate ███████ which can "speed payment of meritorious claims" but can also lead to "further investigation," or even "denial[s]" and "reduced award[s]."[7] See Ex. A at 1 (noting references in Plaintiffs' claim files to ███████ ███████ and "Frequency Search Automatic ███████").

Four subpoenaed entities in addition to ███ have direct relationships with State Farm— Salesforce, ███ ███ and ███ State Farm's homeowners insurance claims "flow[]

---

[4] ███████████████████████████████████████ (last visited Apr. 22, 2024).
[5] ███████████████████████████████ at 13, ███████████████ (last visited Apr. 22, 2024).
[6] ███████████████████████████████████████████████ (last visited Apr. 22, 2024).
[7] ███████████████████████████████████████████

5

through Salesforce,"[8] which offers a wide range of "intelligent, proactive, AI-powered" CRM software.[9] ▇▇▇ a claims service solutions company that appears 29 times in Plaintiff Wynn's claim file, uses "advanced metrics reporting and data analysis capabilities."[10] ▇▇▇ which appears 101 times in Plaintiff Wynn's file, uses "AI and machine learning in multiple ways" to "triage[ ] claims."[11] ▇▇▇ another vendor appearing in claim files, offers "customized automation" and "technology & data-driven" solutions.[12]

The final two subpoenaed entities, Duck Creek and ▇▇▇ integrate with State Farm's vendors. Duck Creek, an insurance-specific software and analytics company that provides fraud detection tools, works with Salesforce to "deliver a comprehensive [property and casualty] servicing platform"[13] and also integrates with ▇▇▇ *See* Argument, Section II(a)(iv), *infra*. ▇▇▇ which uses a "rules based engine" to "automatically prioritize" next steps,[14] integrates with ▇▇▇ a loss adjusting vendor involved with Plaintiff Huskey's claim that offers "SIU [Special Investigation Unit] identification and approval."[15]

## LEGAL STANDARD

A party seeking a protective order must show "good cause." *Chicago Mercantile Exch., Inc. v. Tech. Rsch. Grp., LLC.*, 276 F.R.D. 237, 239 (N.D. Ill. 2011). "General assertions of undue hardship" are insufficient. *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). "If

---

[8] FAC ¶ 37.
[9] *Salesforce CRM: Everything you need to know*, SALESFORCE, INC. (last visited Apr. 22, 2024).
[10] ▇▇▇ last visited Apr. 22, 2024).
[11] ▇▇▇ (last visited Apr. 22, 2024).
[12] ▇▇▇ (last visited Apr. 22, 2024).
[13] FAC ¶ 37.
[14] ▇▇▇ (last visited Apr. 22, 2024).
[15] ▇▇▇ (last visited Apr. 22, 2024).

discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper." *Doe*, 2020 WL 406771, at *2. Conclusory proportionality objections will not do. *Manassa v. Nat'l Collegiate Athletic Ass'n*, No. 120CV03172RLYMJD, 2023 WL 1765993, at *5 (S.D. Ind. Feb. 3, 2023). Similarly, a party must make a specific and non-conclusory showing of harm to quash a non-party subpoena. *Elwell v. First Baptist Church of Hammond, Ind. Inc.*, 2017 WL 3262532 at *4 (N.D. Ind. 2017).

## ARGUMENT

### I. Plaintiffs' Subpoenas Adhere to the Court's Phasing Order

Contrary to Defendant's arguments, Plaintiffs' subpoenas accord with Judge Harjani's Phasing Order, Dkt. 79. The Phase I requests focus on Algorithmic Sorting Tools. Plaintiffs included the Phase II requests, which address other subjects, to reduce the likelihood of needing to send multiple subpoenas to third parties. As such, these requests instruct subpoena recipients that they need not respond at this time. Moreover, as Plaintiffs indicated to State Farm, they are prepared to further phase their Phase I requests so that third parties first produce documents "sufficient to identify" the algorithmic tools at issue (Phase I Reqs. 1-5) and later provide documents and communications "describing or explaining" such tools (Phase I Reqs. 6-9). Ex. B.

