# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>    Defendant. | Case No. 22-cv-07014<br><br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge Jeffrey T. Gilbert |

## STATE FARM'S REPLY IN SUPPORT OF
## ITS MOTION FOR PROTECTIVE ORDER

Plaintiffs' Opposition to State Farm's Motion for Protective Order (Dkt. 87 (sealed); Dkt. 88 (redacted)) confirms that their subpoenas to nonparties Crawford & Company ("Crawford"), Duck Creek Technologies Inc. ("Duck Creek"), Eberl Claims Service LLC ("Eberl"), E.A. Renfroe & Company, Inc. ("Renfroe"), Salesforce Inc. ("Salesforce"), Symbility Solutions Corp. ("Symbility"), and Verisk Analytics, Inc. ("Verisk") violate the Court's discovery phasing orders (Dkts. 79 and 81). Plaintiffs' attempted justifications for those improper subpoenas—including their assertions that the subpoenas were necessitated by State Farm's supposed inability to understand the tools it uses, and their apparent belief that Plaintiffs are somehow better positioned *than State Farm* to identify through their Google searches the tools State Farm uses at the outset of a claim "to sort potentially fraudulent/complex claims from straightforward claims"—are completely without merit. State Farm's request for a protective order should be granted.

I. **Plaintiffs Effectively Concede That Their Subpoenas Violate the Phased Discovery Orders.**

Judge Harjani's orders regarding the "preliminary focus" of Phase I discovery are clear: "Phase I discovery shall be limited to algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims" (Dkt. 79); Phase I discovery should "*start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims*" (*id.* (emphasis added)); and the parties "should *identify* the tools first … before the deep dive into the tools" (Dkt. 81 (emphasis added)). Plaintiffs' subpoenas exceed the scope of discovery permitted by these orders both because they are not limited to "algorithmic tools [that] are used at the outset to sort potentially fraudulent/complex claims from straightforward claims," and because they seek documents and communications that go beyond "identification" of such tools. *See* Dkt. 85 at 4, 6–13.

As an initial matter, Plaintiffs attempt to avoid the clear limitations of Judge Harjani's orders by asserting that Judge Harjani's use of the word "outset" (Dkt. 79) could refer to the outset of discovery not the outset of claims handling. Dkts. 87 and 88 at 7–8. But the actual language of the Court's order cannot support that reading: if the word "discovery" were inserted after the word "outset," the order would not make sense. Moreover, as State Farm pointed out in its opening brief, Plaintiffs' own allegations make clear that the "gravamen of their complaint" (Dkt. 79) is State Farm's supposed use of algorithmic decision-making tools at the outset of the claims handling process. *See* Dkt. 85 at 2 (quoting (among others) Plaintiffs' allegations that State Farm "delegates … the initial assessment of the homeowners insurance claims it receives" to "algorithmic decision-making tools," that State Farm delegates to these purported algorithmic decision-making tools "the initial review of claims, the determination of claim scrutiny level, and assignment of tasks to claim

2

handlers," and that State Farm has a "policy of delegating the initial assessment of claims to its algorithmic decision-making tools"). Indeed, Plaintiffs confirmed as much during the hearing with Judge Harjani that resulted in the entry of his February 23, 2024 phased discovery order. *See* Dkt. 85 at 2 (quoting Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating the initial sort of sorting of claims" to "some sort of machine process" and that Plaintiffs' "allegation is that there's a policy … indicating some sort of automatic, automated process, the initial sort of sorting of claims."). Plaintiffs' patently unreasonable interpretation of the Court's order should be rejected.

In any event (and despite their strained interpretation of the Court's discovery phasing orders), Plaintiffs now effectively admit that their "Phase 1" Request Nos. 6 and 7 to Crawford, Duck Creek, Renfroe, Salesforce, Symbility and Verisk, their corresponding Request Nos. 5 and 6 to Eberl, and their Request Nos. 8 and 9 to Duck Creek, Salesforce and Verisk, are all outside the scope of the discovery allowed by Judge Harjani's discovery phasing orders. *See* Dkts. 87 and 88 at 12–13. Plaintiffs' offer to meet and confer with the subpoenaed entities regarding these requests (if those entities provide responses to Plaintiffs' other Phase I requests, discussed below), obviously does not cure their violation of the Court's orders. The Court should enter an order "forbidding the … discovery" sought by these Requests. Fed. R. Civ. P. 26(c)(A).

