**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated, | Case No. 22-cv-07014 |
| Plaintiffs, | Hon. Jeffrey I. Cummings |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

## JOINT STATUS REPORT PER MARCH 5 AND APRIL 8, 2024 ORDERS

Plaintiffs Jaqueline Huskey and Riian Wynn ("Plaintiffs") and Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm"), by and through their respective counsel, submit this Joint Status Report.

After a status hearing in front of then Magistrate Judge Harjani on February 22, 2024, the Court entered an order regarding the phasing of discovery. (Dkt. 79.) On March 5, 2024, the Court entered a schedule for the preliminary focus of Phase I discovery. (Dkt. 81.) Specifically, the Court ordered that written discovery focused on the algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims was to be issued by March 27, 2024; agreed topics for Rule 30(b)(6) deposition shall be issued by May 24, 2024; agreed dates for the Rule 30(b)(6) deposition shall be reached by June 14, 2024; the Rule 30(b)(6) deposition shall be completed by August 9, 2024; and after the Rule 30(b)(6) deposition, the parties meet and confer for a schedule to complete Phase I of discovery. (Dkt. 81.)

The Court's March 5, 2024 Order also directed the parties to file a Joint Status Report on May 20, 2024, with an update on discovery and settlement discussions. (*Id.*)

On April 2, 2024, this case was reassigned to Magistrate Judge Gilbert for discovery supervision. (Dkt. 82.) On April 8, 2024, the Court indicated that the May 20, 2024 status report deadline was to stand. (Dkt. 83.)

### I. The Parties' Status Update

On March 27, 2024, Plaintiffs served Interrogatories and their Third Set of Requests for Production ("Third RFP") and also issued third-party subpoenas.

State Farm filed a Motion for Protective Order objecting to the third-party subpoenas on April 10, 2024. (Dkt. 85.) Plaintiffs opposed State Farm's Motion on April 25, 2024 (Dkts. 87 and 88), and State Farm filed a reply on May 6, 2024 (Dkts. 92 and 93). That motion is fully briefed, and the subpoenas are stayed pending a ruling on State Farm's motion. (Dkt. 86.)

On April 26, 2024, State Farm responded to Plaintiffs' Interrogatories and Third RFPs. (Dkts. 93-1 and 93-2.)

On May 14, 2024, Plaintiffs served a Rule 30(b)(6) notice.[1] Although the Parties have not yet met and conferred regarding Plaintiffs' 30(b)(6) topics, the Parties do not anticipate that they will be able to reach agreement on the topics by the existing May 24, 2024 deadline.

State Farm made an initial production of documents pursuant to its responses to Plaintiffs' Third RFPs on May 16, 2024 and is in the process of collecting additional responsive documents for a subsequent production.

On May 17, 2024, Plaintiffs sent State Farm a discovery deficiency letter.

The Parties have not engaged in settlement discussions.

## II.    Discovery Disputes

The Parties have not yet met and conferred regarding Plaintiffs' 30(b)(6) topics or Plaintiffs' May 17, 2024, deficiency letter. If agreement cannot be reached, the parties may raise issues with the Court at a later date.

However, Plaintiffs take the position that one dispute, which the parties previously conferred about and briefed in connection with the Motion for Protective Order, is ripe for the Court's determination:

**Whether the "preliminary focus" of Phase I discovery is limited solely to the "outset of claims."**

State Farm's position is that the discovery issues that are ripe for determination by the Court are those that have been briefed by the Parties in connection with the pending Motion for Protective Order. Those issues include, but are not limited to, the meaning of the phrase "at the outset" in Judge Harjani's February 23, 2024 Order (Dkt. 79). (*See, e.g.*, Dkt. 85 at 2, Dkts. 92 and

---

[1] Plaintiffs noted in a cover email on May 14, 2024, that they were "providing this notice now to help advance the parties' conversation about 30(b)(6) topics, but as mentioned in [Plaintiffs' counsel's] email on Friday 5/10/24, [Plaintiffs] are cognizant that documents State Farm produces in the future may bear upon the topics, and therefore [Plaintiffs] reserve the right to amend the topics in light of future discovery." On May 10, 2024, Plaintiffs had asked State Farm for an update as to when it would produce documents in response to Plaintiffs' discovery requests and noted that they were "cognizant of the May 24, 2024, deadline to agree on 30(b)(6) topics, which practically speaking, may be difficult to do without any production from State Farm in response to our March 27 RFPs."

93 at 2-3.) State Farm further submits that it is not appropriate for Plaintiffs to use the Joint Status Report as a vehicle to make additional arguments on those issues, or to raise and argue issues not encompassed by the Motion for Protective Order (which, by definition, would not be ripe for the Court's determination). Accordingly, the remainder of this Joint Status Report, which sets forth Plaintiffs' substantive arguments regarding the issue set forth in boldface text above, has been included over State Farm's objection.

### i. Plaintiffs' Position

Plaintiffs take the position that Judge Harjani did not, and this Court should not, limit the "preliminary focus" of Phase I to the "outset of claims." State Farm, by contrast, has asserted in both its Motion for a Protective Order and in its discovery responses that, during the "preliminary focus" of Phase I, Plaintiffs are only entitled to discovery about Algorithmic Tools used at the "outset of claims." This is erroneous.

To start, Judge Harjani did not limit Phase I to the "outset of claims." To the contrary, he broadly set a March 27, 2024 date for: "Written discovery focused on the algorithmic decision−making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims [hereafter, 'Algorithmic Sorting Tools']." Dkt. 81; *see also* Dkt. 79 (defining Phase I as pertaining to "algorithmic decision−making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims.").

