UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>Defendant. | Case No. 22-cv-07014<br><br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge Jeffrey T. Gilbert |

**JOINT MOTION TO RESOLVE DISPUTE REGARDING 30(B)(6) TOPICS**

**I.   Introduction**

During the status hearing on May 23, 2024, the parties informed the Court that there was a dispute over the scope of the topics proposed for the upcoming Phase I 30(b)(6) deposition. Plaintiffs first served the 30(b)(6) notice, consisting of 10 Topics, on May 14, 2024. State Farm provided objections and responses on May 28, 2024. At the May 23, 2024 status hearing, the Court asked the parties to meet and confer and raise any disputes about the 30(b)(6) notice by joint motion on or before June 6, 2024. Dkt. 97.

The parties have since met and conferred. The parties have reached agreement on Topics 6 and 9. However, they have not been able to reach resolution on the remaining Topics.

The parties set forth their respective positions below:

**II.   Plaintiffs' Position**

Under Judge Harjani's February 23rd phasing Order: "Phase I discovery shall be limited to algorithmic decision−making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims." Dkt. 79. Per the Order, the "preliminary focus" of Phase I is "on the identification of these tools. This should include some initial answers to interrogatories, some initial production of documents, and potentially a short Rule 30(b)(6) deposition all done expeditiously."

Pursuant to the Order, Plaintiffs identified 10 limited 30(b)(6) deposition topics for the "preliminary focus" of Phase I discovery. *See* Ex. A.

1

State Farm objected to Plaintiffs' Topics. State Farm maintains that Plaintiffs' Phase I 30(b)(6) Topics should be limited solely to the content covered in State Farm's written discovery responses. Under State Farm's proposal, Plaintiffs could not ask about anything other than the select set of tools State Farm identified in its April 26th response to Plaintiffs' First Amended Set of Interrogatories, the manner in which State Farm characterized such tools in its written responses, and certain factual statements State Farm made in written responses to Plaintiffs' document requests. *See* Ex. B.

Plaintiffs view this position as inconsistent with the purpose of the Phase I 30(b)(6) deposition. One of the core purposes of the deposition is to test the veracity and completeness of State Farm's written discovery responses, i.e., whether State Farm's written responses fully identify the algorithmic decision-making tools at issue. Plaintiffs cannot do this if they are limited to inquiring solely about the tools that State Farm disclosed in its written responses. Indeed, if Judge Harjani had intended Phase I to be so limited, he would not have provided for a 30(b)(6) deposition; written discovery would have sufficed.

Moreover, each of the Topics Plaintiffs identified are relevant to the scope of Phase I discovery. While Judge Harjani's Orders limited the *subject matter* of Phase I, it did not dispense with fundamental principles of *relevance*. *See, e.g.*, *W. Wind Express v. Occidental Fire & Cas. Co. of N. Carolina*, No. 10 C 6263, 2011 WL 13552251, at *1, *3 (N.D. Ill. July 27, 2011) (affirming that party make seek discovery relevant to the subject matter of Phase I). At trial, Plaintiffs may present information that "has any tendency" to make their allegations about Algorithmic Sorting Tools "more or less probable than [they] would be without the evidence." Fed. R. Evid. 401(a)-(b). In discovery, relevance is "necessarily broader." *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020). Here, Plaintiffs' Topics sought information that, at the least, has a "tendency" to make "more or less probable" that State Farm is using algorithmic tools to "screen out potentially fraudulent or complex claims from straightforward ones." Fed. R. Evid. 401(a)-(b).

After meeting and conferring with counsel for State Farm, Plaintiffs offered to streamline and narrow certain topics, as discussed below. However, State Farm still opposes Plaintiffs' topics.

    **A.    Topics 1-3, 7-8 (Now Streamlined into One Topic).**

Topics 1-3 and 7-8 are designed to enable Plaintiffs to identify the proprietary and third-party tools that State Farm uses to screen out "potentially fraudulent or complex claims from straightforward . . . claims," in accordance with Judge Harjani's February 23rd Order (Dkt. 79).

