**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>        Defendant. | Case No. 22-cv-07014<br><br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge Jeffrey T. Gilbert |

## JOINT STATUS REPORT PER MAY 23, 2024 ORDER

    Plaintiffs Jaqueline Huskey and Riian Wynn ("Plaintiffs") and Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm"), by and through their respective counsel, submit this Joint Status Report.

    In its May 23, 2024 Order, the Court directed the parties to file a status report regarding Plaintiffs' third-party subpoenas and Defendant's motion for a protective order. Dkt. 97.

    Pursuant to the Court's Order, the parties conferred via videoconference on May 28th and May 30th to discuss the third-party subpoenas. On June 3rd, Plaintiffs offered to narrow the document requests attached to each subpoena into a single document request, without prejudice to issuing their original requests or others at a later date. On June 5th, State Farm rejected Plaintiffs' proposal. Plaintiffs thereafter offered a second proposal, which State Farm rejected.

    Plaintiffs thereafter offered to State Farm a third and final proposal, as follows:

    Documents and communications sufficient to identify all products or services You provided to State Farm that in any way use or incorporate Algorithmic Tools and: (a) assist in the identification of potentially fraudulent or complex Homeowners Insurance claims; (b) assist in the routing of Homeowners Insurance claims, based on potential fraud or complexity; or (c) affect the level of scrutiny applied to a claim, including the amount and nature of documentation or proof the insurer requests in connection with the claim, the number of site visits or interviews an insurer conducts in connection with a claim, and the number of interactions the insurer's employees or agents have with the claimant.

    On June 6th, State Farm rejected Plaintiffs' proposal.

1

State Farm submits that, because the Parties were unable to reach agreement, the appropriate course of action is for the Parties to request that the Court schedule argument on the motion for protective order.

Plaintiffs' view is that, since the parties did not reach agreement, their respective positions on the third-party subpoenas should be set forth in this Joint Status Report. State Farm objects to the inclusion of the arguments set forth below as inappropriate for a Joint Status Report. As an alternative, Plaintiffs proposed the parties submit a joint motion for resolution of a discovery dispute by June 13, 2024. State Farm declined this offer, as there is already a fully-briefed motion for protective order.[1] To avoid undue prejudice, however, State Farm has briefly set forth its position in Section II of this Joint Status Report.

I. **Plaintiffs' Position**

Plaintiffs have made every effort to compromise with State Farm. They have offered three proposals that substantially narrowed the scope of the subpoenas—reducing them from ten to twelve requests down to *one*. Moreover, as discussed below, Plaintiffs' second and third proposals **adopted language directly from State Farm's own Phase I discovery responses**.

Yet, State Farm has refused to engage. It rejected Plaintiffs' proposals outright and has failed to provide a counterproposal or offer any compromise to the parties' dispute.

As explained in Plaintiffs' Opposition to State Farm's Motion for Protective Order (Dkt. 87-88), Plaintiffs' subpoenas have always been within the scope of Phase I. They have sought information relevant and proportional to the "'algorithmic decision-making tools' employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims" (referred to hereafter as "**Algorithmic Sorting Tools**"). Dkt. 79; *see also* Dkt. 81 (ordering a date for written discovery on that topic).

This is equally, if not more, true of the narrowed request Plaintiffs offered to State Farm to reach compromise.

   a. **Plaintiffs' Revised Request Seeks Information Relevant to the Subject Matter of Phase I**

While Judge Harjani's Orders limited the subject matter of Phase I discovery to Algorithmic Sorting Tools, it did not dispense with fundamental principles of relevance. *See, e.g.*, *W. Wind Express v. Occidental Fire & Cas. Co. of N. Carolina*, No. 10 C 6263, 2011 WL

---

[1] Plaintiffs' view is that it is helpful to the parties and the Court to consolidate the remaining disputes in one document, as they have done here. As discussed below, Plaintiffs have substantially narrowed the subpoenas during the conferral process—cutting 90% or more of the requests. Accordingly, Plaintiffs' arguments here present a more streamlined and clearer picture of the live issues than the parties' briefs on State Farm's Motion for Protective Order. Those briefs, spanning forty-three pages, cover numerous document requests that are worded differently and are no longer at issue.

