```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3

    JACQUELINE HUSKEY, on behalf of      )  No. 22 C 7014
 4  herself and all others similarly     )
    situated,                            )
 5                                       )
                          Plaintiff,     )
 6                                       )
                    vs.                  )  Chicago, Illinois
 7                                       )
    STATE FARM FIRE & CASUALTY           )
 8  INSURANCE COMPANY,                   )
                                         )  May 23, 2024
 9                        Defendant.     )  10:19 a.m.

10                      TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HON. JEFFREY T. GILBERT, MAGISTRATE JUDGE
11
    APPEARANCES:
12
    For the Plaintiff:    MR. DAVID H. TRACEY
13                        MS. SHARON KIM
                          Sanford Heisler Sharp, LLP,
14                        17 State Street, 37th Floor,
                          New York, New York 10004
15
                          MR. ALEXANDER ROSE
16                        Fairmark Partners, LLP,
                          1499 Massachusetts Avenue, NW, Unit 113A,
17                        Washington, DC 20005

18
    For the Defendant:    MS. SONDRA A. HEMERYCK
19                        MS. SARAH E. FINCH
                          Riley, Safer, Holmes & Cancila LLP,
20                        70 West Madison Street, Suite 2900,
                          Chicago, Illinois  60602

21

22

23                          PATRICK J. MULLEN
                          Official Court Reporter
24                     United States District Court
                   219 South Dearborn Street, Room 1412
25                     Chicago, Illinois  60604
                            (312) 435-5565
```

1      (Telephonic proceedings on the record.)

2           THE CLERK:  22 Civil 7214, Huskey, et al., versus

3    State Farm Fire & Casualty Company.

4           THE COURT:  Okay.  Good morning, folks.  This is my

5    first foray with you, first appearance, so let's get

6    appearances of record for plaintiff and then for the

7    defendants, and we'll see where we stand on this.

8           MR. TRACEY:  Good morning, Your Honor.  This is David

9    Tracey of Sanford Heisler Sharp for the plaintiff.

10          THE COURT:  Okay.  If you're on a speakerphone, could

11   you just speak into the receiver rather than the speaker,

12   because I was hearing a little bit of breaking up?  So it

13   usually is better if you speak right into a receiver, whether

14   it's a cellphone or a more traditional phone.  And if you

15   weren't on a speakerphone, try not to break up.

16          Anybody else for plaintiff?

17          MS. KIM:  Yes, Your Honor.  Sharon Kim from Sanford

18   Heisler Sharp.

19          THE COURT:  I didn't get the name.

20          MS. KIM:  Sharon Kim.

21          THE COURT:  Okay.  Anybody else?

22          MR. ROSE:  And Alexander Rose from Fairmark Partners

23   on behalf of plaintiff.

24          THE COURT:  Okay.  Anybody else for plaintiff?

25      (No response.)

```
 1              THE COURT:  Okay.  What about for the defense?

 2              MS. HEMERYCK:  Good morning, Your Honor.  Sondra

 3   Hemeryck for defendant State Farm Fire & Casualty Company.

 4              THE COURT:  Good morning.  Anybody else for State

 5   Farm?

 6              MS FINCH:  Good morning, Judge.  Sarah Finch for

 7   State Farm.

 8              THE COURT:  Anybody else?

 9              MS. HEMERYCK:  That should be it.

10              THE COURT:  Great.  Perfect.  Okay.  Well, I've

11   inherited you, like the last case from Judge Harjani.  So I

12   would have liked a different kind of inheritance, maybe, but

13   this will do.  This will do.  Maybe this was the best he could

14   pass down.

15     (Laughter.)

16              THE COURT:  Anyway, I'm trying to get my arms around

17   your case a little bit, and I want to see what we can get

18   accomplished here this morning even though you're all on the

19   phone.  Next time maybe we can be in person.

20              One, I've read the motion for a protective order, and

21   I'd like to address some of the things that you've briefed in

22   that motion.  One, is there a transcript of Judge Harjani's

23   February 22nd hearing in the case?  Nobody attached it, so I

24   just was wondering if there was one.

25              MS. HEMERYCK:  This is Sondra Hemeryck, Your Honor,
```

