# EXHIBIT A

IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Jacqueline Huskey and Riian Wynn, on behalf of themselves and all others similarly situated,** *Plaintiffs,* v. **State Farm Fire & Casualty Company,** *Defendant.* | Case No: 22-cv-07014 Hon. Jeffrey I. Cummings Magistrate Judge Sunil R. Harjani |

## PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION

Plaintiffs, Jacqueline Huskey and Riian Wynn (collectively "Plaintiffs"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 34, hereby request that Defendant State Farm Fire & Casualty Company ("State Farm") produce for examination, inspection, and copying the documents and other items listed below within thirty (30) days of service hereof.

## DEFINITIONS

1. "**Algorithmic Tool**" is a tool that uses algorithms, statistics, data analytics, machine learning, deep learning, natural language processing, artificial intelligence, or any other data science tools or concepts to label data, predict outcomes, or assist with decision-making.

2. "**Answer**" means each and every Answer filed in this matter, including any Amended Answer filed at any time.

3. "**Communication**" means oral or written Communications of any kind, including without limitation, electronic Communications, e-mails, facsimiles, telephone Communications, correspondence, exchanges of written or recorded Information, or face-to-face meetings.

4. "**Complaint**" means each and every Complaint filed in this matter including any Amended Complaint filed at any time.

5. "**Person**" includes, without limitation, any natural Person, corporation, partnership, government entity, and any other form of legal or business entity.

6. "**Agreement**" or "**Memorandum**" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, together with all modifications and amendments thereto.

7. "**Document**" or "**Documentation**" is defined to be synonymous in meaning and equal in scope to the usage of the term "Documents or electronically stored Information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term. The term includes without limitation writings, drawings, graphs, charts, photographs, sound recordings, images, other data and data compilations, and electronically stored Information.

8. "**Homeowners Insurance**" means an insurance policy designed to cover losses and damages to a dwelling used principally as a private personal residence, and not solely for rental or other commercial purposes. Such properties include single-family detached houses; single-family attached houses; condominiums or cooperatives; mobile or manufactured homes; and any other type of residence or dwelling, including, but not limited to, those that are covered by an HO-01, HO-02, HO-03, HO-05, HO-06, HO-07 or HO-08 Homeowners Insurance policy.

9. "**Claims Process**" refers to State Farm's intake, routing, assignment, investigation, adjustment, processing, and/or handling processes, practices, and/or procedures for claims arising from or made pursuant to Homeowners Insurance.

10. "**Information**" refers to without limitation all data fields and inputs, personal Information concerning policyholders and/or insured properties, and any other Information State

Farm considers, requests, collects, and/or maintains concerning policyholders of Homeowners Insurance, and/or claims arising from or made pursuant to Homeowners Insurance.

11. "**Insured Property**" means a property covered by Homeowners Insurance.

12. "**State Farm**" or "**Defendant**" means Defendant State Farm Fire and Casualty Company and all its employees, contractors, agents, assigns and affiliated companies, including but not limited to all of State Farm's consultants and vendors, and each of their predecessors and successors.

13. The terms "**all**," "**any**," "**each**," and "**every**" shall each be construed as encompassing any and all.

14. The connectives "**and**" and "**or**" are defined and intended to be construed disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The terms "**relating to**," "**reflecting**," "**regarding**," or "**concerning**" include but are not limited to the following meanings: referring to, bearing upon, describing, reflecting, responding to, identifying, constituting, evaluating, embodying, evidencing, evincing, dealing with, pertaining to, having to do with, or being in any way relevant to the given subject. The use of the singular form of any word includes the plural and vice versa.

16. "**Vendor**" refers to a party, entity, and/or individual that offers tools, products, and/or services to State Farm, other companies, consumers, and/or clients.

17. The use of the singular form of any word includes the plural and vice versa, and verb tenses shall always include the past, present, and future tense.

