# EXHIBIT B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated,

        Plaintiffs,

        v.

STATE FARM FIRE & CASUALTY COMPANY,

        Defendant.

Case No. 22-cv-7014

Hon. Jeffrey I. Cummings

Mag. Judge Jeffrey T. Gilbert

### STATE FARM FIRE AND CASUALTY COMPANY'S
### RESPONSE TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION

Defendant State Farm Fire and Casualty Company ("State Farm"), by and through its counsel and pursuant to Federal Rule of Civil Procedure 34, responds and objects to Plaintiffs' Third Set of Requests for Production (the "Requests") as follows:

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      State Farm objects to Plaintiffs' definition of "Algorithmic Tool" on the grounds that it is vague, ambiguous, overly broad, and not proportional to the needs of the case. For example, according to Merriam-Webster the word "algorithm" means "a step-by-step procedure for solving a problem or accomplishing some end." Thus, Plaintiffs' definition of "Algorithmic Tool" could potentially encompass *any* guideline or process for handling insurance claims (Plaintiffs do not limit their definition to computer-based or automated tools). For the purpose of responding to Plaintiffs' Requests, State Farm construes "Algorithmic Tool" to mean a computer-based tool that uses statistical modeling, machine learning, deep learning, natural language

processing, artificial intelligence, or other data science tools or concepts to predict outcomes or assist with decision-making.

2.  State Farm objects to Plaintiffs' definition of "Answer" on the ground that it is vague and ambiguous because it is not clear whether Plaintiffs intend to limit that term to an "answer" that would qualify as a pleading under Federal Rule of Civil Procedure 7(a), or whether they intend some broader meeting, as suggested by their use of the capitalized term "Answer" in several of their Instructions to refer to responses to Interrogatories. *See, e.g.*, Plaintiffs' Amended First Set of Interrogatories, Instruction Nos. 4, 7, 9, 12 and 13.

3.  State Farm objects to Plaintiffs' definition of "Document" or "Documentation" on the grounds that it is overly broad and disproportionate to the needs of the case. State Farm further objects to the definition to the extent it implies State Farm has an obligation to provide discovery from sources that are not reasonably accessible. State Farm will not search for or produce documents from sources that are not reasonably accessible. Electronically stored information ("ESI") is frequently duplicated and disbursed in the ordinary course of business and discovery regarding all identical copies of ESI would be cumulative and duplicative any benefit to the adjudication of this action. Fed. R. Civ. P. 26(b)(2). State Farm will not search for and produce all identical copies of responsive ESI or documents.

State Farm also objects to the extent this definition seeks discovery regarding ESI that is ephemeral in nature, such as temporary computer files, log/history files, or file fragments, as preservation of, and discovery about, such things is not proportional to the needs of the case. State Farm will not search for or produce such ESI. State Farm objects to Plaintiffs' definition as overly broad, not proportional to the needs of the case, and beyond the scope of permissible discovery to the extent Plaintiffs purport to include system information not created by State Farm's users, such

as caches, cookies, or logs, or otherwise seek to require State Farm to record and/or provide discovery regarding records and information that are not ordinarily captured and/or are overwritten in the ordinary course of operating State Farm's computing systems. Fed. R. Civ. P. 26(b)(1). State Farm will not search for or produce such ESI.

State Farm objects to the inclusion of "cop[ies]" and "drafts" in Plaintiffs' definition of "Document" or "Documentation" on the grounds that copies and drafts are not universally relevant to the claims and defenses of a case and are likely to be cumulative or duplicative. To the extent that a copy or draft is not a business record stored in a central repository in State Farm's ordinary course of business, discovery regarding "cop[ies]" and/or "drafts" would not be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). State Farm will not search for or produce such documents.

Finally, State Farm objects to the definition of "Document" or "Documentation" to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work-product doctrine, or other privileges recognized by law. State Farm will not produce documents or information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, or other applicable privilege. State Farm will provide a log of responsive documents that are withheld on this basis as set forth in Paragraph 11 of these Objections to Definitions and Instructions.

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats. Documents that contain redactions will be produced in static image format.

4.      State Farm restates and incorporates in full by reference its objection to Plaintiffs' definition of "Document" and applies the same to Plaintiffs' definition of "Communication." In

addition, State Farm objects to Plaintiffs' definition of "Communication" to the extent Plaintiffs intend that definition (which is set forth "without limitation") to include instant message, text/SMS messages, or any other type of communication that is not captured and retained by State Farm in the ordinary course of its business, or that is not reasonably accessible to State Farm, on the ground that it would be unduly burdensome to provide such discovery. Fed. R. Civ. P. 26(b)(2). In addition, State Farm objects to the inclusion of "oral" exchanges, "including without limitation, … telephone Communications" or "face-to-face meetings," in Plaintiffs' definition of "Communication" on the ground that Fed. R. Civ. P. 34 does not require State Farm to produce "communications" that do not already exist on a medium from which information can be obtained.

