# EXHIBIT C



**Sanford Heisler Sharp, LLP**
17 State Street, Suite 3700
New York, NY 10004
Telephone: (646) 402-5650
Fax: (646) 402-5651
www.sanfordheisler.com

*David Tracey*, Partner
(646) 402-5667
dtracey@sanfordheisler.com

New York | Washington D.C. | San Francisco| San Diego | Nashville | Baltimore

May 17, 2024

**VIA EMAIL**
Sondra A. Hemeryck
shemeryck@rshc-law.com

  Re: *Jacqueline Huskey and Riian Wynn et al v. State Farm Fire and Casualty Company*, **Case No. 22-cv-07014 (N.D. Ill.) – Discovery Deficiency Letter**

Counsel:

  We write concerning deficiencies in responses provided by State Farm Fire and Casualty Company ("State Farm" or "Defendant") to our Third Set of Requests for Production ("Third Set of RFPs") and Amended First Set of Interrogatories served by Jacqueline Huskey and Riian Wynn (collectively, "Plaintiffs"). This letter is not an exhaustive list of all the deficiencies in Defendant's responses to any of Plaintiffs' requests ("Requests") or amended interrogatories ("Amended Interrogatories"). It focuses on certain of State Farm's written responses in an attempt to streamline certain discovery disputes and attain resolutions without the need for court intervention. State Farm did not produce documents responsive to Plaintiffs' Third Set of RFPs until May 16, 2024. Accordingly, Plaintiffs reserve the right to raise additional deficiencies with State Farm's responses and productions, including with respect to the Requests at issue herein, in the future as warranted.

  We propose that parties meet and confer to resolve the discovery issues laid out below. Please let us know if you are available any day during the week of May 20, 2024.

  **A.** **State Farm Improperly Limits Its Responses to Algorthmic Tools Used at the "Outset of a Claim."**

  State Farm generally objects to Plaintiffs' Requests and Amended Interrogatories because they are "not limited to algorithmic decision-making tools (if any) that are used by State Farm at the *outset of a claim*." In so objecting, State Farm mischaracterized the "preliminary focus" of Phase I discovery (Dkt. 79) and the focus of this action.

  To start, Judge Harjani never limited the "preliminary focus" of Phase I to the "outset of claims." To the contrary, he broadly set a March 27, 2024 date for: "Written discovery focused on the algorithmic decision−making tools employed by State Farm to screen out potentially fraudulent or complex claims from straightforward claims [hereafter, 'Algorithmic Sorting Tools']." Dkt. 81; *see also* Dkt. 79 (defining Phase I). Indeed, Plaintiffs' allegations are not limited to the initial assessment of homeowners' insurance claims: they cover all steps—initial and thereafter—of the

May 17, 2024
Page 2

claims processes. *See, e.g.*, Dkt. 23 at ¶ 4 ("This discrimination is the result of a specific policy: State Farm's decision to employ an automated system—in lieu of human judgment—to determine how the high-volume of homeowners insurance claims it receives should be processed");[1] ¶ 32 ("State Farm made the decision to automate claims processing, or major aspects of it, and thereby replace human judgment with algorithms.").[2]

To be sure, Judge Harjani referenced the "outset" *once* in his phasing Order (Dkt. 79), but that most clearly refers to the "outset" of discovery and not the "outset of claims." And even if "outset" does not refer to discovery, it does not most naturally refer to the "outset of claims;" instead, it would refer to the outset of an algorithmic sorting process, which can happen at any point in a claim's lifecycle (i.e., whenever the Algorithmic Sorting Tool is deployed). Further, Algorithmic Sorting Tools may be pre-programmed into the claims process and, in that sense, are present both "at the outset" of every claim and during later stages of a claim's lifecycle.

