# EXHIBIT D



**Sanford Heisler Sharp, LLP**
17 State Street, Suite 3700
New York, NY 10004
Telephone: (646) 402-5650
Fax: (646) 402-5651
www.sanfordheisler.com

**David Tracey**, Partner
(646) 402-5667
dtracey@sanfordheisler.com

New York | Washington D.C. | San Francisco | San Diego | Nashville | Baltimore

June 20, 2024

**VIA EMAIL**
Sondra A. Hemeryck
shemeryck@rshc-law.com

  Re: *Jacqueline Huskey and Riian Wynn et al v. State Farm Fire and Casualty Company*, Case No. 22-cv-07014 (N.D. Ill.) – Discovery Deficiency Letter

  We write concerning additional deficiencies in responses provided by State Farm Fire and Casualty Company ("State Farm" or the "Company") to the Third Set of Requests for Production ("Third Set of RFPs") and Amended First Set of Interrogatories ("Amended Interrogatories") that were served by Jacqueline Huskey and Riian Wynn (collectively, "Plaintiffs") on March 27, 2024. This letter is not an exhaustive list of all the deficiencies in State Farm's responses to any of Plaintiffs' requests ("Requests") or Amended Interrogatories. It focuses on certain written responses from State Farm in an effort to streamline certain discovery disputes and attain resolutions without the need for court intervention. Plaintiffs reserve the right to raise additional deficiencies with State Farm's responses and productions, including with respect to the Amended Interrogatory and Requests at issue herein, in the future as warranted.

### Amended Interrogatory No. 5

  In Amended Interrogatory No. 5, Plaintiffs requested that State Farm "[i]dentify all proprietary and third-party Algorithmic Tools that State Farm uses and/or has used to sort, screen, label, route, track, estimate, and/or categorize Homeowners Insurance policyholders or claims in any manner that assists or influences: (a) the amount of review, documentation, investigation, and/or evaluation that State Farm conducts on a given claim; or (b) State Farm's identification of claims as 'high touch,' complex, potentially fraudulent, or for direction to the SIU or law enforcement."

  In its April 25, 2024 response, State Farm identified eight ████████ ████████████████████████████████████████████ " along with six "

June 20, 2024
Page 2

"¹ State Farm included ████████ as tools in the latter category.

State Farm did not include Accurint and SAS on its list of tools, even though they are squarely responsive to Amended Interrogatory No. 5. To provide relevant context, in *Connectors et al v. State Farm*, No. 2019 CV 00743 (N.D. Ill.), Paul J. Lehman—a team manager in State Farm's Special Investigations Unit ("SIU")—confirmed during his deposition that the Company's claims personnel run reports with ISO <u>as well as with</u> Accurint. Dkt. 323-11 at 28:13-17 ("Q. Okay. What type of reports would they be in the position to run? A. It'd be, like, <u>Accurint or ISO</u>, insurance offices. They might run total loss values. It's numerous different types of reports."). Where State Farm has listed ████, no reason exists for it to not have disclosed Accurint, a parallel tool. Further, Mr. Lehman testified that reports run with Accurint include information on a claimant's prior claims, places of residence, phone numbers, financial and criminal history, family connections, and employment. *Id.* at 29:4-14. These details are undoubtedly pertinent factors to consider—and are presumably used by State Farm's employees—when identifying potentially fraudulent insurance claims.

Mr. Lehman also stated during his deposition that TAC and SAS are <u>both</u> used by State Farm's employees when identifying claims that may need to be sent to SIU:

> Q. Let's start with how a claim gets sent to the SIU.
>
> A. There are two different ways a claim can get to the SIU. There are what we call, for lack of a better term, a push claim. Push claim comes from a line unit adjuster who recognizes NICB indicators and sends it to the screening team. Okay? The screening team then reviews that claim to see if the NICB indicators are valid and accurate and if they require additional SIU investigation; and if they do, then the screener team would assign it to an SIU claims specialist based on the area that that claims specialist handled. Okay. When I say area, it could be PD, BI, you know, Illinois, Chicago, you know, Illinois, Champaign-Urbana -- yeah, Illinois -- Southern Illinois. Okay.
>
> And then the second way is through data analysis, which we're probably going to talk a little bit about different programs, <u>TAC and SAS, that identifies claims that have NICB indicators. Once again, those claims are sent directly to a screener, who once again screens them to see if the NICB indicators are valid and require additional follow-up by an SIU unit. If they do, then that screener assigns it to a claim representative once again based on the area, you know, PD versus BI and where the claim came from</u>.

*Id.* at 41:2-42:5. Later in Mr. Lehman's deposition, State Farm's counsel objected to a question by indicating that solicited testimony regarding TAC, EIR, <u>and</u> SAS searches were already given by

---

¹ Plaintiffs' position remains the same: State Farm's defined scope for the tools relevant to this case is unduly narrow, and Plaintiffs do not concede that State Farm's identification and production of documents as tailored to that scope meet Plaintiffs' discovery requests.

June 20, 2024
Page 3

Chuck Golden, State Farm's Analytics Manager. *Id.* at 76:11-77:4, 81:6-18. State Farm's non-disclosure of SAS in response to Plaintiffs' Amended Interrogatory No. 5 is not justified when parallel tools, ▇ and ▇ have been identified. Should non-disclosure be due to the applicable time period, Plaintiffs request that State Farm identify the time period for when it used SAS within seven days upon receipt of this deficiency letter.

**Third Set of RFPs**

Documents and information regarding Accurint and SAS responsive to the following Requests in Plaintiffs' Third Set of RFPs must also be produced:

- Request 1: All Documents, Communications, and Information concerning each Algorithmic Tool that State Farm uses to sort, screen, label, route, track, estimate, or categorize Homeowners Insurance policyholders or claims in any manner that affects or influences how State Farm processes Homeowners Insurance claims, including the speed with which State Farm processes and/or adjusts such claims; the amount and nature of Documentation or proof State Farm requests in connection with such claims; the number of interactions State Farm employees or agents have with the claimant; and the likelihood that such claim is identified as "high touch," complex, potentially fraudulent, or is directed to Special Investigation Unit (SIU) or to law enforcement.

- Request 2: All Documents, Communications, and Information concerning each Algorithmic Tool that assists State Farm in the identification of claims as "high touch," complex, potentially fraudulent, or for direction to the SIU or law enforcement.

- Request 3: All Documents, Communications, and Information concerning each Algorithmic Tool that has any influence on the amount of review, tracking, routing, labeling, Documentation, investigation, and/or evaluation that State Farm conducts on a given claim.

State Farm has already confirmed that it will produce documents and information responsive to these Requests. Production should be made within 30 days upon receipt of this deficiency letter.

Please confirm that State Farm will amend its interrogatory response to identify SAS and Accurint, and produce documents regarding the same. We are available to meet and confer this week or next to the extent helpful.

Sincerely,

*/s/ David Tracey*
David Tracey