UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>　　　　　Defendant. | Case No. 22-cv-07014<br><br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFFS' REPLY TO STATE FARM FIRE AND CASUALTY COMPANY'S
RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

State Farm's response ("Response," Dkts. 119 and 121) to Plaintiffs' motion to compel discovery ("Motion to Compel Discovery" or "Motion," Dkts. 112 and 113) is inaccurate and misleading. First, as evident through its discovery responses and document productions to date (Dkts. 100-3 and 102-3,[1] 112-2 and 113-2;[2] *see* Dkts. 119 and 121 at pp. 3-5[3]), State Farm has unduly narrowed the scope of Phase I discovery to just 14 tools it unilaterally predetermined as relevant. Plaintiffs have had to flag, *sua sponte*, other easily identifiable and relevant tools which State Farm failed to include in its list, resulting in State Farm correcting its list more than three months after the start of Phase I discovery (Dkt. 113-8). Second, nearly five months have passed since Plaintiffs served discovery requests pursuant to Judge Harjani's Phase I scheduling order

---

[1] These documents are State Farm's responses to Plaintiffs' Amended First Set of Interrogatories. They have also been filed as Dkts. 92-1 and 93-1.
[2] These documents are State Farm's responses to Plaintiffs' Third Set of Requests for Production ("RFPs"). They have also been filed as Dkts. 92-2 and 93-2.
[3] The page numbers cited herein refer to the docket page numbers of the unsealed version of a given document.

1

(Dkt. 81; Dkts. 112-1 and 113-1), and State Farm has yet to produce any documents in relation to four of its listed tools that are—as deemed by its discovery responses—highly relevant among its list (Ex. A; Dkts. 100-3 and 102-3 at pp. 17-20 [spreadsheet]). <u>Third</u>, State Farm's productions so far are plainly deficient, failing to meet even the low bar State Farm has unilaterally set for itself. Many documents were produced with no explanatory cover letter and provide no fundamental context nor information as to what the tools are and where they exist within the claims process. The volume of pages—touted by State Farm as evincing compliance—rings hollow and is plainly misleading: in the numerous months leading up to the filing of Plaintiffs' Motion to Compel Discovery, **<u>State Farm has only produced 30 decontextualized documents</u>**, six of which are non-substantive metadata imprints. Plaintiffs felt obligated to file their Motion in response to the dearth of productions made thus far.

Plaintiffs have not demanded that State Farm conduct complex ESI searches of emails, text messages, or deleted files; nor has State Farm been requested to make voluminous productions of policyholder data or code. Instead, in compliance with Phase I discovery, Plaintiffs have sought basic documents and information, such as internal policies, guidebooks, training materials, and contracts—all of which are material for identifying and understanding the tools at issue in this case. State Farm refuses to produce even this limited set of documents and information. It has unduly limited discovery in direct contravention of the Court's Phase I discovery orders, while still offering deficient productions omitting identification and basic information about tools over a stretch of nearly five months. Plaintiffs' motion is warranted and should be granted.

<u>***FIRST*:**</u> **STATE FARM'S UNILATERAL ATTEMPTS TO UNDULY LIMIT PHASE I**

1. The day after the February 22, 2024, hearing, Judge Harjani ordered that Phase I discovery focus on "algorithmic decision-making tools employed by State Farm to screen out

potentially fraudulent or complex claims." Dkt. 79. Judge Harjani entered a scheduling Order for Phase I discovery on March 5, 2024, requiring written discovery requests focused on, expectedly, "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims," to be issued by March 27, 2024. Dkt. 81. Nowhere in the Phase I Orders did the Court limit in any way how many tools would need to be disclosed by State Farm. In fact, the Court definitively rejected efforts made by State Farm during the hearing to narrow the scope of relevant tools that would enable it to produce little to no documents, in line with the position it had taken with Plaintiffs leading up to the hearing.[4] Dkt. 79; *see* Dkt. 98 at 18:10-13 (February 22, 2024, Hearing Transcript) ("But it sounds like what you're saying, as you know it now, even if I were to credit that process, it sounds like you'll have very little or nothing to produce.").