State Farm, however, is not satisfied. In its view, Plaintiffs Requests 1-5 must be limited to Algorithmic Sorting Tools that State Farm uses "at the outset." But Plaintiffs have not limited their allegations in this manner, *see* n. 2, *infra*, nor did Judge Harjani so cabin Phase I. In fact, he broadly set a March 27, 2024, date for: "Written discovery focused on the algorithmic decision−making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims." Dkt. 81. To be sure, Judge Harjani referenced the "outset" once in his phasing Order (Dkt. 79), but that may well refer to the "outset" of discovery, not the

"outset" of claims. Even if the latter, the Algorithmic Sorting Tools may be pre-programmed into the claims process, and in that sense are present both "at the outset" of every claim and during later stages of a claim's lifecycle.

Even if Defendant's rigid temporal interpretation of the term "at the outset" applied—and it should not—its demand to micro-phase discovery makes little sense. Phase I applies to all Algorithmic Sorting Tools, not just those used "at the outset." Dkts. 79, 81. It would be unnecessarily duplicative to issue third party subpoenas about tools that are used "at the outset" and then, later, issue more additional subpoenas about tools used "after the outset." Moreover, identifying the third-party Algorithmic Sorting Tools that State Farm uses is the first step in determining how and when State Farm deploys those tools (whether "at the outset" or otherwise). Additionally, there has been no meaningful discovery about State Farm's claims process, including what constitutes "the outset" of claims. Thus, limiting discovery to the undefined "outset" will only engender more disputes about the scope of discovery and the completeness of responses.

## II.  State Farm's Relevance and Proportionality Objections Fail.

Contrary to State Farm's arguments, Plaintiffs' requests do not "violate" or exceed the "scope" of Judge Harjani's phasing Order. Dkt. 85. Rather, Plaintiffs' Phase I requests seek information that is relevant to State Farm's Algorithmic Sorting Tools and proportional to the needs of this multi-state class action in which Defendant and third parties possess all the information about the Algorithmic Tools at issue. *See* Fed. R. Civ. P. 26(b)(1).[16]

---

[16] State Farm avers that Plaintiffs' definition of "Algorithmic Tool" is "broad[]" but offers no analysis or argument as to why it is overbroad. Dkt. 85 at 8. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery.") Indeed, Plaintiffs' definition is appropriately tailored to the ways in which they have described and discovered algorithmic tools at work in this space: by using "algorithms, statistics, data analytics . . . and [other] data science tools and concepts to label data, predict outcomes, and assist with decision-making." *See* n. 2 and

### a. The Requests Seek Relevant Information

While Judge Harjani's Order limited the subject matter of Phase I discovery to Algorithmic Sorting Tools, it did not dispense with fundamental principles of relevance. At trial, Plaintiffs may present information that "has any tendency" to make their allegations about Algorthmic Sorting Tools "more or less probable than [they] would be without the evidence." Fed. R. Evid. 401(a)-(b). In discovery, relevance is "necessarily broader." *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020). In its motion, State Farm does not cite, let alone offer analysis under, the standard for relevance. Properly viewed, each request seeks documents that, at the least, have a "tendency" to make "more or less probable" that State Farm is using Algorithmic Sorting Tools.

### i. Request Nos. 1-4

Contrary to State Farm's contentions, Requests 1-4 are each tailored to the scope of Phase I discovery, as well as Phase I's "initial focus" of identifying Algorithm Tools. *E.g.* Dkt. 85-2 at 12-13. Request No. 1 seeks each third party's agreements with State Farm concerning Algorithmic Tools that assist "in the identification of potentially fraudulent or complex Homeowners Insurance claims." Such agreements would have a "tendency" to show that State Farm, in fact, uses Algorithmic Tools. Fed. R. Ev. 401. Similarly, Requests 2-4 specifically seek "[d]ocuments and [c]ommunications sufficient to identify" each third party's Algorithmic Sorting Tools that State Farm uses. *See* Req. No. 2 (seeking identification of Algorthmic Tools that assist "in the identification of potentially fraudulent or complex Homeowners Insurance claims."); Req. No. 3 (seeking identification of Algorithmic Tools that assist with "sorting, screening, labeling . . .

---

accompanying text (quoting from the complaint) and Background Section II *supra* (describing the third-party providers' tools).