Plaintiffs also admit that their "Phase 1" Request Nos. 1 through 4 to all seven subpoenaed entities do not adhere to the language in Judge Harjani's orders. Dkts. 87 and 88 at 9–10. Plaintiffs attempt to justify their deviation from the Court's orders by relying on Federal Rule of Evidence 401, which defines "relevant" evidence. *Id.* Plaintiffs' reference to Rule 401 might be pertinent if

3

the current scope of permissible discovery in this case were defined by Rule 26(b)(1), but it is not.[1] The plain language of Rule 26(b)(1) provides: "***Unless otherwise limited by court order,*** … [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26(b)(1) (emphasis added). Here, the current scope of discovery has been limited by Judge Harjani's orders to the identification of "algorithmic tools [that] are used [by State Farm] at the outset to sort potentially fraudulent/complex claims from straightforward claims." Because Plaintiffs' Request Nos. 1 through 4 go well beyond that scope (*see* Dkt. 85 at 7–8), the Court should enter an order "forbidding the …discovery" sought by these Requests. Fed. R. Civ. P. 26(c)(A).

Plaintiffs also implicitly acknowledge that their "Phase 1" Request No. 5 to each of the subpoenaed entities other than Eberl seek discovery that is beyond the scope of Judge Harjani's orders. Plaintiffs assert that they are entitled to discovery on tools that may not be within the scope of the Court's orders, as each Request No. 5 seeks, because it is "plausible" that some of the services and tools Plaintiffs reference in Request No. 5—which Plaintiffs again apparently identified from their Google searches—may be sorting claims "in ways that State Farm does not understand." Dkts. 87 and 88 at 11. Plaintiffs' speculative suggestion that their internet research somehow makes them better able than State Farm itself to identify "what algorithmic tools" State Farm actually "use[s] at the outset to sort potentially fraudulent/complex claims from straightforward claims" does not entitle them to seek discovery that is outside the scope of the Court's orders. It is also demonstrably incorrect, as discussed in Section III, *infra*. The Court

---

[1] Even when there is no court order limiting the scope of discovery, discoverability of "relevant" information is still circumscribed by the requirement of proportionality.

should therefore enter an order "forbidding the … discovery" sought by Plaintiffs' Request No. 5 to Crawford, Duck Creek, Renfroe, Salesforce, Symbility, and Verisk. Fed. R. Civ. P. 26(c)(A).

Finally, Plaintiffs contend that because they directed the subpoenaed parties not to respond to their "Phase 2" requests immediately, the subpoenas are not violative of Judge Harjani's phasing orders. Dkts. 87 and 88 at 14. That is not so. As discussed in State Farm's opening brief, the discovery schedule that Judge Harjani entered does not reference Phase II *at all*. Dkt. 81. Rather, the order sets a schedule for the completion of "the preliminary focus of Phase I discovery," and provides that, once that "preliminary focus" discovery is completed, the parties "shall meet and confer for a schedule to complete Phase I discovery." *Id.* There is no schedule, deadline, or defined scope for Phase II discovery, which may never occur. Dkt. 85 at 12–13.[2] Plaintiffs' subpoenas purporting to require nonparties to produce documents that are not within the scope of the current phase of discovery defeats the purpose of the Court's phased discovery orders and the Court should enter an order "forbidding the … discovery" sought by Plaintiffs' purported "Phase 2" requests. Fed. R. Civ. P. 26(c)(A).

**II.     State Farm's Discovery Responses Confirm the Impropriety of Plaintiffs' Subpoenas.**

Plaintiffs contend that their subpoenas are appropriate because they have "almost no access to relevant information about the Algorithmic Tools at issue" and because, according to a few law review articles, algorithmic tools are "difficult to understand." Dkts. 87 and 88 at 13. These arguments, too, are without merit.

The day after Plaintiffs filed their opposition to State Farm's Motion, State Farm timely responded to Plaintiffs' mis-named Amended First Set of Interrogatories and their Third Set of

---

[2] There is no reason to believe that, if Phase II does occur, it will encompass the discovery sought by Plaintiffs' "Phase 2" Requests. *See* Dkt. 85 at 12.