Further, Plaintiffs' allegations are not limited to the initial assessment of homeowners' insurance claims. They cover all steps—initial and thereafter—of the claims processes. *See, e.g.*, Dkt. 23 at ¶ 4 ("This discrimination is the result of a specific policy: State Farm's decision to employ an automated system—in lieu of human judgment—to determine how the high-volume of homeowners insurance claims it receives should be processed");[2] ¶ 32 ("State Farm made the decision to automate claims processing, or major aspects of it, and thereby replace human judgment with algorithms.").[3]

---

[2] Merriam Webster defines the word "process" as "a series of actions or operations conducing to an end." *Process*, MERRIAM-WEBSTER'S DICTIONARY (last visited May 17, 2024).

[3] *See also id.* at ¶ 5 ("It is thus reasonable to attribute a systematic difference in the rate of claims subjected to heightened scrutiny to State Farm's policy of using algorithmic decision-making tools to screen and address all policyholder claims."); ¶ 33 ("State Farm harnesses a variety of tools to collect extensive data about policyholders and uses that data in claims processing and fraud detection."); ¶ 36 ("State Farm also uses a combination of internal and third-party tools to leverage the vast troves of data it collects to process homeowners insurance claims. . . . State Farm executes automated processes based on code and data relationships."); ¶ 38 ("State Farm has used Salesforce's Financial Services Cloud, Duck Creek Claims, and/or other similar internal and external algorithmic decision-making tools to process its homeowners insurance claims[.]"); ¶ 62 (common questions include "[w]hether State Farm uses algorithmic decision-making tools to triage and process homeowners insurance claims, and the nature, scope, and operation of those tools").

To be sure, Judge Harjani referenced the "outset" *once* in his phasing Order (Dkt. 79), but that reference most clearly refers to the "outset" of discovery and not the "outset of claims." And even if "outset" does not refer to discovery, it does not most naturally refer to the "outset of claims;" instead, it would refer to the outset of an algorithmic sorting process, which can happen at any point in a claim's lifecycle (i.e., whenever the Algorithmic Sorting Tool is deployed). Relatedly, Algorithmic Sorting Tools may be pre-programmed into the claims process and, in that sense, are present both "at the outset" of every claim and during later stages of a claim's lifecycle.

Even if Defendant's rigid temporal interpretation of the term "outset of claims" applied—and it should not—its demands to micro-phase discovery make little sense. Phase I applies to all Algorithmic Sorting Tools, not just those used "at the outset." Dkt. 79, 81. It would be unnecessarily duplicative to issue discovery about tools that are used "at the outset" and then, later, issue additional discovery about tools used "after the outset." Moreover, generally identifying the third-party Algorithmic Sorting Tools that State Farm uses is the first step in determining how and when State Farm deploys those tools (whether "at the outset" or otherwise). Such information is particularly important because there has been no meaningful discovery about State Farm's claims processes, including what constitutes the "outset" of claims. Limiting discovery, as State Farm proposes, to the undefined "outset" will only engender more disputes about the scope of discovery and the completeness of responses.

Defendant's improper limitation of Phase I is in keeping with its practice of imposing artificial barriers to discovery. Plaintiffs served their First and Second Requests for Production on October 27, 2023 and December 21, 2023, respectively, as well as their First Set of Interrogatories on December 21, 2023. Yet until recently, Defendant has vehemently denied even using algorithmic tools, going so far to represent, "… **there's no such thing. It's a complete fiction.**" at the February 22, 2024 Status Hearing. Dkt. 85-8 at 16:4-16:9. The available evidence, however, directly contradicted State Farm's representations. *See* Dkt.87-1, 88-1 (Chart of Equivocations). In fact, Plaintiffs identified hundreds of references to algorithmic tools and services in claim files. They accordingly subpoenaed the third parties who provide such tools. Only after seeking protection from Plaintiffs' subpoenas (and receiving Plaintiffs' opposition brief, Dkt. 87-88), did Defendant identify **14 Algorithmic Sorting Tools** as playing a role in the claims process (in discovery responses on April 26, 2024). This, even though Plaintiffs had issued on-point Requests for Production of Documents *six months earlier*. *E.g.*, Dkt. 88-3 at 5.

Discovery is not a game of "hide the ball." It is a "search for truth." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020). There is simply no truth-seeking function served by limiting the "preliminary focus" of Phase I to the "outset of claims."

Accordingly, during the "preliminary focus" of Phase I (and also thereafter), Plaintiffs should be entitled to discovery about State Farm's Algorithmic Sorting Tools, not only those used at the "outset of claims."

Dated: May 20, 2024

/s/     David Tracey

**SANFORD HEISLER SHARP, LLP**
David Tracey (*Pro Hac Vice*)
Albert Powell (*Pro Hac Vice*)
Sharon Kim (*Pro Hac Vice*)
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
sharonkim@sanfordheisler.com

**FAIRMARK PARTNERS, LLP**
Alexander Rose (*Pro Hac Vice*)
Jamie Crooks (*Pro Hac Vice*)
Michael Lieberman (*Pro Hac Vice* Forthcoming)
1825 7th St NW, #821
Washington, DC 20001
Phone: (301) 458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

**CENTER ON RACE, INEQUALITY, AND THE LAW AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (*Pro Hac Vice*)
Jason D. Williamson (*Pro Hac Vice*)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

*Counsel for Plaintiffs and the Proposed Class*

/s/     Sondra A. Hemeryck

**RILEY SAFER HOLMES & CANCILA LLP**
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
70 W. Madison St., Suite 2900
Chicago, IL 60602
Phone: 312-471-8700
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire and Casualty Company*