To compromise with State Farm on the scope of Topics 1-3 and 7-8, Plaintiffs offered to consolidate those *five* topics into *one*, as follows:

> The third-party and proprietary computer based, automated, and/or rules-based tools that State Farm uses to: (a) assist in the identification of potentially fraudulent or complex Homeowners Insurance claims; (b) assist in the routing of Homeowners Insurance claims (including tools that consider the severity or complexity of a claim); or (c) that affect the level of scrutiny applied to a claim, including the

2

>amount and nature of documentation or proof the insurer requests in connection with the claim, the number of site visits or interviews an insurer conducts in connection with a claim, and the number of interactions the insurer's employees or agents have with the claimant.

Notably, parts (a) and (b) largely track language from State Farm's own discovery responses.

### i. State Farm's Limitation to "Structural Damage" Is Inappropriate

State Farm has agreed (per the below) to designate a witness to testify as to (a) and (b) **but with the caveat** that such testimony would be limited to "**structural damage**" claims. That limitation is inappropriate. "Structural damage" appears nowhere in Judge Harjani's Order nor in Plaintiffs' First Amended Complaint. *See e.g.* Dkt. 79 (referring generally to "homeowners insurance claims."); Dkt 23 ¶¶ 1, 4, 5, 14, 32, 36, 37, 38 ("homeowners insurance claims[/s]"). Nor, as State Farm argues *infra*, is Plaintiffs' definition of Homeowners' Insurance intended or properly read to be limited to "structural damage"; it applies to all forms of Homeowners' Insurance, including specific "HO-" policy numbers that normally cover more than structural damage. See. Ex. A at 3.

Contrary to State Farm's argument below, the Fair Housing Act is *not* limited to the physical structure of a dwelling. It prohibits discrimination in the "provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). Indeed, Judge Kendall made that much clear when she denied State Farm's motion to dismiss Plaintiffs' claims under § 3604(b). *Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2023 WL 5848164, at *5-6 (N.D. Ill. Sept. 11, 2023).

### ii. Sub-Part (c) Is Relevant to the Subject Matter of Phase I

State Farm also refuses to offer a witness as to (c). Sub-part (c) is relevant to the subject matter of Phase I. It seeks information sufficient to identify algorithmic tools that "affect the level of scrutiny applied to a claim." Scrutiny is a proxy for complexity. A claim is necessarily more complex when it receives greater scrutiny. Straightforward claims do not trigger greater scrutiny. Moreover, this type of scrutiny is one of the very impacts alleged in Plaintiffs' First Amended Complaint. Dkt. 23, ¶ 4 (algorithmic tools "drive claims handler workflow," "decid[e] how much scrutiny it thus requires," and "direct[s] employee tasks in accordance with that assessment"); ¶ 11 (scrutiny on Huskey's claim led to undue delay with failure to reach resolution to date); ¶ 12 (scrutiny on Wynn's claim "manifested in demands for additional documentation and estimates not required of her neighbor, additional inspections not required of her neighbor, and dozens more interactions with State Farm employees than her neighbor was required to have"); ¶ 38 (State Farm has delegated to algorithmic tools *inter alia* "the determination of claim scrutiny level" and "assignment of tasks to claims handlers").

Accordingly, sub-topic (c) will elicit information that, at the least, has a "tendency" to make "more or less probable," that State Farm is using algorithmic tools to "screen out potentially fraudulent or complex claims from straightforward ones." Fed. R. Evid. 401(a)-(b).

**B. Topic 4**

Topic 4 seeks testimony about Algorithmic Tools' fit within State Farm's claims process. Per Judge Harjani's February 23rd Order, the "preliminary focus" of Phase I includes identifying the algorithmic tools at issue. Plaintiffs can only do this if they can learn when and how State Farm identifies claims as potentially fraudulent or complex and what role algorithmic tools play in that process. Otherwise, Plaintiffs will be left only with State Farm's Interrogatory Responses and with no way to meaningfully test the completeness or veracity of those representations.