2

13552251, at *1, *3 (N.D. Ill. July 27, 2011) (affirming that party may seek discovery relevant to the subject matter of Phase I). At trial, Plaintiffs may present information that "has any tendency" to make their allegations about Algorithmic Sorting Tools "more or less probable than [they] would be without the evidence." Fed. R. Evid. 401(a)-(b). In discovery, relevance is "necessarily broader." *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020). Here, Plaintiffs revised request seeks documents that, at the least, have a "tendency" to make "more or less probable" that State Farm is using algorithmic tools to "screen out potentially fraudulent or complex claims from straightforward ones." Fed. R. Evid. 401(a)-(b).

Subparts (a) and (b) of the revised request (quoted *supra* at 1) hew closely to the text of Judge Harjani's Orders and State Farm's discovery responses. Subpart (a) quotes Judge Harjani directly—it seeks information sufficient to identify algorithmic tools provided to State Farm that assist in the identification of "potentially fraudulent or complex Homeowners Insurance claims." Dkt. 79. It also uses language taken directly from State Farm's discovery responses—State Farm agreed to "identify" the tools that it uses to "assist" in "the identification of potentially fraudulent" claims. *See, e.g.*, State Farm's Amended First Set of Interrogatories at 10-11 (ROGS 5-6); State Farm's Response to Plaintiffs' Third Request for Production at 1-3. Similarly, Part (b) adopts language from State Farm's responses to Phase I document requests, in which they agreed to provide document about tools that "assist in the routing" of claims, including routing tools that "consider the severity or complexity of a claim."

Part (c) seeks information sufficient to identify algorithmic tools that "affect the level of scrutiny applied to a claim." Scrutiny is a proxy for complexity. A claim is logically more complex when it receives greater scrutiny. Indeed, this type of scrutiny is one of the very harms alleged in Plaintiffs' First Amended Complaint. First Amended Complaint (Dkt. 23), ¶ 4 (algorithmic tools "drive claims handler workflow," "decid[e] how much scrutiny it thus requires," and "direct[s] employee tasks in accordance with that assessment"); ¶ 11 (scrutiny on Huskey's claim led to undue delay with failure to reach resolution to date); ¶ 12 (scrutiny on Wynn's claim "manifested in demands for additional documentation and estimates not required of her neighbor, additional inspections not required of her neighbor, and dozens more interactions with State Farm employees than her neighbor was required to have"); ¶ 38 (State Farm has delegated to algorithmic tools *inter alia* "the determination of claim scrutiny level" and "assignment of tasks to claims handlers").

Accordingly, Plaintiffs' revised request is structured to elicit information relevant to whether State Farm uses "'algorithmic decision-making tools' employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims." Dkt. 79.

### b. The Revised Request Seeks Information Directly Within the Scope and Proportional to the Needs of Phase I

Plaintiffs' revised request is proportional to the needs of Phase I. This third-party discovery is critical to "resolving the issues" about State Farm's algorithmic tools. Fed. R. Civ. Proc. 26(b)(1). Plaintiffs have almost no "access to relevant information" compared to State Farm. *Id.*

Algorithmic tools are "black boxes," particularly inscrutable to outsiders like Plaintiffs.[2] This puts Plaintiffs at a severe disadvantage when testing the completeness of State Farm's Phase I discovery responses.

This disadvantage is particularly concerning given State Farm's past (and ongoing) efforts to shield their algorithmic tools from discovery. Specifically, Plaintiffs served their First Requests for Production on October 27, 2023 (five months before Judge Harjani's phasing Orders), *e.g.*, Dkt. 88-3 at 5. Yet until recently, State Farm equivocated and even denied using algorithmic tools, going so far to represent, "… **there's no such thing. It's a complete fiction**," at the February 22, 2024 Status Hearing. Dkt. 85-8 at 16:4-16:9; *see also* Dkt. 87-1, 88-1 (Chart of Equivocations); Dkt. 87 at 4, 88 at 4 ("State Farm equivocated on whether they even use Algorithmic Tools") (citing examples).

The available evidence, however, directly contradicted State Farm's representations. *See* Dkt. 87-1, 88-1 (Chart of Equivocations). In fact, Plaintiffs identified hundreds of references to algorithmic tools and services in claim files. They accordingly subpoenaed the third parties who provide such tools. Only after seeking protection from Plaintiffs' subpoenas (and receiving Plaintiffs' opposition brief, Dkt. 87-88), did Defendant identify ▮▮▮▮▮▮▮▮▮▮ as playing a role in its claims process (in discovery responses on April 26, 2024).