1    for State Farm.  There is one.  We attached a slightly

2    redacted version as Exhibit -- I believe it was Exhibit 8 to

3    our motion.  The parts that were redacted (inaudible), as I

4    said, they're limited, and I redacted them and filed the

5    redacted version because we didn't think they were relevant to

6    the issues.  Plaintiff has now kind of made them relevant, so

7    we would be happy to file a full unredacted version under

8    seal.  But the redacted version is attached as Exhibit 8 to

9    our motion at docket 85-8, and depending upon where this goes

10   I may end up referring to the parts that were redacted.  If I

11   do, I'll just read those.

12          THE COURT:  Okay.  Well, this was not scheduled as a

13   motion hearing.  It's scheduled as a status hearing, and I

14   recognize that.

15          MS. HEMERYCK:  Agreed.

16          THE COURT:  So I was going to try and direct traffic,

17   and maybe what I'm going to need to do is just schedule you to

18   come up or come in, but I was wondering what we could

19   accomplish here.

20          So, number one, based on what I read, again, I was

21   doing this more quickly than I would normally want to do.  Let

22   me just go there.  So it would be -- you said it was Exhibit A

23   to your --

24          MS. HEMERYCK:  It's Exhibit 8.  It's Exhibit 8 to our

25   motion.  So it's docket 85-8.

1          THE COURT:  8, okay, 8.

2          MS. HEMERYCK:  Right.  As I said, it's almost

3  complete.  There are a few things that are redacted, but I can

4  tell you what they are if you need me to.

5          THE COURT:  Okay.  Okay.  All right.  I have not read

6  that.  All right?  I mean, based on just reading the order and

7  not the context that preceded the order, I'm going to -- here,

8  look, let me say a couple things here.  One, I have no

9  hostility to plaintiff's claims here, but I have some

10  disagreement as to how plaintiff is going about the discovery

11  process to discover those claims.  I understand what the

12  claims are, and from reading defendant's reply and at least

13  some of the responses that they made to plaintiff's discovery

14  requests I'm thinking that you all need to talk more to figure

15  out the next steps are here.  I have some impressions.  These

16  are not necessarily rulings.  I'm trying to give you this by

17  way of guidance, and if it doesn't help, you know, we'll, you

18  know, deal with that.

19          Impression number 1 is that defendant's

20  interpretation of "used at the outset," those words in Judge

21  Harjani's order of February 23, 2024, which is ECF number 79,

22  makes more sense than plaintiff's interpretation of that.  I

23  don't think that means at the outset of discovery.  I do

24  think -- for the reasons that the defendant says really in its

25  reply at page 2.  Okay?  I think it makes more sense that what

1    was meant there in the context of your case was the algorithm

2    tools, the algorithmic tools that are used essentially to sort

3    the claims from, you know, the routine claims to the ones that

4    you're -- you know, the fraudulent-slash-complex claims.

5            I agree with plaintiff that that would be at any time

6    in the process that the claim is being evaluated, so I

7    interpret "at the outset" to be very broad and to mean at the

8    outset of whenever the claim is being characterized in some

9    way.  So it could happen multiple times during a claim process

10   potentially.  It could happen when the claim comes in.  It

11   could happen when more information is provided.

12           So I don't interpret "at the outset" and frankly I

13   don't think defendant interprets it as just the first time you

14   look at it, because based on defendant's discovery responses,

15   which I know came in just a day after plaintiff's response

16   brief here, but looking at those, I think they interpret it

17   the same way.  Whenever the claim is being characterized,

18   they're disclosing the algorithmic tools that are used.

19           Let me pause here, Ms. Hemeryck.  Am I correct as to

20   the way you're interpreting it?

21           MS. HEMERYCK:  Yes, Your Honor, that is correct.

22   When we prepared those discovery responses, we did not limit

23   it to, oh, you know, we're only including tools that are used

24   when the claim is first looked at.  We did not limit it that

25   way, so that's correct.

1          THE COURT:  Okay.

2          MS. HEMERYCK:  And you're right.  For example, some

3   of those fraud tools in particular can come in play as new

4   information comes in during (inaudible).