**INSTRUCTIONS**

1.       In response to each request, Defendants are required to produce any and all responsive Documents that are in Defendants' possession, custody, or control. This includes not only the Documents in Defendants' actual possession, but also those in their constructive possession, including in the possession of their agents, employees, servants, representatives, attorneys, consultants, or experts, at any time through the entry of judgment in this matter.

2.       The Documents shall be produced as they are kept in the usual course of business.

3.       The Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the Person in whose possession they were found and the business address of each Document's custodian(s).

4.       Discoverable Information that is stored in a database (i.e., structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business. Upon review of the report(s), Plaintiffs may request from Defendant additional Information to explain any codes, abbreviations, and/or other Information necessary to ensure the report is reasonably usable.

5.       Unless the parties subsequently agree to a different format, provide all Documents and data in native format and with all metadata, or in another format in which the text is searchable and all metadata is retained, with associated *.tiff image files on the Document level; and provide a load file. To the extent applicable, provide data dictionaries that identify relevant Information in any database, including what fields are used, what codes are used, and fields where those codes might appear. Thus, any file that contains abbreviated entries representing other Information will be accompanied by a key or dictionary that translates those abbreviations and entry mechanisms. Except as otherwise provided in these instructions, Documents need not be produced in color

initially. However, Plaintiffs reserve the right to seek in good faith replacement images containing color in *.jpg format where applicable.

6. Where an identified Document is destroyed or alleged to have been destroyed, state the reason for its destruction, identify each Person having any knowledge of its destruction, identify each Person who has or had knowledge of the Document's contents, and identify each Person responsible for its destruction.

7. Where sequential versions of a Document are responsive (e.g., successive manuals), please produce each version with consecutive Bates numbers and with the applicable effective dates indicated in the production log or enclosure letter.

8. If, in response to a particular request, an objection is interposed, and the objection applies to some but not all the Documents requested, produce all responsive Documents and things to which the objection does not apply and identify all Documents withheld from production based on the stated objections. Any and all objections should be interposed by the deadline your initial response is due or the objection will be considered waived.

9. Unless originals are specifically requested, copies may be produced in lieu of originals without prejudice to Plaintiff's right to inspect such originals upon requests.

10. Unless otherwise agreed by the parties or directed by the Court, where a claim of privilege is asserted in objecting to any request set forth below, (a) identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked, and (b) provide the following Information in the objection, unless divulgence of such Information would cause disclosure of the allegedly privileged Information: (i) the type of Document, e.g., letter or Memorandum; (ii) the general subject matter of the Document, including a brief description to sufficiently identify its nature; (iii)

the date of the Document; and (iv) the author of the Document, the addressees of the Document, and any other recipients.

11. Unless otherwise specified, these requests call for the production of Documents from January 1, 2018, through the entry of judgment in this matter.

12. These Documents requests are continuing in nature, and your responses are to be supplemented and/or corrected in the event additional Information is obtained at any time from the date of your initial response, up to and including the entry of judgment in this matter.

## REQUESTS TO PRODUCE

1. All Documents, Communications, and Information concerning each Algorithmic Tool that State Farm uses to sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or is directed to Special Investigation Unit (SIU) or to law enforcement.

2. All Documents, Communications, and Information concerning each Algorithmic Tool that assists State Farm in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

3. All Documents, Communications, and Information concerning each Algorithmic Tool that has any influence on the amount of review, tracking, routing, labeling, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

4.	All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Verisk – including but not limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

5.	All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of Verisk's products or services – including but not limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – to sort, screen, label, route, track, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

6.	All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Verisk – including but not limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – to assist in the identification of claims as "high touch," complex, potentially fraudulent or for direction to the SIU or law enforcement.