5.     State Farm objects to Plaintiffs' definition of "Information" on the grounds that it is overly broad and disproportionate to the needs of the case. Particular categories of "Information," as defined by Plaintiffs, may or may not be relevant and proportional with respect to specific requests; a blanket definition that purports to require production of, for example, "*any* … information State Farm considers, requests, collects, and/or maintains concerning policyholders of and/or claims arising from or made pursuant to Homeowners Insurance," with respect to any request that includes the term "Information," is overly broad, unduly burdensome, likely to seek discovery that is not relevant to any party's claim or defense, and not proportional to the needs of the case. State Farm further objects to the inclusion in Plaintiffs' definition of "personal information concerning policyholders" on the grounds that "personal information" concerning policyholders other than the named Plaintiffs is not relevant to any party's claim or defense, is not proportional to the needs of the case, and would improperly invade the privacy of persons who are not parties to this action. State Farm also objects to the inclusion in Plaintiffs' definition of "any other information State Farm considers, requests, collects, and/or maintains concerning

policyholders of and/or claims arising from or made pursuant to Homeowners Insurance" for the same reasons. State Farm further objects to Plaintiffs' definition of "Information" on the grounds that the terms "data fields" and "inputs" are vague and ambiguous, and on the grounds that, to the extent State Farm can understand what Plaintiffs may intend by those terms, the definition is overly broad, unduly burdensome, and not proportional to the needs of the case as particular "data fields" or "inputs" may or may not be relevant and proportional with respect to specific requests. State Farm further objects on the ground that information regarding specific "data field and inputs" may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

6.      State Farm objects to Plaintiffs' definition of "relating to," "reflecting," "regarding," or "concerning" to the extent it would require State Farm to construe such terminology beyond its ordinary meaning. State Farm further objects to the extent this definition purports to seek information that bears no relevance to the claims and defenses in this case or that is not proportional to the needs of this litigation. Fed. R. Civ. P. 26(b)(2).

7.      State Farm objects to Plaintiffs' definition of "State Farm" or "Defendant" because as defined, the terms are overbroad and over-inclusive, such that they render any category or request that includes the terms vague, ambiguous, overbroad, and potentially in violation of the attorney-client privilege and/or attorney work product doctrine. In responding to Plaintiffs' Requests, State Farm construes the terms "State Farm" or "Defendant" to mean State Farm Fire and Casualty Company in and of itself as an entity only.

8.      State Farm objects to Plaintiffs' definition of "Vendor" on the grounds that the terms "party," "tools," "products," "services," and "clients" as used therein are vague and

ambiguous, and on the grounds that the definition is overbroad to the extent it includes entities or individuals who provide services to "other companies, consumers, and/or clients."

9.    State Farm restates and incorporates its objection to Plaintiffs' definition of the term "Document" or "Documentation" and applies the same to Plaintiffs' Instruction No. 1. In addition, State Farm objects to Plaintiffs' Instruction No. 1 insofar as it purports to impose obligations that exceed those set forth in Fed. R. Civ. P. 34(a). State Farm is only obligated to produce discoverable "documents" within its own possession, custody, or control. State Farm also objects to Plaintiffs' Instruction No. 1 to the extent that the inclusion of "Documents" within the possession, custody, or control of State Farm's "attorneys" would require the production or disclosure of information protected from discovery by the attorney-client privilege, work product doctrine, or other privileges recognized by law.

10.    State Farm objects to Plaintiffs' definition of "Agreement" or "Memorandum" on the ground that the terms "arrangement," "understanding," and "formal or informal," as used therein, are vague and ambiguous.

11.    State Farm restates and incorporates its objection to Plaintiffs' definition of "Information" and applies to same to Plaintiffs' Instruction No. 4. State Farm further objects to Plaintiffs' Instruction No. 4 to the extent that it purports to require State Farm to provide "additional information" that Plaintiffs request or deem "necessary." In the event Plaintiffs believe they need additional information concerning a produced report, State Farm agrees to meet and confer with Plaintiffs regarding an such requests.

12.    State Farm restates and incorporates its objection to Plaintiffs' definition of "Document" or "Documentation" and applies the same to Plaintiffs' Instruction No. 5. In addition, State Farm objects to Plaintiffs' Instruction No. 5 on the grounds that it is overly broad and

disproportionate to the needs of the case. State Farm further objects to Plaintiffs' Instruction No. 5 to the extent it purports to require production of ESI in "native format" because it exceeds the parameters of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production of ESI in "native format" would be disproportionate to the needs of this case considering the value of the case and the importance of the discovery at issue and would be unduly burdensome to the extent such format is not reasonably accessible to State Farm in the ordinary course of its business. Fed. R. Civ. P. 26(b)(2). In addition, State Farm frequently creates ESI in one format and, in the ordinary course of its business, stores it in another format in its system of record. State Farm further objects that it does not need to produce ESI in more than one form, and that the production of "documents" in "native format" would be cumulative and duplicative of the alternative reasonably usable formats proffered. Fed. R. Civ. P. 34(b)(2)(E)(iii); 26(b)(2).

State Farm objects to the inclusion of "data" and "metadata" in Plaintiffs' Instruction No. 5 on the grounds that such terminology is overly broad, vague, and ambiguous as to what specific information the instruction seeks. In addition, to the extent Plaintiffs' Instruction No. 5 purports to require the production of metadata, State Farm objects that metadata is not relevant to the specific claims and defenses of any party, nor would production of metadata be proportional to the needs of this case, and therefore the inclusion of metadata within Plaintiffs' Instruction No. 5 would be beyond the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). In particular, the information pertinent to the claims and defenses in this case can be found in the text of discoverable documents and is not generally found in metadata. State Farm objects to the instruction regarding production of metadata because such information is not necessary to assure the fair and efficient adjudication of the claims and defenses in this matter. State Farm invites Plaintiffs to meet-and-confer regarding

specific metadata fields that the parties may agree to include where ESI is produced with a load file.