Even if Defendant's rigid temporal interpretation of the term "outset of claims" applied—and it should not—its demands to micro-phase discovery make little sense. Phase I applies to all Algorithmic Sorting Tools full stop. Dkt. 79, 81. It would be unnecessarily duplicative to issue discovery about tools that are used "at the outset" and then, later, issue additional Requests about tools used "after the outset." Moreover, identifying the third-party Algorithmic Sorting Tools that State Farm uses is the first step in determining how and when State Farm deploys those tools (whether "at the outset" or otherwise). Additionally, there has been no meaningful discovery about State Farm's claims process, including what constitutes the "outset" of claims. Thus, limiting discovery to the undefined "outset" will only engender more disputes about the scope of discovery and the completeness of responses.

**B. State Farm Improperly Limits the Scope of Plaintiffs' Requests to Exclude Discoverable Information on its Use of Algorithmic Tools.**

Throughout its discovery responses, State Farm has inappropriately qualified and limited the nature of materials it will produce.

*i.* **Requests Nos. 1-3.**

---

[1] Merriam Webster defines the word "process" as "a series of actions or operations conducing to an end." *Process*, MERRIAM-WEBSTER'S DICTIONARY (last visited May 17, 2024).

[2] *See also id.* at ¶ 5 ("It is thus reasonable to attribute a systematic difference in the rate of claims subjected to heightened scrutiny to State Farm's policy of using algorithmic decision-making tools to screen and address all policyholder claims."); ¶ 33 ("State Farm harnesses a variety of tools to collect extensive data about policyholders and uses that data in claims processing and fraud detection."); ¶ 36 ("State Farm also uses a combination of internal and third-party tools to leverage the vast troves of data it collects to process homeowners insurance claims. . . . State Farm executes automated processes based on code and data relationships."); ¶ 38 ("State Farm has used Salesforce's Financial Services Cloud, Duck Creek Claims, and/or other similar internal and external algorithmic decision-making tools to process its homeowners insurance claims[.]"); ¶ 62 (common questions include, "Whether State Farm uses algorithmic decision-making tools to triage and process homeowners insurance claims, and the nature, scope, and operation of those tools[.]").

May 17, 2024
Page 3

In its Responses to Requests Nos. 1—3 and Amended Interrogatories 5—6, State Farm has only agreed to produce information on 

This response is deficient. For example, Defendant refuses to produce information that falls squarely within the scope of Phase I, see Dkt. 79, such as documents about tools that "screen" for or identify complex claims (whether or not such claims are "rout[ed]" as a result). Indeed, an individual Tool may contribute to the routing or sorting of potentially complex claims in a variety of ways described in Plaintiffs' Requests and Amended Interrogatories, including by identifying claims as potentially complex, labeling claims, tracking claims, or prompting additional investigation or requests for documentation. Moreover, Defendant's Responses to these Requests and Amended Interrogatories do not provide or commit to providing information on tools that identify, label, or sort claims in a manner that affects the speed with which State Farm processes claims or the level of scrutiny it applies. *E.g.* Reqs. Nos. 1-3. Such information is relevant to both Phase I of discovery and to the allegations of the First Amended Complaint, which specifically alleges harm caused by delays and additional investigation. *See e.g.* Fn. 2 *supra*; FAC ¶¶ 3-6, 16-18, 20, 48.

  ii. *Verisk and Salesforce (Reqs. Nos. 4—7, 12, and 14—15; Amended Interrogatories 5—6)*

State Farm refuses to identify or provide documents concerning its use of Verisk and Salesforce products/services, except for those that "assist[] in the routing" of claims and the "identification of potentially fraudulent claims." That response improperly narrows the scope of Phase I and excludes relevant information from discovery. For example, in accordance with Judge Harjani's Order, Plaintiffs are entitled to discovery into State Farm's use of Verisk and Salesforce tools that identify, screen, or sort "complex claims" (Dkt. 79), irrespective of whether they are "rout[ed]."

Though State Farm denies that it uses Salesforce and Verisk products (other than ▮ and ▮) to "assist in the routing of Homeowners Insurance claims or the identification of potentially fraudulent Homeowners Insurance" claims, State Farm does not deny using additional products and services from Salesforce and Verisk to perform other functions that Plaintiffs described in their Requests, such as "screen[ing] out potentially . . . complex claims from straightforward . . . claims." Accordingly, State Farm should clarify whether it is withholding responsive documents or information pursuant to its objections to Plaintiffs' Requests 4—7, 12, 14-15, and Amended Interrogatory 5.