2. Judge Harjani also made clear in the Phase I Orders that a "<u>preliminary</u>" focus on any and all relevant tools is just the "<u>start</u>" of Phase I, and that Phase I would thereafter proceed with a deep dive into how the tools and their uses, means, and methods have resulted in class-wide disparate impact on Black versus white claimants. Dkt. 79 ("The parties should identify the tools first through these discovery devices before the deep dive into the tools. Class-wide claims data and statistical data will be reserved for Phase Two."). The parties are still at the start of Phase I. If Plaintiffs are unable to discover the full scope of tools State Farm uses at this preliminary phase, Plaintiffs' window to inquire as to State Farm's practices will improperly narrow, hindering their

---

[4] State Farm initially maintained that it did not use <u>any</u> algorithmic tools as part of its claims process. *See, e.g.*, Dkt. 88-4 at pp. 63-64 ("State Farm did not use in connection with Plaintiffs' insurance claims that are the subject of this case any computer-based or automated tool that uses statistics, data analytics, machine learning, deep learning, natural language processing, artificial intelligence, or any other data science tools or concepts to predict outcomes or assist with decision-making.") (State Farm's response to Plaintiffs' Second Set of RFPs served on December 21, 2023); *see also* Dkts. 87-1 and 88-1 (Chart of Equivocations).

ability to discover facts relevant to their disparate impact claims. A domino effect needlessly prolonging phases of discovery will ensue.

3. In accordance with the Court's Phase I scheduling Order, Plaintiffs served State Farm their Third Set of RFPs and Amended First Set of Interrogatories on March 27, 2024, inclusive of requests tailored to fall squarely within the scope of Phase I discovery. *See* Dkts. 112-1 and 113-1. In its responses, State Farm misread the Court's Phase I Orders to adhere to its own desired limitations, claiming it needed to only produce documents regarding a subset of 14 tools it had unilaterally picked. Dkts. 100-3 and 102-3 at pp. 11-12 (Amended Interrogatory No. 5 response) and pp. 17-20 (spreadsheet), 112-2 and 113-2 at p. 16 (RFP No. 1 response); *see* Dkts. 119 and 121 at pp. 3-5. State Farm stated it would not search for or produce documents potentially responsive to Plaintiffs' requests if it needed to expand beyond this incomplete list. Dkts. 100-3 and 102-3 at pp. 11-12 (Amended Interrogatory No. 5 response), 112-2 and 113-2 at p. 16 (RFP No. 1 response); *see* Dkts. 119 and 121 at p. 3 (¶ 7).[5]

4. By State Farm's subsequent admission, the 14 tools on its list do not encapsulate all tools that are or may be relevant. For example, State Farm failed to disclose Accurint and SAS, even though they are responsive to Plaintiffs' Amended Interrogatory No. 5. Dkts. 100-3 and 102-3 at pp. 11-12. The interrogatory specifically requested that State Farm "[i]dentify all proprietary and third-party Algorithmic Tools that State Farm uses and/or has used to sort, screen, label, route, track, estimate, and/or categorize Homeowners Insurance policyholders or claims in any manner that assists or influences: (a) the amount of review, documentation, investigation, and/or evaluation that State Farm conducts on a given claim; or (b) State Farm's identification of claims as 'high touch,' complex, potentially fraudulent, or for direction to the SIU or law enforcement." *Id.* at p.

---

[5] *See supra* fn.1-2.

9. Accurint is a tool used by State Farm employees for fraud detection, as it leverages data on prior insurance claims, places of residence, phone numbers, financial and criminal history, employment information, and household composition. *See Connectors et al v. State Farm*, No. 2019 CV 00743 (N.D. Ill.), Dkt. 323-11 at 28:13-17, 29:4-14. SAS is a tool used by State Farm employees to assist in identifying potentially fraudulent claims for further screening. *Id.* at 41:2-42:5. These are plainly relevant tools squarely within the scope of Phase 1 discovery.