Homeowners Insurance claims."); Req. No. 4 (seeking identification of Algorithmic Tools that assist in the development of policies, procedures, and/or criteria for "identifying Homeowners Insurance claims as potentially fraudulent or complex.").

State Farm decries these Requests for seemingly any language that deviates from the verbatim phrasing of Judge Harjani's Order. Dkt. 85 at 7-8. But relevance is not so formalistic. "[B]ecause the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly." *Coleman*, 2020 WL 5752149, at *3. (citation omitted); *Accord* 8 Fed. Prac. & Proc. Civ. § 2008 (3d ed.) ("Certainly the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms.").

Here, if State Farm employs third-party products that "in any way use or incorporate an algorithmic tool[]"—one of the key phrases State Farm takes issue with (Dkt. 85 at 7)— it is "more . . . probable" that State Farm is in fact using such tools. *See* Fed. R. Ev. 401(a). Moreover, if State Farm uses Algorithmic Tools that are "capable of assisting in the identification of" or "develop[ing] . . . criteria for identifying" fraudulent and/or complex claims (Reqs. 2 and 4, respectively), it is more probable that State Farm in fact uses such tools to "screen out potentially fraudulent or complex claims from straightforward claims." Dkt. 79. Likewise, it is more probable that Algorthmic Sorting Tools are involved when State Farm uses a third party's tools to "sort[], screen[], label[], [or] rout[e] . . . Homeowners Insurance policyholders or claims" in ways that affect or influence how claims are handled, for example, by affecting the "speed" at which claims are processed, the "amount and nature of documentation or proof the insurer requests," and the "likelihood that such claim[s] are identified as potentially complex." Req. No. 3.

    ii.   **Request No. 5 (for all subpoenaed entities except Eberl)**

10

Request No. 5, which seeks information "sufficient to demonstrate" State Farm's use of or access to particular Algorithmic Sorting Tools, is entirely appropriate. *E.g.* Dkt. 85-2 at 13. First, Request No. 5 puts a finer point on Requests Nos. 1-4 and ensures that Plaintiffs obtain discovery about specific algorithmic tools regardless of how the third parties interpret Requests 1-4. Many of the tools named in Request No. 5 clearly qualify as Algorithmic Sorting Tools, including ▮▮▮▮ and ▮▮▮ other fraud detection tools (which use "predictive models to accurately score claims based on fraud indicators")[17] and ▮▮▮▮▮ (which "dynamically routes" claims "through one of three processes, based on complexity").[18] To the extent RFP No. 5 is duplicative of other requests, it would not require the subpoenaed entities to produce additional documents or pose any burden whatsoever on State Farm. *See Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 WL 2974083 (N.D. Ill. Apr. 17, 2023) (rejecting argument that third-party subpoenas were duplicative, since parties "cannot articulate" non-parties' "time and expense in producing materials," and "speculation alone is inadequate to establish undue burden" (internal quotation omitted)).

Yet even if some of the tools named in Request No. 5 are not "Algorithmic Sorting Tools" within the meaning of Judge Harjani's order, Plaintiffs are entitled to discovery that will help them identify tools that are. As discussed *infra*, Section II(b), algorithmic tools are often poorly understood by their users. Thus, it is plausible that estimating services like ▮▮▮ and ▮▮▮▮ sort claims based on estimating inputs or outputs in ways that State Farm does not understand. This is especially true since ▮▮▮ and ▮▮▮ the vendors that offer these services, offer Algorithmic Sorting Tools. *See* Background, Section II, *supra*. Thus, discovery on these tools

---

[17] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[18] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (last visited Apr. 22, 2024).

would tend to make Plaintiffs' allegations "more or less probable" (and with little imposition on third parties, since Plaintiffs merely seek documents "sufficient to demonstrate" access or use).

### iii. Request Nos. 6-7 (Nos. 5-6 for Eberl)

As State Farm notes, Requests 6-7 seek documents and communications concerning the Algorithmic Tools that third parties identify in response to Requests 2-4. *E.g.* Dkt. 85-2 at 13-15. Just as Requests 2-4 seek relevant documents (see arguments *supra*), so do these. Indeed, Requests 6-7 are essential for *understanding* the Algorithmic Tools identified in response to Requests 2-4. Moreover, Plaintiffs have addressed Defendant's timing concern (Dkt. 85 at 11): they are willing to first obtain productions responsive to Requests 1-5 (all of which seek to "identify" Algorithmic Sorting Tools) and thereafter meet and confer with third parties about their responses to the remaining requests (i.e., Nos. 6-9).