Requests for Production. *See* State Farm's Resp. to Plaintiffs' "Amended First Set of Interrogatories," attached as Exhibit A; State Farm's Resp. to Plaintiffs' Third Set of Requests for Production, attached as Exhibit B.[3] As the objections set forth in State Farm's responses show, Plaintiffs' discovery requests to State Farm, like the vendor subpoenas that are the subject of this Motion, are grossly overreaching and beyond the scope of what is permitted by Judge Harjani's discovery phasing orders. Nevertheless, State Farm provided sworn interrogatory responses in which it identified computer-based, automated and/or rules-based tools used by State Farm at any time since January 1, 2018 to assist in the routing of homeowners insurance structural damage claims or to assist claims personnel in identifying potentially fraudulent homeowners insurance structural damage claims. Ex. A at 10–11.[4] State Farm's sworn interrogatory responses also provided information regarding each identified tool (*id.* at 16–19), and State Farm agreed in its RFP responses to produce documents sufficient to generally describe each tool (Ex. B at 15).

As State Farm's discovery responses indicate, State Farm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A at 10–11, 16, 18. State Farm also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] Because the discovery responses include information that is Confidential pursuant to the stipulated protective order in this case (Dkt. 65), State Farm is filing redacted versions of the responses publicly and is seeking leave to file the unredacted versions under seal.

[4] Given the parties' dispute over the definition of "algorithmic tool" (*see* Ex. A at 1–2, Ex. B at 1–2), State Farm identified such computer-based, automated, and/or rules-based tools without regard to whether they qualify as "algorithmic tools."

6



███ *Id.* at 11, 16; Ex. B at 50–51, 56, 60. State Farm has not used (and therefore did not identify) other computer-based, automated and/or rules-based tools provided ███ *See* Ex. A at 10–11, 16–19; Ex. B at 25, 38, 50–51. And State Farm has not used (and therefore did not identify) *any* such tools provided by the other subpoenaed entities—███ *See* Ex. A at 10–11, 16–19; Ex. B at 63–64 ███, 79 ███, 88–89 ███.[5]

Rather than wait for State Farm's responses to their discovery requests, which have provided and will provide relevant information about the tools that State Farm *actually* uses to assist in the routing of homeowners insurance structural damage claims or to assist claims personnel in identifying potentially fraudulent claims, Plaintiffs jumped the gun and issued overly broad and unnecessary subpoenas. State Farm's discovery responses identifying fourteen tools, the documents it has agreed to produce, and the corporate representative testimony contemplated by Judge Harjani's discovery scheduling order (Dkt. 81), obviate the need for subpoenas to nonparties "to identify and understand the Algorithmic Sorting Tools that State Farm uses." Dkts. 87 and 88 at 14. And as explained in Section III, *infra*, Plaintiffs' contrary arguments—based on their mischaracterization of information contained in Plaintiffs' claim files, Google searches, and erroneous assumptions—are simply wrong.

---

[5] Plaintiffs did not serve any requests specifically referencing Symbility. *See generally* Ex. B.

### III. Plaintiffs' Subpoenas and Arguments Rely on Mischaracterizations of Claim File References, Mistaken Assumptions and Irrelevant Internet Information.

Plaintiffs contend that they "carefully selected third-party vendors that use algorithmic tools to screen out potentially fraudulent or complex claims from straightforward claims and have direct ties to State Farm or to vendors that State Farm uses to process its claims." Dkts. 87 and 88 at 5. That "careful[]" selection consists primarily of Googling companies or tools referenced in Huskey's and Wynn's claim files. *See* Dkts. 87 and 88 at 5–6 and Exhibit 1 (citing twenty-five nonparty websites). Plaintiffs attach to their opposition a chart purporting to show the number of times the subpoenaed entities, or products offered by one of the subpoenaed entities, are referenced in Plaintiffs' claim files. Dkts. 87-1 and 88-1.[6] Plaintiffs assume that if the website of a company referenced in a claim file indicates that the company offers a tool or service that uses AI, algorithms, machine learning, or automation, then State Farm is using that tool or service at the outset of its handling of a homeowners insurance claim "to sort potentially fraudulent/complex claims from straightforward claims." Dkt. 79. But Plaintiffs' supposedly "careful[]" approach produces clearly erroneous results. Plaintiffs either misunderstand or mischaracterize the claim file references on which they rely, and their baseless assumption that if State Farm has *any* relationship with a particular company, it must be using the AI, algorithmic, machine learning, or claims-automation tools offered by that company (or by some other vendor that has ties to that company) "to sort potentially fraudulent/complex claims from straightforward claims" (Dkt. 79), is demonstrably wrong.

---

[6] Plaintiffs' chart also notes references to particular companies and tools in the claim file for Wynn's neighbor, Karin Jacobsen, who Plaintiffs have alleged is white. Dkts. 87-1 and 88-1; First Am. Compl. (Dkt. 23) ¶ 12. Given that Ms. Jacobsen cannot be a member of the purported class, the companies and tools referenced in her claim file are irrelevant.