Contrary to State Farm's assertions, Judge Harjani did not explicitly "reject" this Topic in his phasing Order. Nor does the Topic seek information about how State Farm's tools are "developed," their "inputs and outputs," and how they are "audited." At the least, this Topic "lies somewhere between the[]two extremes" of the parties' positions at the February 23rd Status conference. Dkt. 79. As with the other Topics, Topic 4 will elicit information that, at the least, has a "tendency" to make "more or less probable," that State Farm is using algorithmic tools to "screen out potentially fraudulent or complex claims from straightforward ones." Fed. R. Evid. 401(a)-(b).

**C. Topic 5**

Through Topic 5, Plaintiffs sought information about algorithmic tools that State Farm identified in publicly filed patents, including four specific patents that relate to the use of algorithmic tools in insurance claims processing in some way. However, to compromise on this Topic, Plaintiffs offer to narrow Topic 5 to *one patent*:

- US 10832347 B1, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment"

This patent, US 10832347 B1, is described as "employing machine learning models to analyze insurance claims and data sources for assigning and routing claims based on severity tiers/segments." The goal of this model is to assess various factors such as damage severity, claimant demographics, and potential legal proceedings associated with the claims. In addition, the patent application states that "machine learning programs may utilize deep learning algorithmics that may be primarily focused on pattern recognitions." The application also confirms that the model could be used to process homeowners' insurance claims.

By way of example, the patent contains the following Figure, showing the integration of algorithmic tools into the claims process:

4



FIG. 2

State Farm objects on proportionality grounds to producing a witness to testify on the application of the patent. But the patent squarely contemplates the use of algorithms to route claims based on characteristics like severity. Moreover, as with all the algorithmic tools at issue, State Farm has far more "access to relevant information" about this patent and how it applies than Plaintiffs. Fed. R. Civ. Proc. 26(b)(1). Further, State Farm has gained valuable benefits from patenting this intellectual property. It should not be able to reap those benefits while at the same claiming it need not explain its patent due to some alleged "burden." In any event, by narrowing the patents at issue from four to one, Plaintiffs have offered to meaningfully reduce the preparation burden for State Farm's corporate designee.

Nor is State Farm correct that its patent is purely notional. While patent law does not require a physically constructed manifestation of an innovation, more than a mere idea is required. A patent application must be detailed enough such that a skilled technical inventor be able to create the described innovation based on the details found in the application. *See, e.g.*, *Amgen Inc. V. Sanofi*, 598 U.S. 594, (2023) (asserting that a patent application must be detailed enough for a person skilled in the relevant art to create the product without undue experimentation); *Milwaukee Elec. Tool Corporation v. Snap-On Inc.*, 217 F. Supp 3d. 990 (E.D. Wisc. 2017) (finding that the description should be clear, concise, and exact as stipulated by 35 U.S. Code § 112). The applications underlying the patent is detailed per patent law. In any event, if State Farm has not in fact, deployed this patent in Homeowners' Insurance claims processing, then its preparation burden for this Topic will be minimal.

In sum, the patent listed above is relevant and proportional to identifying the algorithmic tools at issue in Phase I. It is an appropriate subject of inquiry for the Phase I 30(b)(6) deposition.

### D. Topic 10

Topic 10 seeks testimony with respect to State Farm's Answer in response to Plaintiffs' allegations concerning Algorithmic Tools in the First Amended Complaint, including but not limited to paragraphs 4-6, 24-25, 30-42, 45-49, 54-55, 57, 60, and 62.

However, to compromise, Plaintiffs offer to limit the Topic to **just four paragraphs** out of the 83 paragraphs in the Answer—paragraphs 4, 32, and 37-38. In each of these paragraphs, State Farm denies using algorithmic tools that are the subject of Phase I discovery:

- In paragraph 4, State Farm denies, *inter alia*, using algorithms to "screen out potentially fraudulent or complex claims . . . from legitimate or straightforward . . . claims." It also denies using "an automated system. . . to determine how the high-volume of homeowners insurance claims it receives should be processed by its claims handlers."

- In paragraph 32, for example, State Farm denies that it "made the decision to automate claims processing, or major aspects of it, and thereby replace human judgment with algorithms." It also denies that algorithmic tools "predict the likelihood of fraud" and sort claims based on their potential to be fraudulent or complex.