State Farm's belated disclosures were still riddled with caveats and carveouts. State Farm did *not* agree to disclose tools that "identify potentially complex" claims, and it limited its responses to "structural damage" claims—a term that appears neither in Judge Harjani's Orders nor the First Amended Complaint. Moreover, State Farm refuses to even call their tools algorithmic-decision-making tools, instead branding them as "computer based, automated, and/or rules based," a unilaterally narrowed definition not endorsed by Judge Harjani.

Discovery is not about such fine Talmudic distinctions, it is about a "search for truth." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020). Given State Farm's conduct to date, the third-party subpoenas—now shaved down to one request which seeks "documents sufficient to identify"—will aid that truth-seeking function. The subpoenas will serve as a necessary counterbalance to the disparity in "access to information" between Plaintiffs and State Farm. Fed. R. Civ. Proc. 26(b)(1). They will also do so with minimal burden on third parties: again, the request seeks only documents "sufficient to identify" the algorithmic tool at issue.

---

[2] *See generally* Ashley Deeks, *The Judicial Demand for Explainable Artificial Intelligence*, 119 Colum. L. Rev. 1829 (2019); Cynthia Rudin, *Stop Explaining Black Box Machine Learning Models for High Stakes Decisions and Use Interpretable Models Instead*, Nat Mach Intell 1, 206-15 (2019); Maayan Perel & Niva Elkin-Koren, *Black Box Tinkering: Beyond Disclosure in Algorithmic Enforcement*, 69 Fla. L. Rev. 181 (2017); Anupam Chander, *The Racist Algorithm?*, 115 Mich. L. Rev. 1023 (2017); Frank Pasquale, *The Black Box Society: The Secret Algorithms That Control Money and Information* (2016); Andreas Tsamados and Nikita Aggarwal et al, *The Ethics of Algorithms: Key Problems and Solutions*, AI & Soc 37, 215-30 (2022); Manuel Carabantes, *Black-Box Artificial Intelligence: An Epistemological And Critical Analysis*, AI & Soc 35, 309-17 (2020).

In sum, Plaintiffs' revised third-party subpoenas adhere to Judge Harjani's Phase I Orders, impose no burden on State Farm, and minimal burdens on third parties.

## II. Defendant's Position.

Judge Harjani's February 23, 2024 Order is clear as to the scope of discovery that is currently permitted: the identification of "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims." Dkt. 79. Plaintiffs' vendor subpoenas violated Judge Harjani's discovery orders for the reasons set forth in State Farm's briefing on its motion for protective order. *See* Dkts. 85 and 92.

Plaintiffs' revised proposed request does not cure that problem. The proposed request would require the subpoenaed entities to produce:

> Documents and communications sufficient to identify all products or services You provided to State Farm **that in any way use or incorporate Algorithmic Tools** and: (a) assist in the identification of potentially fraudulent or complex Homeowners Insurance claims; (b) **assist in the routing of Homeowners Insurance claims**, based on potential fraud or complexity; or (c) **affect the level of scrutiny applied to a claim, including the amount and nature of documentation or proof the insurer requests in connection with the claim, the number of site visits or interviews an insurer conducts in connection with a claim, and the number of interactions the insurer's employees or agents have with the claimant**.

Putting aside that this proposed request uses Plaintiffs' overly broad definition of "Algorithmic Tool," to which State Farm has objected, the request on its face goes beyond what Judge Harjani allowed, because it is not limited to "algorithmic tools" that are actually "*employed by State Farm* to screen out potentially fraudulent or complex claims from straightforward homeowners insurance claims."

Plaintiffs assert that part (b) of their proposed revised request "adopts language from State Farm's responses to Phase I document requests." As State Farm's counsel have repeatedly explained to Plaintiffs' counsel—and as the chart included with State Farm's interrogatory responses (Dkt. 92-1) shows—State Farm did not limit its own discovery responses to the identification of tools used by State Farm to screen out potentially fraudulent or complex claims; rather, State Farm went beyond what was required by Judge Harjani's discovery orders by also identifying tools that assist in the routing of claims but are not used to screen out potentially fraudulent or complex claims. The fact that State Farm provided this additional information to assist Plaintiffs does not change the scope of discovery allowed by Judge Harjani's orders, not does it make it appropriate for plaintiffs to seek discovery from third parties that goes beyond what those orders allow.

State Farm has objected to part (c) of the proposed revised request because the language is vague and ambiguous, and serves no permissible purpose. If the language is intended to seek discovery on something other than the "algorithmic decision-making tools employed by State

5

Farm to screen out potentially fraudulent or complex claims from straightforward homeowners claims," then it goes beyond the scope of the discovery allowed by Judge Harjani's orders, and State Farm objects to it on that ground. If it is intended by Plaintiffs as simply another way of stating Judge Harjani's order, then it adds nothing and State Farm objects to its inclusion as unnecessary and confusing.