5          THE COURT:  Right.  And, plaintiff, I mean, I don't

6   think I need to hear from you.  Your argument was pretty

7   clear.  I think you were arguing it in a way that justified

8   pretty broad discovery at the outset here, and I just don't

9   think your interpretation, you know, at the outset of the

10  discovery necessarily makes a whole lot of sense here.

11          Two, I've looked at your discovery requests.  I've

12  looked at State Farm's responses to them.  I've looked at this

13  quickly, okay, and I've read the briefs.  I've read the briefs

14  more carefully, and it seems to me we're at kind of a regroup

15  point here.  If we are and if you agree with me, then we can

16  talk about what we need to do.  Otherwise, I'll set the motion

17  for hearing and I'll rule on it.

18          It seems you are perfectly entitled -- not perfectly,

19  you know, you are entitled to discovery about the algorithmic

20  tools that State Farm uses to characterize these claims.

21  That's the center of your case and that's what the case is

22  about, and you're entitled to that kind of discovery at the

23  outset of discovery, I would say.  But you're entitled to the

24  tools that they use at the outset of when they start

25  characterizing a claim.

1          I do think you jumped the gun somewhat, maybe,

2     because you felt you weren't getting information from State

3     Farm, but they actually have responded to your discovery in

4     serving what I would say from my reading them as attached to

5     the subpoenas and also the responses as overbroad discovery

6     requests on these third party entities even if you take away,

7     you know, 6 through 9, requests 6 through 9 and only focus on

8     1 through 4 and 5.  5, I think by its terms, is pretty

9     overbroad.  1 through 4 is overbroad to the extent it asks for

10    all, you know, all of the -- let me call that up here right

11    now because I was just there.  You know, it's all products and

12    services provided to State Farm, you know, all communications

13    and documents to identify all products and services.

14          Now at least you know from State Farm's responses a

15    little bit more about what algorithmic tools at least they

16    said they are using.  You know, without some sense that

17    they're hiding the ball on you, I think that's the first place

18    to go.  You got those relatively recently, I know, but it

19    seems to me that having gotten those, that should catalyze

20    more discussions between you about what, if anything, you need

21    on these third party subpoenas now or whether those should be

22    held in abeyance while you take some discovery of State Farm

23    to further focus and be more particular and more proportional

24    to the needs of the case with respect to the third party

25    subpoenas.

1          I have to tell you from reading what I read -- and,

2     again, this is just impressions -- I was inclined to grant the

3     motion for protective order, but with the understanding that

4     maybe some of this discovery would go forward at some point.

5     But I wasn't sure that as served it really was proportional to

6     the needs of the case.

7          So what I'm wondering from plaintiff's perspective is

8     whether having gotten their recently served responses to

9     discovery requests, if I'm gauging this right, that maybe you

10    should sit down with them and talk for a bit and, you know,

11    see whether there's a need to pursue these subpoenas now.  If

12    you think, you know, you've talked whatever you've talked to

13    them and you think you need a decision on the motion for

14    protective order, I'll dig, you know, down into the weeds and

15    set this for hearing and I'll rule on it.

16         So I don't know who from the plaintiff's side wants

17    to address that, but I will tell you that I have a 10:45.  So

18    I got a little bit more time to work with you here.

19    Plaintiff?

20         MR. TRACEY:  Thank you, Your Honor.  Thank you, Your

21    Honor.  This is David Tracey for the plaintiff.  I appreciate

22    everything that Your Honor said.  I have just a couple of

23    thoughts.  First of all, I am happy to speak with and confer

24    with counsel for State Farm further, but there are two points

25    that I want to raise with respect to State Farm's responses

1   and why those responses remain really insufficient.

2           First, the responses are filled with various caveats

3   and carve-outs.  Contrary to State Farm's representations

4   today, they've limited their discovery responses to the,

5   quote, outset of claims.  So they didn't -- it was not limited

6   to the outset of whenever the claim is characterized.  It was

7   limited to the outset of the claim.  I'm very happy that we

8   got this clarification today, but it's important to note that

9   the discovery responses as written were much more limited than

10  what Your Honor just described.