7.	All Documents, Communications, and Information concerning any product or service offered by Verisk – including but not limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – that has any influence on the amount

of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

8. All Documents, Communications, and Information concerning State Farm's use of any product or service offered by Duck Creek– including but not limited to claim management, fraud-detection, data enrichment, and rule-driven automation,– to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

9. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Duck Creek– including but not limited to claim management, fraud-detection, data enrichment, and rule-driven automation – to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

10. All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Duck Creek to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

11. All Documents, Communications, and Information concerning any product or service offered by Duck Creek that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

12. All Documents, Communications, and Information concerning State Farm's use of any product or service offered by Salesforce to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

13. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Salesforce to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

14. All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Salesforce to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

15. All Documents, Communications, and Information concerning any product or service offered by Salesforce that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

16. All Documents, Communications, and Information concerning State Farm's use of Crawford & Company's claims adjusting system, including but not limited to its ▮▮▮▮▮▮▮ to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

17. Any Documents, contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of Crawford & Company's claims adjusting system, including but not limited to its ▮▮▮▮▮▮▮ to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

18. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service offered by Crawford & Company's claims adjusting system, including but not limited to its ▮▮▮▮▮▮▮ to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

19. All Documents, Communications, and Information concerning any product or service offered by Crawford & Company's claims adjusting system, including but not limited to its ▮▮▮▮▮▮▮ that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

20. All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Eberl—including but not limited to catastrophe response, daily claims, desk adjusting solutions, training services, managed repair program, and customized solutions—to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

21. Any Documents, contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Eberl to provide claims services including but not limited to – catastrophe response, daily claims, desk adjusting solutions, training services, managed repair program, and customized solutions – to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

22. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service afforded by Eberl to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

23. All Documents, Communications, and Information concerning any product or service offered by Eberl that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

24. All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Renfroe, including but not limited to its ▅▅▅▅▅ ▅▅▅▅▅ to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

25. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Renfroe, including but not limited to its ▅▅▅▅▅▅▅▅▅▅ to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

26. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service offered by Renfroe, including but not limited to its ▅▅▅▅▅▅▅▅ to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

27. All Documents, Communications, and Information concerning any product or service offered by Renfroe, including but not limited to its ▅▅▅▅▅▅▅▅ that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

28. All Documents, Communications, and Information concerning State Farm's use of any product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1, entitled, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment", in any effort to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

29. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1, entitled, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment", to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

30. All Documents, Communications, and Information concerning the influence any product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1, entitled, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment", has on the amount of review, sorting, routing, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

Dated: March 27, 2024

Respectfully submitted,

/s/ David Tracey
David Tracey (*pro hac vice*)
Albert Powell (*pro hac vice*)
Sharon Kim (*pro hac vice*)

SANFORD HEISLER SHARP, LLP
17 State Street, 37th Floor
New York, NY 10004
Tel: 646-402-5667
apowell@sanfordheisler.com
dtracey@sanfordheisler.com
sharonkim@sanfordheisler.com

Alexander Rose (*pro hac vice*)
Jamie Crooks (*pro hac vice*)
Michael Lieberman (*pro hac vice*)
FAIRMARK PARTNERS, LLP
1825 7th St NW, #821
Washington, DC 20001
Tel: 301-458-0564
14
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

Deborah N. Archer (*pro hac vice*)
Jason D. Williamson (*pro hac vice*)
CENTER ON RACE, INEQUALITY, AND THE LAW
AT NEW YORK UNIVERSITY SCHOOL OF LAW
139 MacDougal Street
New York, NY 10012
Tel: 212-998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

Joshua Karsh
Mehri & Skalet PLLC
200 K Street, NW, Suite 325
Washington, DC 20006
Tel: 202-822-5100
jkarsh@findjustice.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2024, Plaintiffs' Third Set of Requests for Production was served on the following counsel of record via electronic mail with Defendant's consent, in accordance with the Federal Rules of Civil Procedure:

>Patricia Brown Holmes
>Joseph A. Cancila, Jr.
>Sondra A. Hemeryck
>Sarah E. Finch
>Lauren Abendshien
>RILEY SAFER HOLMES & CANCILA LLP
>70 W Madison St., Suite 2900
>Chicago, IL 60602
>Tel: 312-471-8700
>pholmes@rshc-law.com
>jcancila@rshc-law.com
>shemeryck@rshc-law.com
>sfinch@rshc-law.com
>labendshien@rshc-law.com

>/s/ Albert Powell
>Albert Powell