State Farm objects to the inclusion of "database" in Plaintiffs' Instruction No. 5 to the extent that Plaintiffs purport to seek information regarding State Farm technical systems and processes that are not necessary in the prosecution or defense of this action. State Farm also objects on the grounds that "database[s]" may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case. State Farm further objects to the inclusion of "key," "dictionary" and "data dictionaries" in Plaintiffs' Instruction No. 5 to the extent the instruction purports to seek information regarding technical systems and processes that are not relevant to the claims and defenses in this matter. State Farm further objects that production of "key[s]," and "dictionar[ies]" would require production of vast amounts of irrelevant information regarding other claims, would likely result in improper alteration of relevant data, and would require production of privileged information that could not be redacted. In addition, State Farm objects that the resources that would be required to produce "key[s]," and "dictionar[ies]" are significant and would not be proportional under Fed. R. Civ. P. 26(b)(1) and 34. State Farm also objects on the grounds that "key[s]," and "dictionar[ies]" may be proprietary to State Farm's business operations and/or may be confidential and trade secret information that need not be disclosed in order to obtain the fair adjudication of this case.

State Farm objects to the inclusion in Plaintiffs' Instruction No. 5 of ".tiff image files," "load file," "in color," and ".jpg" to the extent it purports to seek production of ESI in particular formats. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii), State Farm may produce discoverable ESI in reasonably usable formats. Production in Plaintiffs' specified formats would be disproportionate

to the needs of this case considering the value of the case and the importance of the discovery at issue.  In particular, the information pertinent to the claims and defenses in this case can be found in the text or on the face of discoverable "documents" and Plaintiffs' specified formats are not necessary to assure the production of relevant information for the fair and efficient adjudication of the claims and defenses in this litigation. In addition, in the ordinary course of its business State Farm frequently creates ESI in one format and stores it in its system of record in another format and as such it would be unduly burdensome to produce Plaintiffs' specified formats to the extent they are not reasonably accessible to State Farm.  Fed. R. Civ. P. 26(b)(2). State Farm further objects that it does not need to produce ESI in more than one form, and that the relevant information in Plaintiff's specified formats would be cumulative and duplicative of the alternate reasonably usable formats proffered.  Fed. R. Civ. P. 34(b)(2)(E)(iii).

To the extent any responsive documents or ESI are produced, State Farm will produce reasonably accessible, relevant, non-privileged information in reasonably usable formats, including in "native" format where that is necessary for the ESI to be reasonably usable (for example, Excel spreadsheets).  Documents that contain redactions will be produced in static image format.

Finally, State Farm objects to Plaintiffs' Instruction No. 5 to the extent it would require the disclosure of information protected from discovery by the attorney-client privilege, work product doctrine, or other privileges recognized by law.

13.    State Farm restates and incorporates its objection to Plaintiffs' definition of "Document" or "Documentation" and applies the same to Plaintiffs' Instruction No. 6 regarding documents that were "lost or destroyed." In addition, State Farm objects to Plaintiffs' Instruction No. 6 insofar as it requires State Farm to provide information regarding "Documents" that have

been "lost or destroyed" on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and purports to impose obligations greater than those set forth in Fed. R. Civ. P. 26(b)(1) and 34. State Farm objects to this Instruction and to the discovery propounded by Plaintiffs to the extent it purports to call for forensic investigation into computing devices or systems to determine or locate information indicating or evidencing ESI that was deleted or that is no longer accessible as active data on that device or system as not reasonably tailored to elicit discovery relevant to the claims and defenses of any party, unduly burdensome, and beyond the scope of permissible discovery. State Farm further objects that ESI and/or documents that were deleted or no longer exist are not reasonably accessible and discovery about the same would require extraordinary efforts that are not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2). Furthermore, State Farm objects on the grounds that Plaintiffs' Instruction No. 6 is not limited in time or scope and State Farm had no duty to preserve relevant information prior to the time this litigation was reasonably anticipated.

14.     State Farm objects to Plaintiffs' Instruction No. 7 insofar as it directs State Farm to undertake efforts that exceed the requirements of the Federal Rules of Civil Procedure. State Farm further objects to Plaintiffs' Instruction No. 7 on the grounds that compliance with that Instruction would be unduly burdensome and require efforts that are not proportional to the needs of the case.

15.     State Farm objects to Plaintiffs' Instruction No. 8 insofar as it directs State Farm to undertake efforts that exceed the requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34 (Advisory Committee Notes – 2015 Amendment). State Farm further objects to Plaintiffs' Instruction No. 8 on the grounds that compliance with that Instruction would be unduly burdensome and require efforts that are not proportional to the needs of the case.

16.     State Farm objects to Plaintiffs' Instruction No. 9 insofar as it directs State Farm to undertake efforts that exceed the requirements of the Federal Rules of Civil Procedure. State Farm also objects to Plaintiff's Instruction No. 9 to the extent it implies there is an obligation to produce "copies" in particular formats. State Farm will produce reasonably accessible, relevant, non-privileged documents and ESI, including photographs, in reasonably usable formats. Documents that contain redactions will be produced in static image format. Finally, State Farm objects to the extent this Instruction purports to seek direct access to State Farm's electronic storage media. There is no "routine right of direct access to a party's electronic information system[s]" and there has been no showing in this case sufficient to overcome this presumption. Fed. R. Civ. P. 34 (Advisory Committee Notes – 2006 Amendment).

17.     State Farm objects to Plaintiffs' Instruction No. 10 insofar as it directs State Farm to undertake efforts that exceed the requirements of Fed. R. Civ. P. 26(b)(5). State Farm will withhold privileged and/or protected material or information in accordance with applicable law, and will provide a privilege log identifying any such documents that pre-date the filing of Plaintiffs' original complaint herein on December 14, 2022. State Farm objects to any purported requirement that it log privileged or work-product documents created on or after December 14, 2022 on the ground that any such requirement would be unduly burdensome and not proportional to the needs of the case.