State Farm also inappropriately limits the scope of discovery with respect to the only two tools from Verisk and Salesforce that it acknowledges using—▮ and ▮. For both tools, State Farm only describes or agrees to produce documents describing their use  claims. This is insufficient, as it is both inconsistent with the scope of Phase I discovery and not fully responsive to Plaintiffs' Requests or Amended

May 17, 2024
Page 4

Interrogatories. For instance, State Farm should also produce discovery indicating whether it uses ▮▮▮ or ▮▮▮▮▮▮ to "screen" for or "identify" complex claims. *See* Plaintiffs' Requests 4—7, 12, 14-15; Amended Interrogatory 6.

### iii. Crawford, Eberl, and Renfroe (Requests Nos. 16—27)

State Farm also refuses to produce documents in response to Plaintiffs' Requests regarding its use of products and services provided by Crawford, Eberl, and Renfroe, asserting that it "has not used any computer-based, automated, and/or rules-based tools" from these vendors "to assist in the routing of Homeowners Insurance claims, . . . the identification of potentially fraudulent claims, or to 'sort potentially fraudulent/complex claims from straightforward claims.'" Responses to Requests 16—27. This response studiously ignores the language of Plaintiffs' Requests and improperly limits the scope of Phase 1 discovery as described in section B. i., *supra*.

### C. **State Farm Unduly Limits its Responses and Productions to Structural Damage Claims.**

State Farm improperly seeks to limit its responses and document productions to algorithmic tools it uses only for "structural damage claims." Resp. to Reqs. 1—8, 10—11, 13—14, and 28—30; Amended Interrogatories 5—6. Such limitation is unwarranted by any discovery Order or Plaintiffs' allegations.

The term "structural damage claim" does not appear in Plaintiffs' complaint. Instead, Plaintiffs repeatedly refer to State Farms' "homeowners insurance claim processing polic[ies]." *E.g.* FAC. ¶ 1. Moreover, none of Plaintiffs' discovery Requests or Amended Interrogatories are so limited or even use the term "structural damage claim." Likewise, under Judge Harjani's Phasing Order, Phase I concerns "homeowners insurance claims" (Dkt. 79), without any limitation to "structural damage."

Furthermore, it is not even clear what "structural damage claims" means, since State Farm has not defined the term. There are wide categories of homeowners insurance claims which could conceivably fall outside the ambit of "structural damage."

Accordingly, State Farm must agree to provide information in relation to *all* homeowners insurance claims, not only those for "structural damage."

### D. **State Farm Refuses to Produce Contracts with Third-Party Vendors in Violation of Judge Harjani's Order.**

In its objections to Plaintiffs' Requests, State Farm repeatedly quotes Judge Harjani's directive to "identify the tools first" while refusing to provide information that Plaintiffs need to do this. Though State Farm has agreed to produce contracts with Salesforce and Duck Creek, it has not agreed to produce "contracts, Agreements, understandings, and/or memoranda" with any other third-party providers. Resp. to Reqs. Nos. 5, 9, 13, 17, 21, 25.

May 17, 2024
Page 5

      Such a limitation is inappropriate and nonsensical. Contracts, Agreements, understandings, and/or memoranda are an obvious avenue for identifying services that third parties provide to State Farm, including Algorithmic Sorting Tools. State Farm presumably understands this given that they are producing *some* contracts with third party vendors. State Farm's refusal to produce such documents pertaining to Verisk is of particular concern since Verisk provides ███████, which by State Farm's own admission is a ███████ that State Farm used to ███████ ███████ ROG Responses at 11.

      Accordingly, contracts with third parties are plainly relevant to identifying the Algorithmic Sorting Tools that State Farm uses. There is no basis to withhold such contacts, particularly for tools that State Farm admits using.

***

      Please let us know if you are available to meet and confer concerning the above-cited deficiencies during the week of May 20, 2024.

                              Sincerely,

                              */s/ David Tracey*
                              David Tracey