5. On June 20, 2024, Plaintiffs sent State Farm a discovery deficiency letter pointing out that Accurint and SAS were responsive to Amended Interrogatory No. 5, and in turn, should have been included on State Farm's list of tools. Dkts. 112-4 and 113-4. Among other points, a key takeaway of the deficiency letter was that State Farm's corporate representative had confirmed in the *Connectors* case that Accurint and SAS were used alongside with or similarly as three other tools, which were included on State Farm's list of tools in this case—there was no justification for including the three tools but not Accurint and SAS. Indeed, following an additional investigation, State Farm responded it would amend its list of tools to include Accurint and produce responsive documents. Dkt. 113-8 at p. 3. State Farm has refused to add SAS on grounds that SAS-based tools have not been used during the class period for assisting "in the routing of Homeowners Insurance structural damages claims or the identification of potentially fraudulent Homeowners Insurance structural damages claims." *Id.* State Farm has refused, despite being specifically requested, to provide information regarding the time period for when SAS was used. Dkts. 112-7 and 113-7. Plaintiffs should not have to carry the burden of doing State Farm's job for it.

6. State Farm has also failed to add to its list of tools, and provide any documents or information, about relevant algorithmic tools it itself has identified in a publicly filed patent, US 10832347 B1. State Farm describes the patent as employing machine leading models to analyze

5

insurance claims and data sources for assigning and routing claims based on severity tiers and segments; the goal of the models is to assess various factors such as damage severity, claimant demographics, and potential legal proceedings associated with the claims. *See generally* Dkt. 100-4. The patent application also states that "machine learning programs may utilize deep learning algorithmics that may be primarily focused on pattern recognition," and that the models can be used to process homeowners' insurance claims. *Id.* at p. 11. Such tools are responsive to Plaintiffs' Phase I discovery requests. *See* Dkts. 100-3 and 102-3 at pp. 11-12 (Amended Interrogatory No. 5), 112-1 and 113-1 at p. 7 (RFP No. 1) and p. 14 (RFP Nos. 28-30). State Farm's outright refusal to search for or produce responsive documents and information runs afoul of the plain text of the Court's Phase I Orders. *See* Dkts. 112-2 and 113-2 at pp. 98-108 (RFP Nos. 28-30 responses).

7. State Farm's unduly narrow discovery responses, and prior omissions regarding relevant tool disclosures, do little to ease Plaintiffs' concerns that State Farm has not identified all tools that "screen out potentially fraudulent or complex claims." Dkt. 79. Though State Farm agreed to identify and produce documents on tools that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkts. 112-2 and 113-2 at pp. 16, 19, 22 [RFP Nos. 1-3]), it did <u>not</u> agree to identify tools that assess complexity without directly routing claims. *See id.* As Plaintiffs explained in their May 17, 2024, discovery deficiency letter to State Farm, "an individual Tool may contribute to the routing or sorting of potentially complex claims in a variety of ways" that do not involve routing, "including by identifying claims as potentially complex, labeling claims, tracking claims, or prompting additional investigation or requests for documentation." Dkts. 112-3 and 113-3 at p. 4. Per the Court's Phase I Orders, Plaintiffs are entitled to information about tools that "screen out potentially . . . complex claims" (Dkts. 79, 81), whether or not such tools explicitly route claims.

## SECOND: STATE FARM'S OUTSTANDING PRODUCTIONS FOR HIGHLY RELEVANT TOOLS

8. Almost five months have passed since Plaintiffs issued their discovery requests, and State Farm has yet to produce documents and information covering all 14 tools it disclosed in its discovery responses, or documents and information for Accurint despite what was promised.[6]

9. State Farm acknowledges, quite prominently, in its Response that its productions so far have not covered the following four tools from its list: ███████████ ███████████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████ *Compare* Dkts. 100-3 and 102-3 at pp. 11-12 (Amended Interrogatory No. 5 response) *with* Dkts. 119 and 121 at pp. 3-5 (¶ 9). State Farm has also established in its discovery responses that it deems those four tools from its list to be highly relevant to this case. Dkts. 100-3 and 102-3 at pp. 17-20 (spreadsheet). Each uses predictive modeling, machine learning, and/or artificial intelligence. *Id.* They also identify or sort either potentially fraudulent or complex claims from other claims. *Id.*[7]

10. The tool spreadsheet in State Farm's response to Plaintiffs' Amended First Set of Interrogatories, which State Farm references in its Response, provides the following descriptions, which further support each tool's relevance:

- ████████████████████████████████████████████ ████████████████████████████████████████████

---

[6] State Farm asserts it does not need to provide relevant information even though it fits within the scope of the Court's Phase I Orders, since Plaintiffs will be able to depose its 30(b)(6) corporate representatives. *See, e.g.*, Dkts. 119 and 121 at p. 6 (¶ 15). Yet the Court's Orders did not limit discovery on this basis, and State Farm's Response fails to state with specificity why producing relevant information would be unduly burdensome or non-proportional.