### iv. Request Nos. 8-9

Requests 8-9 also seek relevant information, since discovery into the relationships between ▇▇▇ Salesforce, and Duck Creek will assist with the identification of State Farm's Algorithmic Sorting Tools. *E.g.* Dkt. 85-2 at 15. First, State Farm has or had relationships with ▇▇▇ Salesforce, and Duck Creek. Ex. A; *see also* Def's Answer, Dkt. 59 at ¶ 37. Second, ▇▇▇ Salesforce, and Duck Creek work together to provide insurance automation services, including fraud detection tools.[19] Furthermore, as noted in correspondence with State Farm, Plaintiffs will

---

[19] Plaintiffs allege that Duck Creek and Salesforce work together to "deliver a comprehensive [property and casualty] servicing platform." FAC ¶ 37, *see also* Ex. A at 4. ▇▇▇ "integrate[s] with Duck Creek and is committed to helping insurers navigate risk and grow faster" through Duck Creek's claims platform, Duck Creek OnDemand. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (last visited Apr. 22, 2024). ▇▇▇ also uses Salesforce's products—for example, it posted a job opening for a Salesforce administrator to work on "case assignment" and "escalation rules." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (last visited Apr. 22, 2024).

12

hold Requests 8-9 in abeyance pending responses to Requests 1-5. This lightens any purported burden associated with these requests.

### b. The Requests are Proportional to the Needs of the Case.

Though State Farm makes boilerplate references to "proportionality," it offers no arguments in support of that objection. Dkt. 85 at 6-7. Accordingly, its proportionality objections should be disregarded. *See Manassa v. Nat'l Collegiate Athletic Ass'n*, No. 120CV03172RLYMJD, 2022 WL 2292833, at *5 (S.D. Ind. June 23, 2022) ("[C]ourts within the Seventh Circuit consistently overrule [boilerplate objections] or entirely disregard such."); Fed. R. Civ. P. 26(b)(1)), Adv. Comm. Note to 2015 Amendment (opposing party may not "refuse discovery simply by making a boilerplate objection that it is not proportional"). Moreover, as State Farm's own citations attest, the third parties, not State Farm, are the ones properly positioned to raise proportionality concerns (if any). *See DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020).

In any event, the Phase I requests are proportional to the needs of the case. "The issues at stake" and "the amount in controversy" are significant, given that this is a multi-state class action, alleging widespread algorithmic bias. Fed. R. Civ. Proc. 26(b)(1). Moreover, Plaintiffs have almost no "access to relevant information" about the Algorithmic Tools at issue. *Id.* Those tools are opaque, difficult to understand, and often misunderstood by their users and even their developers.[20]

---

[20] *See generally* Ashley Deeks, *The Judicial Demand for Explainable Artificial Intelligence*, 119 COLUM. L. REV. 1829 (2019); Cynthia Rudin, *Stop Explaining Black Box Machine Learning Models for High Stakes Decisions and Use Interpretable Models Instead*, NAT. MACH. INTELL. 1, 206-15 (2019); Maayan Perel & Niva Elkin-Koren, *Black Box Tinkering: Beyond Disclosure in Algorithmic Enforcement*, 69 FLA. L. REV. 181 (2017); Anupam Chander, *The Racist Algorithm?*, 115 MICH. L. REV. 1023 (2017); Frank Pasquale, *The Black Box Society: The Secret Algorithms That Control Money and Information* (2016); Andreas Tsamados and Nikita Aggarwal et al, *The Ethics of Algorithms: Key Problems and Solutions*, AI & SOC. 37, 215-30 (2022); Manuel

Indeed, State Farm is "not entirely sure" whether it uses Algorithmic Tools, even though the very first document that State Farm produced readily indicates a wealth of third-party algorithmic providers. Ex. A. Accordingly, discovery from those third-party algorithmic providers is critical to Plaintiffs' ability to identify and understand the Algorithm Sorting Tools that State Farm uses.