8

Plaintiffs' references in their chart to "Alacrity (integrates with Symbility)" illustrate the problem. There are *no references* to Symbility (one of the subpoenaed entities) in the claim files. Plaintiffs are relying, instead, on references in the claim files to Alacrity, and on Alacrity's website, which states: "Alacrity reporting systems integrate with all major claims platforms, including … Symbility."[7] *See* Dkts. 87-1 and 88-1 at 3. Plaintiffs then assume that because the claim files reference Alacrity, State Farm is using automated claims processing tools offered by Symbility, purportedly justifying their subpoena. But nothing in the claim files supports Plaintiffs' erroneous inferences. The claim files reference Alacrity services that were provided by human beings, not algorithmic tools. Specifically, in both Plaintiffs' claims, Alacrity provided the services of independent adjusters (also referred to as "External Claim Resources"). *See* Claim File Excerpts attached as Exhibits C (Huskey) at 7, 39 and D (Wynn) at 166, 398, 401–02.[8] In addition, Wynn selected Alacrity Renovation Services—a contractor—through State Farm's Premier Service Program to prepare a water mitigation estimate and perform repairs, although she subsequently withdrew her authorization so no work was performed by Alacrity Renovation Services. *See* Ex. D at 8, 348–49. State Farm does not use algorithmic decision-making tools offered by Symbility to assist in the routing of homeowners insurance claims, to assist in the identification of potentially fraudulent claims, or "to sort potentially fraudulent/complex claims from straightforward claims"

---

[7] https://www.alacritysolutions.com/solutions/claims-management-solutions/loss-adjusting/ (last viewed May 6, 2024).

[8] In citing to specific pages within these exhibits, State Farm has used the numerical digits of the production numbers that appear after the zeros in those production numbers. Thus, for example, the page of Plaintiff Huskey's claim file that bears production number SFHUSKEY_CF00000007PROD is cited as page 7.

(*see* Ex. A), and these claim file references in no way support Plaintiffs' erroneous assumption to the contrary.[9]

Plaintiffs' assumption that references in Wynn's claim file to Crawford and Renfroe mean that State Farm is using algorithmic tools (if any) offered by those companies to sort potentially fraudulent/complex claims from straightforward claims is similarly mistaken. The claim file references show that both Crawford and Renfroe provided the services of independent adjusters and managers—*i.e.*, human beings—not algorithmic tools. *See* Ex. D at 159, 162, 166, 291, 296, 306, 346–47, 362–63, 383–84, 390–91. State Farm does not use any computer-based, automated, and/or rules-based tools provided by Crawford or Renfroe to assist in the routing of homeowners insurance claims, to assist in the identification of potentially fraudulent claims, or "to sort potentially fraudulent/complex claims from straightforward claims" (*see* Ex. B at 63, 88–89), and these claim file references in no way support Plaintiffs' erroneous assumption to the contrary.[10]

Plaintiffs' reliance on references in the Plaintiffs' claim files to XactAnalysis, ClaimXperience and Xactimate—all products provided by Verisk—is also misplaced. The single reference to XactAnalysis in Wynn's claim file is an email conveying the addition of a note regarding the withdrawal of Alacrity from the water mitigation assignment previously referenced. *See* Ex. D at 2018. The two references to ClaimXperience in Wynn's claim file show that Wynn

---

[9] State Farm does not, in fact, use any products or services provided by Symbility.

[10] The fallacy of Plaintiffs' approach to identifying the tools they believe State Farm uses is further evidenced by Renfroe's response to their subpoena, served before State Farm filed the instant Motion, which states: "RENFROE has not provided State Farm with products or services that use or incorporate algorithmic tools to assist with the processing of homeowners insurance claims." *See* Renfroe Response Letter dated April 10, 2024, attached as Exhibit E.

used that platform to provide documentation about her claim to State Farm. *Id.* at 911–13.[11] And Xactimate is simply a structural damage estimating software program that is used to estimate the cost to repair structural damage. *See, e.g.*, *Santos v. Great Am. Ins. Co.*, No. 5:19-CV-83, 2021 WL 8945347, at *3 (S.D. Tex. Dec. 6, 2021); *see also* Ex. C at 280–289 (example of Xactimate estimate of Huskey's repair cost); Ex. D at 661–675 (example of Xactimate estimate of Wynn's repair cost). None of these tools is used by State Farm to assist in the routing of homeowners insurance claims, to assist in the identification of potentially fraudulent claims, or "to sort potentially fraudulent/complex claims from straightforward claims" (*see* Ex. B at 25), and nothing in the claim file references identified by Plaintiff supports their erroneous assumption to the contrary.[12]