- Paragraph 37 concerns State Farm's relationships with Salesforce and Duck Creek, and other third-party vendors. Defendant admits that it has a relationship with Salesforce, but it denies using any Salesforce applications that "involve 'insurance claims automation.'" State Farm also admits to having a prior relationship with Duck Creek, but alleges that relationship ceased in 2020.

- In Paragraph 38, State Farm denies, *inter alia*, that State Farm uses algorithmic tools provided by Salesforce, Duck Creek, and/or others to "process its homeowners insurance claims, . . . determin[e] [the] claim scrutiny level, and assign[] tasks to claims handlers."

State Farm's Answer to these four paragraphs are relevant to the "preliminary focus" of Phase I discovery: whether State Farm uses algorithmic tools to screen out potentially fraudulent or complex claims from straightforward ones. Dkt. 79. *See, e.g.*, *Coleman*, 2020 WL 5752149, at *3; *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020). These four paragraphs are proper subjects for the Phase I 30(b)(6) deposition.

### III.  Defendant's Position

In responding to Plaintiffs' Rule 30(b)(6) Notice, State Farm relied on Judge Harjani's February 23, 2024 Order regarding the scope of discovery. Dkt. 79. That Order limited Phase I discovery to "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims." *Id.* Judge Harjani further ordered that the preliminary focus of Phase I discovery should be on "the identification of those tools" and "should include some initial answers to interrogatories, some initial production documents, and *potentially* a short Rule 30(b)(6) deposition." *Id.* (emphasis added).

Importantly, Judge Harjani indicated that the tools should be identified before there is a deep dive into the tools. *Id.* State Farm has identified ▮▮▮▮▮▮▮▮. *See* Ex. C. As State Farm explained both in its interrogatory responses and in its telephonic discovery conferences with

6

Plaintiffs' counsel,  *Id.* at 10-11 and Table. In other words, State Farm did *more* than was required by identifying those additional ▮▮▮ to assist Plaintiffs in understanding how homeowners claims are routed. *Id.*

State Farm also disagrees with Plaintiffs' assertion that the topics identified in their Rule 30(b)(6) Notice are "limited." *See* Ex. B. Plaintiffs' topics go well beyond the scope of Judge Harjani's Order (*id.*), and well beyond the "potentially *short* 30(b)(6) deposition" that Judge Harjani expressly contemplated (Dkt. 79 (emphasis added)).

Plaintiffs attempt to justify their deviation from the scope of discovery allowed by Judge Harjani's orders by relying on what they refer to as "fundamental principles of relevance." That might be pertinent if the current scope of permissible discovery in this case were defined by Rule 26(b)(1), but it is not. The plain language of Rule 26(b)(1) provides: "***Unless otherwise limited by court order,*** ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, the current scope of discovery has been limited by Judge Harjani's orders to the identification of "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims." Dkt. 79. To the extent Plaintiffs' Rule 30(b)(6) topics exceed that scope, they are improper and State Farm has appropriately objected to them.

### A. Topics 1-3, 7-8

Plaintiffs propose a revised topic with three subtopics to replace their original Topics 1-3 and 7-8. Without waiving its objections to those Topics, State Farm is willing to present one or more corporate representatives to testify on the following, revised formulation of Plaintiffs' proposed condensed topic:

> The third-party and proprietary computer based, automated, and/or rules-based tools that State Farm uses to: (a) assist in the identification of potentially fraudulent or complex Homeowners Insurance structural damage claims; or (b) assist in the routing of Homeowners Insurance structural damage claims (including tools that consider the severity or complexity of a claim).

State Farm disputes Plaintiffs' contention that State Farm's limitation of this topic to structural damage claims is improper. Plaintiffs have brought their claims pursuant to the Fair Housing Act, which implicates structural damage claims—*i.e.*, damage to a dwelling structure. And Plaintiffs' discovery requests themselves define "Homeowners Insurance" as "an insurance policy designed to cover losses and damages *to a dwelling*." *See* Ex. A at 3 (emphasis added).