State Farm has previously addressed Plaintiffs' arguments concerning what they term the "fundamental principles of relevance" (*supra* at 2) in its reply brief in support of its motion for protective order (Dkt. 92 at 3-4), and will not repeat those arguments here.

Plaintiffs' assertion that "State Farm did not agree" in its discovery responses "to disclose tools that 'identify potentially complex' claims" (*supra* at 4) is incorrect. State Farm's interrogatory responses identified a total of ███████████████████████████████████████████████████████████████████████ *See* Dkt. 92-1 at Table.³ In addition, State Farm disclosure of "computer-based, automated, and/or rules based" tools did not *narrow* the universe of tools disclosed, as Plaintiffs assert; rather, because the Parties dispute the appropriate definition of "algorithmic tools," State Farm utilized a *broader* category, to ensure that its disclosures were, if anything, *over*-inclusive.⁴

Plaintiffs also once again repeat their favorite canard: that State Farm "denied even using algorithmic tools." *Supra* at 4. Plaintiffs base that assertion on a statement made by State Farm's counsel during the February 22, 2024 hearing that Plaintiffs take out of context. *See* Dkt. 98 at 14:10-16, 15:24-16:10 (discussing *Plaintiffs' allegations*, which among other things defined "algorithmic decision-making tools" to mean "machine learning algorithms and artificial intelligence tools"). But Plaintiffs entirely ignore the following, additional statements that were made by State Farm's counsel *during that same hearing*:

> Ms. Hemeryck: 
>
> Dkt. 98 at 18:15-18.

---

³ Plaintiffs also contend that State Farm has improperly limited its discovery responses to structural damage claims. State Farm's discovery responses are, of course, not at issue here, but in any event State Farm notes that Plaintiffs have brought their claims pursuant to the Fair Housing Act, which implicates structural damage claims—*i.e.*, damage to a dwelling structure. Plaintiffs' discovery requests also define "Homeowners Insurance" as "an insurance policy designed to cover losses and damages *to a dwelling*." *See, e.g.*, Dkt. 85-9 at 3 (emphasis added).

⁴ Plaintiffs' suggestion that there was something nefarious in the timing of State Farm's identification of the ████████ (*supra* at 4) is likewise baseless. State Farm identified the tools in its responses to Plaintiffs' interrogatories. The interrogatories were served on March 27, 2024, and State Farm served its responses thirty days later, on April 26, 2024, in accordance with Federal Rule of Civil Procedure 33.

>Mr. Cancila: "our point with the discovery we're offering is we're indicating State Farm's willingness to indicate here's a variety of algorithmic tools that State Farm is using for homeowners insurance." Dkt. 98 at 19:21-25.

>The Court: "does State Farm use, to your knowledge, machine learning in some capacity that – for claims processing?"

>Mr. Cancila: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

>The Court: "Okay."

>Mr. Cancila: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
>Dkt. 98 at 22:6-13.

State Farm has also previously addressed Plaintiffs' so-called "Chart of Equivocations" and the supposed "hundreds of references to algorithmic tools and services in claim files," *see* Dkt. 92 at 8-12, and will not repeat those arguments here.

Dated: June 6, 2024

Respectfully Submitted:

/s/ David Tracey

/s/ Sondra A. Hemeryck

**SANFORD HEISLER SHARP, LLP**
David Tracey (Pro Hac Vice)
Albert Powell (Pro Hac Vice)
Sharon Kim (Pro Hac Vice)
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
sharonkim@sanfordheisler.com

**FAIRMARK PARTNERS, LLP**
Alexander Rose (Pro Hac Vice)
Jamie Crooks (Pro Hac Vice)
Michael Lieberman (Pro Hac Vice)
1825 7th St NW, #821
Washington, DC 20001
Phone: (301) 458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

**RILEY SAFER HOLMES & CANCILA LLP**
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
70 W. Madison St., Suite 2900
Chicago, IL 60602
Phone: 312-471-8700
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Counsel for Defendant State Farm Fire & Casualty Company*

**CENTER ON RACE, INEQUALITY, AND THE LAW
AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (Pro Hac Vice)
Jason D. Williamson (Pro Hac Vice)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

*Counsel for Plaintiffs and the Proposed Class*