11          Additionally, Your Honor, the discovery responses

12  refer only to routing of claims.  It doesn't talk about the

13  more general category of categorizing claims or characterizing

14  claims.  Claims may be characterized as complex or fraudulent,

15  and they're not routed to someone else or to another

16  department.  They stay with the same claims specialist or

17  adjuster who then treats them differently.  That's within the

18  scope of the allegations in the complaint, and I want to make

19  it clear that we shouldn't only be getting discovery of the

20  tools that route the (inaudible).

21          Additionally, their discovery responses were limited

22  only to the structure damage claims, not all home owner

23  insurance claims, and our allegations clearly contemplate all

24  home owner insurance claims.

25          And finally, they only agreed to produce tools that

1   identified potentially fraudulent claims, not those that

2   identify potentially complex claims.

3          So those are all limitations, carve-outs, and caveats

4   in the responses that we received after we submitted our

5   opposition brief that remain or that continue to cause concern

6   that we are not getting complete answers.

7          Additionally, it's not clear to us that --

8          THE COURT:  Can I interrupt you, Mr. Tracey?  Can I

9   interrupt you just for a second?

10         MR. TRACEY:  Yes.  Thank you, Your Honor.

11         THE COURT:  You haven't had this discussion yet with

12  Ms. Hemeryck and her team about your -- the deficiencies in

13  their responses, right?  You're telling it to me, and this may

14  be the first time they're hearing that, right?

15         MR. TRACEY:  Right, we sent them a deficiency letter

16  on the 17th, Your Honor --

17         THE COURT:  Okay.

18         MR. TRACEY:  -- but we haven't had a chance to confer

19  about it.  We do have a conference later today, fortunately.

20  Our schedules didn't align, unfortunately, to make it happen

21  before today.

22         THE COURT:  Okay.

23         MS. HEMERYCK:  And just to be clear, my understanding

24  is that conference for today is to talk about your 30(b)(6)

25  topics because we have to agree on those, not your deficiency

1  letter.  We haven't scheduled that yet.  We haven't had a

2  chance to get ahold of our client.

3           THE COURT:  Okay.

4           MR. TRACEY:  That's -- I think that's right, although

5  I think many of the same issues will arise because they

6  overlap here.

7           THE COURT:  Okay.

8           MS. HEMERYCK:  So, Your Honor, I'm happy to respond

9  to the -- I'm sorry, Your Honor.

10           THE COURT:  No, I don't want to have the Rule 37.2

11  conference here on the fly.

12     (Laughter.)

13           THE COURT:  You've both answered my concern.  They

14  sent you a deficiency letter.  You haven't actually talked

15  about it yet.  You haven't actually talked about it with your

16  client yet, so it's premature to deal with any of that.  I'm

17  not going to -- I won't -- you know, that's stuff that is

18  completely outside of the motion practice.

19           Go ahead, Mr. Tracey, with what else you wanted to

20  say, and we'll figure out where we're going with this.

21           MR. TRACEY:  Thank you, Your Honor.  It's also clear

22  to us from State Farm's most recent responses that there's a

23  discrepancy between how State Farm describes the tools at

24  issue and how the third parties describe the tools.  For

25  instance, Verisk uses ISO ClaimSearch.  State Farm does not

1    give a clear answer as to whether ISO ClaimSearch uses an

2    algorithm, where Verisk, who is actually the producer of this

3    tool, describes it as using sophisticated algorithms.

4          It's not -- if you look in docket number 79, Judge

5    Harjani noted that State Farm didn't seem entirely sure about

6    the nature of the algorithmic tools it used, and that's not

7    surprising because these are third parties that provide these

8    tools to State Farm and the third party is the party that is

9    likely to have the best information about how these tools

10    actually work and what they do.

11          Finally, Your Honor, I want to point to the requests

12    number 1 through 5.  I know Your Honor looked at the beginning

13    of each of those requests, you know, noting the use of the

14    word "all," right?  But if you look at the latter half of each

15    of those requests, you'll see that we're actually asking

16    simply for documents sufficient to identify, just sufficient

17    to identify the (inaudible) services that do work categorizing

18    claims as potentially fraudulent or complex or characterizing

19    them as potentially fraudulent or complex.