18.     None of the objections or responses contained herein is an admission concerning the existence of any documents or materials, the relevance or admissibility of any documents, materials or information, or the truth or accuracy of any statement or characterization contained in Plaintiffs' Requests. State Farm's answers and responses do not waive, and instead expressly reserve, the right to object on proper grounds to the use at trial of any produced materials, the right

to object to other discovery requests, and the right at any time to revise, correct, add or clarify any of the responses provided herein. State Farm's investigation is ongoing.

## OBJECTIONS AND RESPONSES TO REQUESTS

1. All Documents, Communications, and Information concerning each Algorithmic Tool that State Farm uses to sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimants; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or is directed to Special Investigation Unit (SIU) or to law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that Request No. 1 is vague, ambiguous, overly broad and unduly burdensome because it incorporates Plaintiffs' vague, ambiguous, overly broad and unduly burdensome definition of "Algorithmic Tools." State Farm also objects that the terms "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrases "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims" and "directed to Special Investigation Unit (SIU) or to law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to Homeowners Insurance structural damage claims or information pertinent to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially

12

fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added).

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" such tools (as well as any other tools within the scope of Plaintiffs' vague, ambiguous, and overly broad request), which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79

(emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendors who may own tools used by State Farm that are within the scope of this Request. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

<span style="color:red">THE FOLLOWING PART OF THIS RESPONSE IS CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</span>



2.  All Documents, Communications, and Information concerning each Algorithmic Tool that assists State Farm in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that Request No. 2 is vague, ambiguous, overly broad and unduly burdensome because it incorporates Plaintiffs' vague, ambiguous, overly broad and unduly burdensome definition of "Algorithmic Tools." State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this

litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added).

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning"

such tools (as well as any other tools within the scope of Plaintiffs' vague, ambiguous, and overly broad request), which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendors who may own tools used by State Farm that are within the scope of this Request. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

<p style="text-align:center; color:red">THE FOLLOWING PART OF THIS RESPONSE IS<br>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</p>

3. All Documents, Communications, and Information concerning each Algorithmic Tool that has any influence on the amount of review, tracking, routing, labeling, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that Request No. 3 is vague, ambiguous, overly broad and unduly burdensome because it incorporates Plaintiffs' vague, ambiguous, overly broad

and unduly burdensome definition of "Algorithmic Tools." State Farm further objects that the terms "any influence" and "the amount of review, tracking, routing, labeling, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that the reference in this Request to "the amount of … tracking, routing, [and/or] labeling" is nonsensical. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added).

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" such tools (as well as any other tools within the scope of Plaintiffs' vague, ambiguous, and overly broad request), which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendors who may own tools used by State Farm that are within the scope of this Request. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports

to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

THE FOLLOWING PART OF THIS RESPONSE IS
CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

4.   All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Verisk – including but not limited to ███████████ ███████████████████████████████████████████████████████████ – to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial*

22

*assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's use of "any product or service provided by Verisk" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" State Farm's use of "any product or service provided by Verisk" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications

23

and documents about their use…. The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Verisk. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

<div align="center" style="color:red">THE FOLLOWING PART OF THIS RESPONSE IS<br>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</div>



5. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of Verisk's products or services – including but not limited to ███████████ ████████ – to sort, screen, label, route, track, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that that the terms "understandings" and "sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time),

and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's "use of Verisk's products or services" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools

26

(if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All contracts, Agreements, understandings, and/or Memoranda concerning" its use of any Verisk "products or services" that are within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Verisk. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request.

THE FOLLOWING PART OF THIS RESPONSE IS
CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER



6.  All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Verisk – including but not limited to ███████ ███ ████ ██████ ████████ – to assist in the identification of claims as "high touch," complex, potentially fraudulent or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "identification of claims … for direction to the SIU or law enforcement" is vague and ambiguous. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue

in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's operation, management, and/or use of any product or service offered by Verisk" to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex

claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Verisk" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Verisk. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues

involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

<p align="center" style="color:red">THE FOLLOWING PART OF THIS RESPONSE IS<br>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</p>

7.  All Documents, Communications, and Information concerning any product or service offered by Verisk – including but not limited to ███████████████ ██████████████████████████████ – that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "any influence" and "the amount of review, Documentation, investigation and/or evaluation" are vague and ambiguous, and render

the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "any product or service offered by Verisk … that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" "any product or service offered by Verisk" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.…  The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Verisk. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this

Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

<div align="center" style="color:red">THE FOLLOWING PART OF THIS RESPONSE IS<br>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</div>

8. All Documents, Communications, and Information concerning State Farm's use of any product or service offered by Duck Creek– including but not limited to claim management, fraud-detection, data enrichment, and rule-driven automation,– to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance

policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "claim management, fraud-detection, data enrichment, and rule-driven automation" and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-

22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's use of "any product or service offered by Duck Creek" (which State Farm assumes is intended to refer to Duck Creek Technologies) to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" State Farm's use of "any product or service offered by Duck Creek" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep

dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Duck Creek Technologies. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, State Farm will produce documents sufficient to generally describe its use since January 1, 2018 of ███████████████ in the routing of Homeowners Insurance structural damage claims. In addition, State Farm already

has agreed to produce in response to Request No. 17 of Plaintiffs' First Set of Requests for Production copies of any agreements between State Farm and Duck Creek Technologies that were in effect at any time between January 1, 2018 and the present. State Farm has not used any Duck Creek Technologies products other than ███████████████████ in its handling of Homeowners Insurance claims during the period from January 1, 2018 to the present. State Farm does not intend its production of documents relating to ███████████████ to constitute an admission or representation that the tool qualifies as a "algorithmic tool" or that the tool is or has been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

9. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Duck Creek– including but not limited to claim management, fraud-detection, data enrichment, and rule-driven automation – to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "understandings," "claim management, fraud-detection, data enrichment, and rule-driven automation," and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time),

and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's "use of any product or service provided by Duck Creek" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools

(if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All contracts, Agreements, understandings, and/or Memoranda concerning" its use of any Duck Creek "product or service" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Duck Creek Technologies. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request.