[7] Two tools that State Farm has conveniently omitted from its list, Accurint and SAS, are used by State Farm for purposes of fraud detection. *See supra* ¶¶ 4-5.

7



*Id.*[8]

11. State Farm has recognized that Accurint should have been a tool on its list. *See supra* ¶¶ 4-5. No productions pertaining to Accurint have been made thus far.

12. State Farm has refused to provide clarity as to when documents and information for the remaining five tools will be produced. *See, e.g.*, Ex. A ("The process of identifying and producing responsive documents regarding ▇▇▇▇▇▇▇ and Accurint continues and we will update you when we have more information.") (August 8, 2024 email); Dkts. 119 and 121 at

---

[8] State Farm claims in a footnote in its Response that it has gone above and beyond by including certain tools on its list that route claims even though they do screen out potentially fraudulent or complex claims. Dkts. 119 and 121 at p. 3 and fn.2. In other words, State Farm appears to have prioritized for its productions the tools that it has deemed the least or less relevant to this case. *See* Ex. B.

State Farm claims, belatedly, in another footnote that the four remaining tools have "no relevance" to this case, as they seek to disguise a typicality argument with a relevance argument. Dkts. 119 and 121 at p. 7 and fn.4. State Farm again seeks to unilaterally limit this case into an individual action when it has been pled as a class action that includes all others similarly situated to Plaintiffs. *Id.*; *but see* Dkt. 23 (First Amended Complaint). Judge Harjani has already rejected such efforts. Dkt. 79; *see* Dkts. 98 at 29:15-23. This rejection was appropriate since State Farm seeks to put the cart before the horse. Plaintiffs must be able to discover facts with respect to the class period before arguments can be made as to whether their claims are typical of all class members.

p. 5 (¶ 10) ("In addition, State Farm is in the process of identifying responsive documents relating to the remaining tools disclosed in its interrogatory responses, as well as documents relating to a subsequently identified tool, and will produce such documents as soon as practicable.") (cleaned up); *contra* Fed. R. Civ. P. 34(b)(2)(B) ("production must then be completed no later than . . . [a] reasonable time <u>specified in the response</u>"). Presumably, State Farm would not be seeking to delay document productions of the remaining tools, which it deems to be highly relevant, in a way that would prejudice Plaintiffs' ability to ask questions and use documents fully and as needed during State Farm's 30(b)(6) depositions.[9]

### *THIRD:* STATE FARM'S DEFICIENT PRODUCTIONS

13. The substance of Plaintiffs' Motion to Compel Discovery remains unchanged: State Farm has managed to produce a mere **30 documents**, with six of those documents being non-substantive metadata imprints, for 10 tools over a near five-month period leading up to the Motion. *See generally* Dkts. 112 and 113. The sequence of events from March 27, 2024, when Plaintiffs served their Phase I discovery requests, shows State Farm's undue delay and the scarcity of its productions. It is noteworthy that State Farm has, to date, prioritized productions for tools it has deemed least relevant or less relevant to this case. *See* Ex. B. Since July 18, 2024, State Farm has indicated it would produce little more than what has already been produced and has refused to provide a date by when production will be complete. *Contra* Fed. R. Civ. P. 34(b)(2)(B).