### III.     Phase II Requests

Plaintiffs were clear in their subpoenas: the Phase II requests "are reserved for Phase II of discovery as articulated in the Court's scheduling order." *E.g.* Dkt. 85-2 at 4. Plaintiffs explicitly told the recipients *not to respond* to those requests by the return date. Plaintiffs did so to *reserve their rights* to seek these documents *at a later date* and to reduce the likelihood of having to send multiple subpoenas to each third party over the course of this case.

As for relevance and proportionality, Defendants' arguments against the Phase II requests are even thinner than their Phase I arguments. This case is about State Farm's use of Algorithmic Tools, which are often embedded in software or analytics programs. Each of the requests seeks information on those very topics, as well as State Farm's contracts with third parties. *E.g.* Dkt. 85-2 at 16. As for proportionality, there are huge informational asymmetries between the parties, and this case is a proposed multi-state class action concerning allegedly widespread algorithmic bias. Further, at present, there is no burden associated with the Requests reserved for Phase II.

### IV.     State Farm's Privacy Interests Do Not Support the Relief it Seeks

As with State Farm's relevance and proportionality arguments, the Court can easily dispense with State Farm's cursory confidentiality argument. Dkt. 85 at 14-15. State Farm offers only one sentence supporting this argument, averring that "[m]ost of the requests seek documents

---

Carabantes, *Black-Box Artificial Intelligence: An Epistemological And Critical Analysis*, AI & Soc. 35, 309-17 (2020).

(to the extent they exist) that specifically relate to the subpoenaed entities' contractual, business relationships with State Farm." *Id.* 14. But State Farm fails to provide "a particular and specific demonstrations of fact, as distinguished from stereotyped and conclusory statements," to show "that it will be harmed by disclosing information." *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d. 758, 766 (N.D. Ill. 2010) (emphasis added) (internal quotation and citation omitted).[21] Indeed, this case's general Confidentiality Order (Dkt. 65) offers ample protection from disclosure of any purportedly confidential information. *Johnson & Johnson, Ethicon, Inc. v. Advanced Inventory Mgmt., Inc.*, No. 20-CV-3471, 2020 WL 8260382 (N.D. Ill. Sept. 8, 2020) (overruling defendants' confidentiality and privacy-related objections because confidentiality order provided sufficient protection); *Sabuco v. Pecelunas*, No. 17-CV-9372, 2019 WL 13215194, at *2-3 (N.D. Ill. Sept. 17, 2019) (same). Accordingly, State Farm's alleged confidentiality concerns do not support a protective order or its motion to quash.

## CONCLUSION

Plaintiffs' subpoenas adhere to Judge Harjani's phasing Order, seek relevant documents proportional to the needs of this case, and pose no threat to State Farm's purported confidentiality interests. State Farm has failed to support its motion. The motion should be denied.

Dated: April 25, 2024

/s/     David Tracey

**SANFORD HEISLER SHARP, LLP**
David Tracey (*Pro Hac Vice*)
Albert Powell (*Pro Hac Vice*)
Sharon Kim (*Pro Hac Vice*)
17 State Street, 37th Floor
New York, NY 10004

---

[21] *See also ED&F Cap. Markets Ltd. v. JVMC Holdings Corp.*, 335 F.R.D. 174, 180 (N.D. Ill. 2020) ("It is well established that a protective order cannot be issued based on the kind of conclusory and non-specific allegations of injury that defendants have made."). *Harrisonville Tel. Co. v. Illinois Com. Comm'n*, 472 F. Supp. 2d 1071, 1077 (S.D. Ill. 2006) (collecting cases).

Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
sharonkim@sanfordheisler.com

**FAIRMARK PARTNERS, LLP**
Alexander Rose (*Pro Hac Vice*)
Jamie Crooks (*Pro Hac Vice*)
Michael Lieberman (*Pro Hac Vice*)
1001 G Street, NW, Ste. 400E
Washington, DC 20001
Phone: (301) 458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

**CENTER ON RACE, INEQUALITY, AND THE LAW AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (*Pro Hac Vice*)
Jason D. Williamson (*Pro Hac Vice*)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

*Counsel for Plaintiffs and the Proposed Class*