Plaintiffs' misplaced confidence in their ability to identify through Google searches algorithmic decision-making tools used by State Farm is particularly surprising given the history of this case. In the original complaint, Huskey alleged, based on information and belief, that State Farm uses "a combination of internal and third-party tools"—including, in particular, a tool called the "FRISS Score"—"to process homeowners insurance claims." Dkt. 1, ¶¶ 32, 37–40. Plaintiffs' counsel engaged in the same kind of guesswork to arrive at that erroneous conclusion as they later did to identify the vendors and tools addressed in their subpoenas. As explained in the complaint,

---

[11] A search for "ClaimXperience" in Huskey's file results in one hit: a checklist relating to the preparation of the claim file for production that indicates no ClaimXperience data exists in the file. *See* Ex. C at 72.

[12] Plaintiffs also note references in the Plaintiffs' claim files to ISO (an acronym for Insurance Services Organization). *See* Dkts. 87-1 and 88-1. As previously discussed, State Farm's discovery responses identify ███████████████████████████████████████████████████████ (*see supra* at 6), ███████████████████████████████████████████████████████████████████████████████ *See* State Farm's Resp. to Plaintiffs' First Set of Interrogatories, excerpt attached as Exhibit F.

11

Plaintiffs' counsel started with SEC filings by Duck Creek that identified State Farm as a Duck Creek customer. *Id.* ¶¶ 33–34. They then went to Duck Creek's website, which indicated that Duck Creek "has partnered with FRISS," and that FRISS software "integrates with Duck Creek's software to help insurers segment and route claims, based on their risk for fraud." *Id.* ¶ 37. Based on the chain of inferences, the original complaint alleged that State Farm was using the FRISS Score, and had done so throughout the purported class period. *Id.* ¶¶ 40, 43. But Plaintiffs' internet-based deductions were wrong. A month after the complaint was filed, FRISS, Inc., sent a sworn letter to Plaintiffs' counsel informing them that State Farm has never been a customer of FRISS and does not use the FRISS Score. *See The Connectors Realty Group Corp. v. State Farm Fire and Casualty Co.*, No. 19-cv-743 (N.D. Ill.), Dkt. 245-6. Soon thereafter, Plaintiffs filed their First Amended Complaint, abandoning the FRISS theory, and adding new and different "information and belief" allegations as to the "algorithmic decision-making tools" supposedly used by State Farm. Dkt. 23, ¶¶ 12, 37–38.[13]

In sum, Plaintiffs' opposition confirms the wisdom of Judge Harjani's discovery phasing orders, including his limitation of the "preliminary focus" of Phase 1 discovery on *identifying* the algorithmic tools used by State Farm at the outset of a claim "to sort potentially fraudulent/complex claims from straightforward claims." Dkt. 79. Plaintiffs' attempt to end-run those orders by serving subpoenas, based on erroneous assumptions about what tools State Farm uses, that go well beyond the scope of what the Court has allowed, is plainly improper. The Court should therefore enter an order "forbidding the … discovery" sought by the subpoenas. Fed. R. Civ. P. 26(c)(A); *see also*,

---

[13] Plaintiffs' allegations about State Farm's use of Duck Creek's "comprehensive claims management solution," Duck Creek Claims (Dkt. 1 ¶¶ 35–36, 40), were also wrong. As explained in State Farm's interrogatory responses, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. A at 16.

12

*Buonavolanto v. LG Chem, Ltd.*, No. 18 C 2802, 2019 W 8301068, at *3 (N.D. Ill. Mar. 8, 2019) (granting defendants' motion for a protective order based on court's finding that the information requested by plaintiff's subpoenas was outside the scope of discovery allowed by Rule 26(b)).

## V.  Conclusion

Plaintiffs' nonparty subpoenas unquestionably violate the Court's discovery phasing orders. Accordingly, State Farm respectfully requests that the Court enter a protective order pursuant to Federal Rule of Civil Procedure 26(c) "forbidding the … discovery sought by Plaintiffs' subpoenas to Crawford & Company, Duck Creek Technologies Inc., Eberl Claims Service LLC, E.A. Renfroe & Company, Inc., Salesforce Inc., Symbility Solutions Corp., and Verisk Analytics, Inc.

Dated: May 6, 2024

Respectfully submitted,

/s/     *Sondra A. Hemeryck*

Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
Fax: 312-471-8701
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

13