State Farm does not agree to sub-part (c) of Plaintiffs' proposed consolidated Topic. Sub-part (c) seeks testimony about "third party and proprietary computer based, automated, or rules-

7

based tools that State Farm uses . . . that affect the level of scrutiny applied to a claim, including the amount and nature of documentation or proof the insurer requests in connection with the claim, the number of site visits or interviews an insurer conducts in connection with a claim, and the number of interactions the insurer's employees or agents have with the claimant." If this vague and ambiguous language is intended to seek testimony on something other than the "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners claims," then it goes beyond the scope of the discovery allowed by Judge Harjani's Order, and State Farm objects on that ground. If it is intended by Plaintiffs as simply another way of stating Judge Harjani's Order, then it adds nothing and State Farm objects to its inclusion as unnecessary and confusing.

Contrary to Plaintiffs' assertion, State Farm has not limited the 30(b)(6) testimony to ▮ ▮ it identified in its Interrogatory responses. Plaintiffs are free to ask State Farm's corporate representative(s) if there are any other tools, besides those that have been identified in State Farm's discovery responses, that assist in the identification of potentially fraudulent or complex homeowners claims or that assist in the routing of homeowners insurance claims.

### B. Topic 4

Topic 4, which seeks a deponent regarding "State Farm's policies, practices, and/or procedures for handling Homeowners Insurance claims, and the manner in which the Algorithmic Tools described in Topics 1-3 . . . assist with and/ or integrate into such policies, practices, and/or procedures," both is facially overbroad and goes well beyond the scope of Phase I discovery as defined by Judge Harjani's Order. Exhibit B at 12-14. Indeed, Plaintiffs previously proposed that Phase I discovery "should focus on . . . State Farm's policies, practices, and procedures for claims processing, including, but not limited to, discovery into its data analytics and algorithmic decision-making tools in connection with homeowners insurance claims, including how such tools are developed and how they work; their inputs and outputs; and how they are deployed, reviewed and audited." Dkt. 76 at 2. Judge Harjani appropriately rejected Plaintiffs' proposal as overly broad. Dkt. 79. Furthermore, State Farm has agreed to present one or more corporate representatives to testify "regarding the products and/or services identified in State Farm's April 26, 2024 Responses to Plaintiffs' 'Amended First Set of Interrogatories,' including the manner in which such products and/or services operate *and how State Farm used or uses them in its handling of Homeowners Insurance claims* in the states of Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin." *See, e.g.*, Ex. B at 8 (emphasis added). That agreement will provide appropriate and proportional discovery within the scope of Judge Harjani's Order.

### C. Topic 5

Plaintiffs' Topic 5—through which Plaintiffs effectively seek testimony construing various of State Farm's patent applications and issued patents—is wholly out of proportion to the needs of this case and the scope of Judge Harjani's Order. First, through this Topic Plaintiffs originally sought testimony regarding "[a]ll products or services [that function as algorithmic tools as] mentioned, referenced, or described" not simply in the three patents explicitly identified in the

8

Topic,[1] but in "*any* patents and/or patent applications [ever] filed by State Farm" (emphasis added). Thus, on its very face, Topic 5 as originally served is overly broad and unduly burdensome.

Plaintiffs have now proposed in this Motion to limit Topic 5 to a single patent, U.S. Patent No. 10,832,347, attached hereto as Exhibit D. Even with that limitation, however, the topic is unduly burdensome, not proportional to the needs of the case and not consistent with Judge Harjani's Order because that patent does not expressly reference any particular tool that State Farm uses to sort potentially fraudulent or complex claims from straightforward ones. *See* Dkt. 79. Accordingly, the only manner in which State Farm could conceivably address this Topic would be to produce a witness to testify concerning how each and every one of the patent's 20 claims should be construed, and which (if any) of those claims State Farm believes it practices. Such a burdensome side show is both inappropriate and unnecessary. How a patent claim should be construed is a question of law that, ultimately, only a court may answer. *See, e.g.*, *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321, 325, 333 (2015) (discussing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–91 (1996)); *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1055 (Fed. Cir. 2024) (describing claim construction as "*the judicial statement* of what is and is not covered by the technical terms and other words of the claims") (emphasis added, citation omitted). And through its interrogatory responses, State Farm has already identified for Plaintiffs the relevant algorithmic tools that it employs. State Farm has agreed to produce one or more corporate representatives to testify regarding State Farm's use of those already-identified products or services. No more should be permitted through Topic 5.