20          So I would, I would submit to Your Honor that we are

21    entitled to learn all the tools at this stage of discovery.

22    We're entitled to learn the identity of all tools that are

23    doing this categorization work, this characterization work,

24    and that's really what requests 1 through 5 are trained on.

25          THE COURT:  Yes, I'm not sure I agree with that last

1    statement, but this indicates to me that providing guidance to

2    you two warring parties on this, at least on this issue, is

3    not going to move the ball forward much, so I need to circle

4    back to the motion for protective order with what you're

5    saying in mind.

6            I think you need to have a meet-and-confer with the

7    other side about your views that their answers are too

8    limited, that they don't cover the -- they don't respond to

9    your requests and, you know, how what they say contrasts to

10   what third parties say.  I mean, it very well may be that at

11   some point in time the plaintiffs -- and I don't know if that

12   time is now or not, and I have to look at this stuff -- at one

13   point in time plaintiffs might be entitled to this kind of

14   third party discovery.

15           But it seems to me that putting one foot in front of

16   the other, you know, in a way that moves this forward, it may

17   be -- again, these are impressions.  Okay?  I want to stress

18   these are impressions.  These are not rulings.  I have to look

19   back at what you've filed and what you've attached to all of

20   this in light of the conversation we're having here.  But it

21   may be that the requests that have been served are broader

22   than I might feel are appropriate at this stage of the case.

23           So right now they're on hold because this motion is

24   pending, and in the meantime you've got State Farm's responses

25   to discovery requests to deal with and talk about.  You know,

1    I think probably State Farm realizes that the more information

2    they provide to you about things that are relevant to the case

3    and proportional to the case, the better their position is to

4    try and limit discovery of third parties.

5          I'm not convinced yet that the best approach to the

6    core of your case to figure out what State Farm is doing, you

7    know, by using these algorithms to characterize the claims,

8    I'm not convinced yet, but again I've got to read what you

9    have, you know, the first foray as to third parties rather

10   than getting or continuing to get a better sense of what State

11   Farm is doing.  But I need to read the briefs again, as I

12   said, against the background of what we just talked about and

13   either have you in or issue a ruling on that.

14         I want to -- and I appreciate, you know, the color

15   that both of you have provided.  I looked at your status

16   report as well.  It says the parties do not anticipate being

17   able to meet the May 24, which is tomorrow, deadline on the

18   30(b)(6) topics.  I know you're meeting today, so maybe you

19   will be able to get past that.  I'm glad you're meeting and

20   conferring with a goal toward getting to that point.

21         So briefly what I'd like to know is this.  I mean, my

22   suggestion would be to, you know, meet today about what you're

23   going to meet about and see where you are on that.  Then if

24   the parties agree that that deadline needs to move, I'm happy

25   to move it or, you know, if both parties say they need some

1    relief from it I'd give you relief now.

2           What say you, Ms. Hemeryck?

3           MS. HEMERYCK:  Thank you, Your Honor.  So having

4    looked at their 30(b)(6) topics, Judge Harjani's discovery in

5    the scheduling order talks about -- I think his words were

6    potentially a short 30(b)(6) deposition.  They have served a

7    multipage list of topics, ten topics.  State Farm thinks they

8    are very broad and consistently, actually, with what we

9    consider their overly broad written discovery requests.  The

10   topics follow the same pattern.

11          And as you've heard today, you know, the plaintiff

12   and State Farm seem to have very different views -- and I

13   apologize for the breakup, Your Honor -- very different views

14   of the proper scope of discovery at this point.  So while I

15   would love it if we could actually reach agreement when we

16   discuss it this afternoon, I think it is highly unlikely.  In

17   fact, I think we're going to have to come back to the Court on

18   this.  That's just my supposition, unfortunately.

19          THE COURT:  Okay.  So you think the same thing on the

20   plaintiff's side, hearing from her?

21          MR. TRACEY:  Yeah, Your Honor.  David Tracey for the

22   plaintiff.  Yeah, Your Honor.  David Tracey for the plaintiff.