Subject to and without waiving these objections, State Farm already has agreed to produce in response to Request No. 17 of Plaintiffs' First Set of Requests for Production copies of any agreements between State Farm and Duck Creek Technologies that were in effect at any time between January 1, 2018 and the present. State Farm does not intend its production of such agreements to constitute an admission or representation that ███████████████████ qualifies as a "algorithmic tool" or that the tool is or has been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

10. All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Duck Creek to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "identification of claims … for direction to the SIU or law enforcement" is vague and ambiguous. State Farm further objects that the Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March

5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's operation, management, and/or use of any product or service offered by Duck Creek" to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning"

"State Farm's operation, management, and/or use of any product or service offered by Duck Creek" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate confidentiality rights of third-party vendor Duck Creek. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, State Farm will produce documents sufficient to generally describe its use since January 1, 2018 of ████████████████████ in the routing of Homeowners Insurance structural damage claims. In addition, State Farm already has agreed to produce in response to Request No. 17 of Plaintiffs' First Set of Requests for Production copies of any agreements between State Farm and Duck Creek Technologies that were in effect at any time between January 1, 2018 and the present. State Farm has not used Duck Creek Technologies products other than ████████████████ in the handling of Homeowners Insurance claims during the period from January 1, 2018 to the present. State Farm does not intend its production of documents relating to ████████████████ to constitute an admission or representation that the tool qualifies as a "algorithmic tool" or that the tool is or has been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

11. All Documents, Communications, and Information concerning any product or service offered by Duck Creek that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "any influence" and "the amount of review, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation),

time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates ... the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "any product or service offered by Duck Creek ... that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex

claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" "any product or service offered by Duck Creek" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Duck Creek. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues

involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving these objections, State Farm will produce documents sufficient to generally describe its use since January 1, 2018 of ████████████████████ in the routing of Homeowners Insurance structural damage claims. In addition, State Farm already has agreed to produce in response to Request No. 17 of Plaintiffs' First Set of Requests for Production copies of any agreements between State Farm and Duck Creek Technologies that were in effect at any time between January 1, 2018 and the present. State Farm has not used Duck Creek Technologies products other than ████████████████ in the handling of Homeowners Insurance claims during the period from January 1, 2018 to the present. State Farm does not intend its production of documents relating to ████████████████ to constitute an admission or representation that the tool qualifies as a "algorithmic tool" or that the tool is or has been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

12. All Documents, Communications, and Information concerning State Farm's use of any product or service offered by Salesforce to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "identify, sort, screen, label, route,

track, estimate, or categorize" as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law enforcement," are vague and ambiguous, and render the Request overly broad. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's use of "any product or service

offered by Salesforce" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" State Farm's use of "any product or service offered by Salesforce" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use…. The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the

confidentiality rights of third-party vendor Salesforce. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

THE FOLLOWING PART OF THIS RESPONSE IS
CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████

13. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Salesforce to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that that the terms "understandings" and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," are vague and ambiguous and render the Request overly broad. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First

51

Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's "use of any product or service provided by Salesforce" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All contracts, Agreements, understandings, and/or Memoranda concerning" its use of any Salesforce "product or service" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims,

*before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Salesforce. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request.

Subject to and without waiving these objections, State Farm has produced or will produce in response to Request No. 16 of Plaintiffs' First Set of Requests for Production copies of agreements between State Farm and Salesforce that were in effect at any time between January 1, 2018 and the present. State Farm does not intend its production of those documents to constitute an admission or representation that State Farm has used any product or service provided by

Salesforce "to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims," to assist in the routing of Homeowners Insurance structural damage claims or the identification of potentially fraudulent Homeowners Insurance structural damage claims, or "to sort potentially fraudulent/complex claims from straightforward claims." Other than the agreements it agreed to produce in response to Request No. 16 of Plaintiffs' First Set of Requests for Production, State Farm will not search for or produce documents potentially responsive to this Request as written.

14. All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Salesforce to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "identification of claims … for direction to the SIU or law enforcement" is vague and ambiguous. State Farm further objects that Request No. 14 is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be

the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's operation, management, and/or use of any product or service offered by Salesforce" to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" "State Farm's operation, management, and/or use of any product or service offered by Salesforce" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex

claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Salesforce. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

<p style="text-align:center; color:red">THE FOLLOWING PART OF THIS RESPONSE IS<br>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</p>

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████

15. All Documents, Communications, and Information concerning any product or service offered by Salesforce that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "any influence" and "the amount of review, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation),

time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "any product or service offered by Salesforce … that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex

claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" "any product or service offered by Salesforce" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Salesforce. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues

involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or

defense nor proportional to the needs of the case.