14. State Farm asks the Court to treat the number of pages and videos it has produced as the main if not sole factor for assessing the sufficiency of its productions. Dkts. 119 and 121 at

---

[9] In a footnote in its Response, State Farm criticizes Plaintiffs for not producing information about the 2021 YouGov survey (Dkt. 119 and 121 at p. 2 and fn.1). No request was ever made by State Farm to meet and confer regarding the survey. Nor is the survey a part of Phase I discovery, which focuses on "algorithmic decision-making tools employed by State Farm to screen out potentially fraudulent or complex claims" (Dkts. 79, 81). It is not a tool.

pp. 3-5 (¶¶ 8-9), p. 8 (¶ 19). That is not the correct focus, especially in light of what these pages include. State Farm has produced merely one to three documents per tool, and they do not provide context or information regarding what the tool is or how it works—i.e., they do not "generally describe" the tool contrary to what State Farm has promised it would provide (Dkts. 112-2 and 113-2 at pp. 16, 19, 22 [RFP Nos. 1-3 responses]). To flag some specific examples of deficiencies leading up to the filing of Plaintiffs' Motion for the Court's consideration (not exhaustive):

- ▇▇▇ with no context to understand its ▇▇▇ and a ▇▇▇ have been produced. *See* Ex. C (HUSKEYJAC00005985PROD); Ex. B.

- ▇▇▇ has been produced. *See* Ex. B. This ▇▇▇ offers no information on how the tool operates and fails to identify or describe actions that are taken with the tool.

- ▇▇▇ has been produced, *id.*, where there is no context to understand ▇▇▇. None of the ▇▇▇ offer general descriptions of what the tool is and its role in State Farm's claims process. Ex. D (HUSKEYJAC00006212PROD).

- ▇▇▇ have been produced, with ▇▇▇ provided only after Plaintiffs had specifically flagged them for State Farm. Dkts. 119-1 and 121-1 at p. 3; *see* Ex. B. They provide ▇▇▇ but provide no details for how the tool is in fact applied. While they indicate ▇▇▇, State Farm has produced no documents or information describing ▇▇▇. State Farm has also refused to provide documents and information on how its Data Analysis team and other teams employ the tool as part of the claims process to "pull" claims to identify those that need to be further screened for complexity and/or fraud. Dkts. 119-1 and 121-1 at p. 3.

- ▇▇▇ have been produced, *see* Ex. B, and they do not offer meaningful insight into how the tool functions. The ▇▇▇ that was produced is a ▇▇▇—it does not even include a surface level description of what the tool is and why or how it is used as part of its claims process. Ex. E (HUSKEYJAC00005908PROD). The other ▇▇▇ were produced only after Plaintiffs had specifically flagged them for State Farm. Dkts. 119-1 and 121-1 at p. 2. ▇▇▇ is a ▇▇▇ State Farm has refused to produce vendor contracts or other documents describing its use of these tools, apart from ▇▇▇.

State Farm must comply with the Court's Phase I Orders and supplement its deficient productions.

10

| | |
|---|---|
| Dated: August 16, 2024 | Respectfully submitted,<br><br>*/s/ David Tracey*<br><br>**SANFORD HEISLER SHARP, LLP**<br>David Tracey (Pro Hac Vice)<br>Albert Powell (Pro Hac Vice)<br>Sharon Kim (Pro Hac Vice)<br>17 State Street, 37th Floor<br>New York, NY 10004<br>Phone: (646) 402-5667<br>dtracey@sanfordheisler.com<br>apowell@sanfordheisler.com<br>sharonkim@sanfordheisler.com<br><br>**FAIRMARK PARTNERS, LLP**<br>Alexander Rose (Pro Hac Vice)<br>Jamie Crooks (Pro Hac Vice)<br>Michael Lieberman (Pro Hac Vice)<br>1001 G St. NW<br>Washington, DC 20001<br>Phone: (301) 458-0564<br>alexander@fairmarklaw.com<br>jamie@fairmarklaw.com<br>michael@fairmarklaw.com<br><br>**CENTER ON RACE, INEQUALITY, AND THE LAW AT NEW YORK UNIVERSITY SCHOOL OF LAW**<br>Deborah N. Archer (Pro Hac Vice)<br>Jason D. Williamson (Pro Hac Vice)<br>139 MacDougal Street<br>New York, NY 10012<br>Phone: (212) 998-6882<br>deborah.archer@nyu.edu<br>jason.williamson@nyu.edu<br><br>**MEHRI & SKALET PLLC**<br>Joshua Karsh<br>1237 Judson Ave.<br>Evanston, IL 60202<br>Phone: (773) 505-7533<br>jkarsh@findjustice.com<br>ARDC No. 6203096<br><br>*Counsel for Plaintiffs and the Proposed Class* |