D. **Topic 10**

Topic 10 of Plaintiffs' Rule 30(b)(6) Notice seeks testimony regarding paragraphs 4-6, 24, 25, 30-42, 45-49, 54-55, 57, 60, and 62 State Farm's Answer. After a meet and confer, Plaintiffs offered to narrow Topic 10 to Paragraphs 4, 32, 37-39, and 57 of State Farm's Answer. State Farm responded that it would agree to present a deponent to testify regarding paragraph 32 if that would resolve the dispute as to Topic 10 (which State Farm has objected to on several grounds, including that the Topic in its entirety is beyond the scope of Phase I discovery as defined by Judge Harjani's Order). Plaintiffs were not willing to limit Topic 10 to paragraph 32, and countered by proposing to limit the Topic to paragraphs 4, 32, 37, and 38. State Farm does not agree to that proposal. Plaintiffs' request for testimony regarding these paragraphs goes beyond the identification of algorithmic tools used by State Farm to sort potentially fraudulent or complex claims from straightforward claims, and is therefore outside the scope of discovery allowed by Judge Harjani's Order. For example, Paragraph 4 begins with the assertion that the "discrimination" alleged by Plaintiffs in the preceding paragraphs "is the result of a specific policy," which the paragraph then purports to describe. Paragraph 37 is a lengthy paragraph including numerous allegations about Salesforce and Duck Creek, including allegations about statements made by those vendors on their websites, and Paragraph 38 refers back to the supposed Salesforce and Duck Creek tools described in Paragraph 37. *See* Dkt. 59.

---

[1] Plaintiffs listed in Topic 5 both "US 20150154712 A1" and "US 10089691 B2," but the former is merely the application for the latter.

Furthermore, Topic 10, even as Plaintiffs have proposed to revise it, is entirely unnecessary for the current, "preliminary focus" of Phase I discovery. As already noted, State Farm is willing to produce one or more corporate representatives to testify about "[t]he third-party and proprietary computer based, automated, and/or rules-based tools that State Farm uses to: (a) assist in the identification of potentially fraudulent or complex Homeowners Insurance structural damage claims; or (b) assist in the routing of Homeowners Insurance structural damage claims (including tools that consider the severity or complexity of a claim)," including the manner in which such tools operate and how State Farm used or uses them in its handling of Homeowners Insurance claims in the states of Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin. In addition, with respect to Salesforce and Duck Creek in particular, State Farm has agreed to present one or more corporate representatives to testify regarding "the facts set forth in State Farm's April 26, 2024 Responses to RFP Nos. 4 through 8, 10 through 12, and 14 through 27 of Plaintiffs' Third Set of Requests for Production." *See* Ex. B at 23 and Ex. E (State Farm's April 26, 2024 RFP Responses). That testimony will provide Plaintiffs with the discovery contemplated by Judge Harjani's Order. Plaintiffs' continued insistence on trying to rewrite Judge Harjani's Order and expand the scope of Phase I discovery beyond what the Order provides should be rejected.

Dated: June 6, 2024

Respectfully Submitted:

/s/ David Tracey

**SANFORD HEISLER SHARP, LLP**
David Tracey (Pro Hac Vice)
Albert Powell (Pro Hac Vice)
Sharon Kim (Pro Hac Vice)
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
sharonkim@sanfordheisler.com

**FAIRMARK PARTNERS, LLP**
Alexander Rose (Pro Hac Vice)
Jamie Crooks (Pro Hac Vice)
Michael Lieberman (Pro Hac Vice)
1825 7th St NW, #821
Washington, DC 20001
Phone: (301) 458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

/s/ Sondra A. Hemeryck

**RILEY SAFER HOLMES & CANCILA LLP**
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
70 W. Madison St., Suite 2900
Chicago, IL 60602
Phone: 312-471-8700
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire & Casualty Company*

**CENTER ON RACE, INEQUALITY, AND THE LAW
AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (Pro Hac Vice)
Jason D. Williamson (Pro Hac Vice)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

*Counsel for Plaintiffs and the Proposed Class*