23   I agree that I think it's unlikely that we will be able to

24   agree by tomorrow in part because of the issues.  I see the

25   issues in the deficiency letter that we sent on May 17th as

1    connected to the issues that Ms. Hemeryck is raising

2    concerning the 30(b)(6) notice, and it would be useful for the

3    parties to be able to confer about everything and raise any

4    disputes with the Court if there are remaining disputes after

5    those conferences.

6              So my suggestion would be that we maybe have a date

7    in the next week or two, an extension of the deadline by a

8    week or two so that we have sufficient time to confer or raise

9    issues with the Court.

10             THE COURT:  So what I would suggest on this, folks,

11   is that I extend the date.  What I would like to do is set a

12   date for the parties to agree on Rule 30(b)(6) deposition

13   topics and to file any motion to resolve -- designed to

14   resolve the parties' disputes in that regard, and I'll say,

15   comma, if any, hopefully.

16             It seems to me that the type of vehicle for getting

17   that in front of me would be a joint motion to resolve the

18   discovery disputes in which you tell me what the topic is,

19   what plaintiff's topic is, what defendant's objection to that

20   is, what plaintiff's response to that is, why plaintiff thinks

21   it's appropriate and why defendant doesn't.  It would be a

22   joint motion because at least you're talking to each other

23   about these things and you've agreed as to what would be in

24   there rather than hopefully, you know, talking past each

25   other.

```
 1              So I'm happy to set a date for that.  I mean, his
 2    order also calls for you to agree to a date for the 30(b)(6)
 3    dep by June 14th, so I don't know -- and you're supposed to
 4    complete all this by August 9th.  But if you're proposing
 5    something like a, you know, two-week period of time for you to
 6    talk today and, you know, shortly thereafter about the
 7    discovery issues that are here, you know, everything that goes
 8    into this stuff, I'd like to set a date for you to file
 9    something with agreed topics for the Rule 30(b)(6) deposition
10    and a status report on -- not a status report, a joint motion
11    to resolve the other issues.
12              Sorry.  There are people walking into my courtroom
13    for the next case, so we're going to -- that's fine.  We are
14    going to need to recess, but what would that date be?  Two
15    weeks from now I think is like June 6th.  I don't know if
16    that's enough time.
17              MS. HEMERYCK:  I think that should be fine, Your
18    Honor.  I think we can do June 6th.
19              THE COURT:  Plaintiff?
20              MR. TRACEY:  I agree, Your Honor.
21              THE COURT:  Okay.
22              MR. TRACEY:  Yes, plaintiffs agree.
23              THE COURT:  Okay.  And then, you know, I mean, he had
24    this schedule here with -- you've got to agree on a deposition
25    date, a 30(b)(6) deposition date by June 14th.  I mean, if
```

1    you're just filing something with -- if you can't do it, you

2    can't do it.  If you're just filing on June 6th disagreements,

3    I don't think you're going to want two Rule 30(b)(6)

4    depositions.  But, you know, if there's different people who

5    can be, you know, deposed on this stuff, that's fine.  I mean,

6    I'd like to stick as much as possible or as I can to Judge

7    Harjani's schedule.

8            MS. HEMERYCK:  Judge, could I make one -- I realize

9    the Court is running out of time, so I want to make one quick

10   observation.  So, you know, the June 14th deadline for the

11   parties to agree on dates for the 30(b)(6), the challenge from

12   our perspective is that until the topics are actually

13   finalized, it's hard for us to figure out who the witnesses

14   will be and, therefore, it's hard to know what their schedules

15   are.

16           THE COURT:  Right, right.

17           MS. HEMERYCK:  That makes it a little bit tricky.

18           THE COURT:  Yes, let me interrupt.  Well, I didn't

19   interrupt.  I let you finish.  So this is what I'm going to

20   do.  I need in my order, Brenda, you know, to address Judge

21   Harjani's March 5th order.  I've already extended the date for

22   them to agree on topics for the 30(b)(6) to June 6th, and by

23   that date also to file a joint motion to resolve any disputes

24   about topics.  Then I'm going to modify the order to say

25   within two weeks if the parties -- I mean, I'm still hoping

1    that you could agree on all topics.  So, you know, I would say

2    if the parties have not agreed by that date on all topics for

3    the 30(b)(6) deposition, then they shall agree on dates for

4    the Rule 30(b)(6) deposition or depositions within ten days of

5    a ruling on the joint motion with respect to the deposition

6    topics.