<div align="center" style="color:red">THE FOLLOWING PART OF THIS RESPONSE IS<br>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</div>

16. All Documents, Communications, and Information concerning State Farm's use of Crawford & Company's claims adjusting system, including but not limited to its ▉▉▉▉▉▉, to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "claims adjusting system" and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. (State Farm assumes in responding to this Request that ████████ is intended to refer to the ████████████ that is described on Crawford & Company's website.) State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates ... the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of

machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's use of Crawford & Company's claims adjusting system" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's use of Crawford & Company's claims adjusting system," which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the

phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Crawford. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Crawford & Company (including ████████) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Crawford & Company that are within the scope of Phase I discovery.

State Farm will not search for or produce documents potentially responsive to this Request as written.

17. Any Documents, contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of Crawford & Company's claims adjusting system, including but not limited to its ████████, to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that that the terms "understandings," "claims adjusting system," and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," are vague and ambiguous and render the Request overly broad and unduly burdensome. (State Farm assumes in responding to this Request that ████████ is intended to refer to the ████████ that is described on Crawford & Company's website.) State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be

the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's use of Crawford & Company's claims adjusting system" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of Crawford & Company's claims adjusting system," which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex

65

claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Crawford & Company. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request.

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Crawford & Company (including ▮▮▮▮▮) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or

"to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore

has no documents relating to Crawford & Company that are within the scope of Phase I discovery.

State Farm will not search for or produce documents potentially responsive to this Request as

written.

18.     All Documents, Communications, and Information concerning State Farm's operation,
        management, and use of any product or service offered by Crawford & Company's
        claims adjusting system, including but not limited to its ██████████ to assist in the
        identification of claims as "high touch," complex, potentially fraudulent, or for
        direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are

expressly incorporated herein, State Farm objects that the term "claims adjusting system," as used

in this Request, the reference in the Request to "any product or service offered by Crawford &

Company's claims adjusting system," and the phrase "identification of claims … for direction to

the SIU or law enforcement," are vague and ambiguous, and render the Request overly broad and

unduly burdensome. (State Farm assumes in responding to this Request that ████████ is intended

to refer to the ████████ product that is described on Crawford & Company's website.) State Farm

further objects that the Request is overly broad in scope (because it is not limited to information

pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or

coverages at issue in this litigation), time (because it is not limited to a reasonable period of time),

and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and

Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds

the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March

5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic

decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially

fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's operation, management, and use of any product or service offered by Crawford & Company's claims adjusting system" to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service offered by Crawford & Company's claims adjusting system," which contravenes the Court's Order that the "preliminary

focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Crawford & Company. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Crawford & Company (including ███) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Crawford & Company that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

19. All Documents, Communications, and Information concerning any product or service offered by Crawford & Company's claims adjusting system, including but not limited to its ███, that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the term "claims adjusting system," as used in this Request, the reference in the Request to "any product or service offered by Crawford & Company's claims adjusting system," the term "any influence," and the phrase "the amount of review, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. (State Farm assumes in responding to this Request that ███ is intended to refer to the ███ that is described on Crawford & Company's website.) State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "any product or service offered by Crawford & Company's claims adjusting system … that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the

current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning any product or service offered by Crawford & Company's claims adjusting system" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Crawford & Company. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues

involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Crawford & Company (including ██████) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Crawford & Company that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

20. All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Eberl—including but not limited to catastrophe response, daily claims, desk adjusting solutions, training services, managed repair program, and customized solutions—to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "catastrophe response, daily claims, desk adjusting solutions, training services, managed repair program, and customized solutions" and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law

enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's use of "any product or service provided by Eberl" (which State Farm assumes in responding to this Request is intended to refer to Eberl Claims Service) to "identify, sort, screen, label, route, track, estimate, or categorize

Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning" State Farm's use of "any product or service provided by Eberl" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Eberl. Plaintiffs have not established that such

information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Eberl to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Eberl that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

21. Any Documents, contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Eberl to provide claims services including but not limited to – catastrophe response, daily claims, desk adjusting solutions, training services, managed repair program, and customized solutions – to identify, sort, screen, label, route, track, estimate, or categorize

Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that that the terms "understandings," "catastrophe response, daily claims, desk adjusting solutions, training services, managed repair program, and customized solutions," and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," are vague and ambiguous and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of

machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's "use of any product or service provided by Eberl to provide claims services" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "Any Documents, contracts, Agreements, understandings, and/or Memoranda concerning" its use of any "product or service provided by Eberl to provide claims services" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.…  The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the

Court's Orders on the phasing of discovery, Plaintiffs' request for "*Any* Documents" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Eberl. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request.

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Eberl to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Eberl that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

22. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service afforded by Eberl to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "identification of claims … for direction to the SIU or law enforcement" is vague and ambiguous. State Farm further objects that the Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of*

*claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's operation, management, and/or use of any product or service afforded [sic] by Eberl" to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service afforded [sic] by Eberl" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents,

Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Eberl. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Eberl to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Eberl that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

23.  All Documents, Communications, and Information concerning any product or service offered by Eberl that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "any influence" and "the amount of review, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic

decision-making tools at all, but instead seeks broad discovery regarding "any product or service offered by Eberl … that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning any product or service offered by Eberl" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.…  The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the

confidentiality rights of third-party vendor Eberl. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Eberl to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Eberl that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

24. All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Renfroe, including but not limited to its ▮▮▮▮▮▮▮▮, to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. (State Farm assumes in responding to this Request that ▮▮▮▮▮▮ is intended to refer to the product of that name that is described in Renfroe's website.) State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of

machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's use of "any product or service provided by Renfroe" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's use of any product or service provided by Renfroe" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery,

Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Renfroe. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Renfroe (including ▮▮▮▮▮▮) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no

documents relating to Renfroe that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

25. All contracts, Agreements, understandings, and/or Memoranda concerning State Farm's use of any product or service provided by Renfroe, including but not limited to its ███████████, to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that that the terms "understandings" and "identify, sort, screen, label, route, track, estimate, or categorize," as used in this Request, and the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," are vague and ambiguous and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making

tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding State Farm's "use of any product or service provided by Renfroe" to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All contracts, Agreements, understandings, and/or Memoranda concerning" its use of any "product or service provided by Renfroe" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use…. The parties should *identify* the tools first … *before* the deep

dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Renfroe. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request.