7            I'm going to keep the August 9th ruling for the

8    30(b)(6) deposition to happen, though I understand that could

9    be in jeopardy, too, but, you know, we're doing the best we

10   can here.  So any objection to that from plaintiff?

11           MR. TRACEY:  No, Your Honor.

12           THE COURT:  From the defense?

13           MS. HEMERYCK:  No, Your Honor, no objection.

14           THE COURT:  Okay.  All right.  I'll see you when I

15   see you.

16           MR. TRACEY:  Your Honor?  Your Honor?

17           THE COURT:  Yes.

18           MR. TRACEY:  Your Honor, I apologize.  If I may add

19   just one observation that may actually assist the Court when

20   you expect the motion for a protective order, might I suggest

21   that on the same day that we provide notice of the 30(b)(6)

22   topics or any disagreements that plaintiff should also let you

23   know at that point whether we think that we would have to

24   continue with our opposition to the protective order, the

25   motion for protective order, or we are prepared to withdraw

1   the subpoenas without prejudice by that date?  Because, as you

2   know, you think the parties need to meet and confer more, and

3   I think those two weeks would give us the opportunity to do

4   that, this may just take some work off your plate, Your Honor,

5   if we're able to use our conferences.

6           THE COURT:  Yes, that's very considerate of you, and

7   I will take you up on that offer.  I appreciate it.  I was

8   just clipping all my papers here together, and in my mind I

9   was saying I need to jump on this and get them a ruling, but I

10  like your proposal.  I would put it in a different status

11  report.

12          So I'd file on June 6th the 30(b)(6) stuff and any

13  joint motion, and then in a separate status report on 30(b)(6)

14  any progress, the status of the parties' discussions or

15  further discussions about the third party subpoenas and

16  defendant's motion for protective order and any agreements the

17  parties have reached in that regard, and I will hold off

18  deciding the motion until I hear from you as to whether or not

19  I need to decide it or what portion I need to decide.  So

20  thank you very much.  I appreciate it.

21          MR. TRACEY:  Thank you, Your Honor.

22          MS. HEMERYCK:  Your Honor, one more thing.  This is

23  Ms. Hemeryck.  I have one more very quick -- just very quick,

24  would you like us to provide you with a copy of the transcript

25  from the February 22nd hearing?

1           THE COURT:  Oh, great.

2           MS. HEMERYCK:  (Inaudible.)

3           THE COURT:  Well, I called it up when you said it's

4  on CM/ECF, and you say that some of it has been redacted?  I

5  mean, that's a complete --

6           MS. HEMERYCK:  Yeah.  So we could this week just file

7  an unredacted version under seal.

8           THE COURT:  Yes.

9           MS. HEMERYCK:  File a complete version under seal?

10          THE COURT:  Yes, I'll order you to do that so the

11  clerk's office accepts it.

12          MS. HEMERYCK:  Okay.

13          THE COURT:  Yes, file 85-8 under seal.

14          MS. HEMERYCK:  Will do.  Thank you, Your Honor.

15          THE COURT:  Okay.  Got to go.

16          MS. HEMERYCK:  Thank you, Your Honor.

17          MR. TRACEY:  Thank you, Your Honor.

18   (Proceedings concluded.)

19             C E R T I F I C A T E

20     I, Patrick J. Mullen, do hereby certify the foregoing
is an accurate transcript produced from an audio recording of

21  the proceedings had in the above-entitled case before the
Honorable JEFFREY T. GILBERT, one of the judges of said Court,

22  at Chicago, Illinois, on May 23, 2024.

23                        */s/ Patrick J. Mullen*
                           Official Court Reporter

24                         United States District Court
                           Northern District of Illinois

25                         Eastern Division