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Renfroe (including ▮▮▮▮▮▮▮) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Renfroe that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

26. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service offered by Renfroe, including but not limited to its ███████████████, to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "identification of claims … for direction to the SIU or law enforcement" is vague and ambiguous. State Farm further objects that the Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of*

*claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "State Farm's operation, management, and/or use of any product or service offered by Renfroe" to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's operation, management, and/or use of any product or service offered by Renfroe" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Renfroe. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Renfroe (including ███████████) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Renfroe that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

27. All Documents, Communications, and Information concerning any product or service offered by Renfroe, including but not limited to its ██████████████, that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the terms "any influence" and "the amount of review, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or to the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request is not limited to algorithmic decision-making tools at all, but instead seeks broad discovery regarding "any product or service

offered by Renfroe … that has any influence on the amount of review, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning any product or service offered by Renfroe" that is within the scope of Plaintiffs' vague, ambiguous and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.…  The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it seeks confidential, proprietary business and/or trade secret information of State Farm, and would violate the confidentiality rights of third-party vendor Renfroe. Plaintiffs have not established that such

information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving these objections, during the period since January 1, 2018, State Farm has not used any computer-based, automated, and/or rules-based tools provided by Renfroe (including ███████████) to assist in the routing of Homeowners Insurance claims, to assist in the identification of potentially fraudulent Homeowners Insurance claims, or "to sort potentially fraudulent/complex claims from straightforward claims." State Farm therefore has no documents relating to Renfroe that are within the scope of Phase I discovery. State Farm will not search for or produce documents potentially responsive to this Request as written.

28. All Documents, Communications, and Information concerning State Farm's use of any product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1, entitled, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment", in any effort to identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or directed to Special Investigation Unit (SIU) or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "product or service mentioned in

the November 10, 2020, patent application, ID# US 10832347 B1," the terms "identify, sort, screen, label, route, track, estimate, or categorize" as used in this Request, the phrase "in *any manner* that affects or influences how State Farm *processes* Homeowners Insurance claims," and the phrase "directed to Special Investigation Unit (SIU) or law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request does not appear to be limited to algorithmic

decision-making tools at all, but instead seeks broad discovery concerning "State Farm's use of any product or service mentioned in" the referenced patent application to "identify, sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's use of any product or service" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.…  The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it potentially seeks confidential, proprietary business and/or trade secret information of State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm "categorize[s] Homeowners insurance policyholders" in the manner set forth in the Request, and/or on the false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, to the extent the patent identified in this Request references computer-based, automated, and/or rules-based tools that State Farm has used during the period since January 1, 2018 in the six states that are encompassed by Plaintiffs' proposed class (Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin) to assist in the routing of Homeowners Insurance structural damage claims, State Farm will produce documents sufficient to identify and generally describe such tools. State Farm does not intend its production of documents identifying or describing a particular tool in response to this Request to constitute an admission or representation that the tool qualifies as a "algorithmic tool" or that the tool is or has

been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

29. All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1, entitled, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment", to assist in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1" and the phrase "for direction to the SIU or law enforcement," are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial*

*assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims.*") (emphasis added). Indeed, this Request does not appear to be limited to algorithmic decision-making tools at all, but instead seeks broad discovery concerning "State Farm's operation, management and use of any product or service mentioned in" the referenced patent application to "assist in the identification of claims as 'high touch,' complex, potentially fraudulent, or for direction to the SIU or law enforcement."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning State Farm's operation, management, and use of any product or service" that is within the scope of Plaintiffs' vague, ambiguous, and overly broad Request, which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around

communications and documents about their use.… The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it potentially seeks confidential, proprietary business and/or trade secret information of State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery—which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

State Farm further objects to this Request to the extent it is erroneously based on a false assumption that State Farm categorizes or identifies claims as "high touch."

Subject to and without waiving these objections, to the extent the patent identified in this Request references computer-based, automated, and/or rules-based tools that State Farm has used during the period since January 1, 2018 in the six states that are encompassed by Plaintiffs' proposed class (Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin) to assist in the routing

of Homeowners Insurance structural damage claims, State Farm will produce documents sufficient to identify and generally describe such tools. State Farm does not intend its production of documents identifying or describing a particular tool in response to this Request to constitute an admission or representation that the tool qualifies as a "algorithmic tool" or that the tool is or has been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

30. All Documents, Communications, and Information concerning the influence any product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1, entitled, "Methods And Systems For Smart Claim Routing And Smart Claim Assignment", has on the amount of review, sorting, routing, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

**RESPONSE:** In addition to its Objections to Definitions and Instructions, which are expressly incorporated herein, State Farm objects that the phrase "product or service mentioned in the November 10, 2020, patent application, ID# US 10832347 B1," the term "the influence," and the phrase "the amount of review, tracking, routing, labeling, Documentation, investigation and/or evaluation" are vague and ambiguous, and render the Request overly broad and unduly burdensome. State Farm further objects that this Request is overly broad in scope (because it is not limited to information pertinent to Homeowners Insurance structural damage claims or the insurance claims and/or coverages at issue in this litigation), time (because it is not limited to a reasonable period of time), and geographic area (because it is not limited to Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin).

State Farm further objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024. Specifically, State Farm objects to this Request because it is not limited to algorithmic

decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81; *see also* First Am. Class Action Compl. ("FAC," Dkt. 23) ¶ 32 (alleging that State Farm "delegates … the *initial assessment* of the homeowners insurance claims it receives" to "algorithmic decision-making tools") (emphasis added) and ¶¶ 40, 48-49 (similar); Tr. of Feb. 22, 2024 Status Hearing at 10:18-22 (Plaintiffs' counsel explaining that "[t]he specific policies" alleged by Plaintiffs are State Farm's purported policy of "[d]elegating *the initial sort of sorting of claims*" to "some sort of machine process") (emphasis added) and 11:6-8 ("[O]ur allegation is that there's a policy (inaudible) indicating some sort of automatic, automated process, *the initial sort of sorting of claims*.") (emphasis added). Indeed, this Request does not appear to be limited to algorithmic decision-making tools at all, but instead seeks broad discovery concerning "the influence any product or service mentioned in" the referenced patent application "has on the amount of review, sorting, routing, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim."

In addition, State Farm objects to this Request on the ground that the discovery sought exceeds the scope of the discovery currently permitted by the Court's Orders of February 23, 2024 and March 5, 2024 because it is not limited to the *identification* of algorithmic decision-making tools (if any) that are used by State Farm at the outset of a claim to sort potentially fraudulent/complex claims from straightforward claims, which is what State Farm understands to be the scope of the current, "preliminary focus" of Phase I discovery. Dkts. 79 and 81. Instead, this Request purports to require State Farm to produce "All Documents, Communications, and Information concerning the influence any product or service mentioned in" the referenced patent application "has on the

amount of review, sorting, routing, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim," which contravenes the Court's Order that the "preliminary focus" stage of Phase I discovery "should start with a focus on what algorithmic tools are used at the outset to sort potentially fraudulent/complex claims from straightforward claims, *before* the parties start exploring such voluminous ESI discovery around communications and documents about their use.…  The parties should *identify* the tools first … *before* the deep dive into the tools." Dkt. 79 (emphasis added). The discovery sought by this Request is therefore premature, overly broad, unduly burdensome and not proportional to the needs of the case. State Farm further objects that, even without considering the Court's Orders on the phasing of discovery, Plaintiffs' request for "All Documents, Communications, and Information" is facially overbroad and not proportional to the needs of the case.

State Farm further objects to this Request on the ground that it potentially seeks confidential, proprietary business and/or trade secret information of State Farm. Plaintiffs have not established that such information is necessary to a fair adjudication of this case. State Farm further objects to this Request on the ground that it purports to require the production of documents that are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

State Farm further objects that because this Request exceeds the scope of Phase I discovery— which the Court based on what it identified as "the gravamen of Plaintiffs' Amended Complaint," Dkt. 79—the Request is not reasonably tailored to include only matters relevant to the issues involved in this lawsuit; instead, it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Subject to and without waiving these objections, to the extent the patent identified in this Request references computer-based, automated, and/or rules-based tools that State Farm has used during the period since January 1, 2018 in the six states that are encompassed by Plaintiffs' proposed class (Illinois, Indiana, Michigan, Missouri, Ohio and Wisconsin) to assist in the routing of Homeowners Insurance structural damage claims, State Farm will produce documents sufficient to identify and generally describe such tools. State Farm does not intend its production of documents identifying or describing a particular tool in response to this Request to constitute an admission or representation that the tool qualifies as a "algorithmic tool" or that the tool is or has been used by State Farm "to sort potentially fraudulent/complex claims from straightforward claims." State Farm will not search for or produce other documents potentially responsive to this Request as written.

Dated: April 26, 2024

Respectfully submitted,

/s/      Sondra A. Hemeryck

Patricia Brown Holmes
Joseph A. Cancila, Jr.
Sondra A. Hemeryck
Sarah E. Finch
Lauren Abendshien
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone:      312.471.8700
Facsimile:       312.471.8701
pholmes@rshc-law.com
jcancila@rshc-law.com
shemeryck@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

I, undersigned counsel, certify that on April 26, 2024 I served a copy of the foregoing document via e-mail to the following:

/s/ *Sarah E. Finch*

David Tracey
Albert Powell
SANFORD HEISLER SHARP, LLP
17 State Street, 37th Floor
New York, NY 10004
Tel: 646-402-5667
apowell@sanfordheisler.com
dtracey@sanfordheisler.com

Alexander Rose
Jamie Crooks
Michael Lieberman
FAIRMARK PARTNERS, LLP
1825 7th St NW, #821
Washington, DC 20001
Tel: 301-458-0564
alexander@fairmarklaw.com
jamie@fairmarklaw.com
michael@fairmarklaw.com

Deborah N. Archer
Jason D. Williamson
CENTER ON RACE, INEQUALITY, AND THE LAW
AT NEW YORK UNIVERSITY SCHOOL OF LAW
139 MacDougal Street
New York, NY 10012
Tel: 212-998-6882
deborah.archer@nyu.edu
jason.williamson@nyu.edu

Joshua Karsh
Mehri & Skalet PLLC
200 K Street, NW, Suite 325
Washington, DC 20006
Tel: 202-822-5100
jkarsh@findjustice.com