N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HUSKEY and RIIAN WYNN, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | No. 22 C 7014 |
| v. | Jeffrey T. Gilbert United States Magistrate Judge |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

## MEMORANDUM ORDER

This is a class action lawsuit arising under the Fair Housing Act ("FHA"). Jacqueline Huskey and Riian Wynn ("Plaintiffs") are Black homeowners who submitted claims to Defendant State Farm Fire & Casualty Company ("State Farm") for damage to their State Farm-insured properties. They allege, on behalf of themselves and a putative class, that State Farm's handling of homeowners' property claims violates the FHA because State Farm uses "algorithmic decision-making tools" that have a disparate impact on Black policyholders' claims as compared to those of white policyholders. Amended Complaint ("Complaint") [ECF No. 23] at ¶¶ 4-7. To support the allegations in their Complaint, Plaintiffs relied on a survey of State Farm policyholders conducted by YouGov in 2021. Complaint [ECF No. 23], at ¶¶ 14-20. The matter presently before the Court is State Farm's Motion to Compel Certain Interrogatory Responses and the Production of Certain Documents [184] ("Motion"). State Farm seeks to compel production of two unrelated categories of discovery: (1) documents relating to the YouGov survey referenced in Plaintiffs' Complaint, including the creation, administration, and results of the survey and Plaintiffs' counsels' and consulting experts' pre-filing investigative work related to survey; and (2) any agreement between Plaintiffs' counsel and any third-party litigation funder. Plaintiffs object to producing the requested discovery. For the reasons discussed below, the Motion is granted in part and denied in part.

In ruling on a motion to compel, the discovery standard set forth in Rule 26 of the Federal Rules of Civil Procedure governs. *See* FED. R. CIV. P. 26. Parties are entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV.

1

P. 26(b)(1). When determining if discovery is proportional to the needs of the case, a court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Rule 1 likewise directs that the federal rules should be "construed, administered, and employed by the court ... to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. The objecting party carries the burden of showing why a particular discovery request is improper. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Furthermore, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

## I. State Farm's Requests for Survey-Related Documents

State Farm's requests for production of documents related to the YouGov survey at issue in this Motion and Plaintiffs' responses to those requests are as follows:

> Request No. 9 to Huskey and No. 6 to Wynn: Please produce the 2021 YouGov survey referenced in Paragraph 14 of the Complaint.

> Request No. 10 to Huskey and No. 7 to Wynn: Please produce all Documents relating to the creation of the 2021 YouGov survey referenced in Paragraph 14 of the Complaint.

> Request No. 11 to Huskey and No. 8 to Wynn: Please produce all Documents relating to the conduct of the 2021 YouGov survey referenced in Paragraph 14 of the Complaint.

> Request No. 12 to Huskey and No. 9 to Wynn: Please produce all Documents relating to the results of the 2021 YouGov survey referenced in Paragraph 14 of the Complaint.

> Plaintiffs' Responses:[1] Plaintiff objects to this Request to the extent it seeks the production of documents protected from disclosure by attorney-client privilege, common interest/joint prosecution privilege, and work-product protections. Plaintiff further objects to this Request as not relevant or proportionate to the needs of the case as it seeks [information] ["all Documents"] concerning a survey that Plaintiffs do not intend to use for testimonial purposes or at trial. Plaintiff will not

---

[1] Plaintiffs represent that their responses are identical except that responses to Huskey's Request No. 9 and Wynn's Request No. 6 use the word "information" and the others use the phrase "all Documents."

2

produce documents responsive to this Request based on her work product, privilege, proportionality, and relevancy objections.

Plaintiffs do not dispute that their counsel worked with consulting experts to develop, administer and analyze the YouGov survey as part of their pre-complaint investigation. Plaintiffs' Response [ECF No. 185], at 1-2. Plaintiffs contend, however, that the purpose of the survey was not to offer definitive proof that State Farm's policies had created the alleged disparate impact in the processing of insurance claims. Plaintiffs' Response [ECF No. 185], at 2. Instead, Plaintiffs say that the survey provided factual support for the allegations in the Complaint at the pleading stage because neither Plaintiffs nor their counsel had access to State Farm's actual claims data. Plaintiffs' Response [ECF No. 185], at 2. During the meet-and-confer process, Plaintiffs offered to produce the underlying data that was collected as part of the YouGov survey, which formed the basis of Plaintiffs' allegations in their Complaint, but said they would not produce communications and any analysis generated by Plaintiffs' counsel and their consulting experts because that information is protected work product. Plaintiffs' Response [ECF No. 185], at 2-3.

State Farm rejected Plaintiffs' offer and instead moved to compel Plaintiffs to produce "all documents relating to" how the survey was created, administered, and analyzed, including the communications between their counsel and consulting experts. Motion [ECF No. 184], at 3. State Farm says the survey data and internal communications about the survey are relevant and should be produced (1) to help State Farm gain insight into Plaintiffs' pre-litigation analysis and strategy and to learn how and why Plaintiffs' counsel and their experts made decisions about the survey design, and (2) to determine, based on Plaintiffs' investigation and analysis, whether State Farm can move for sanctions under Rule 11 or the FHA and/or whether Plaintiffs' counsel is adequate to represent the proposed class. Motion [ECF No. 184], at 3-6.

The Court first addresses State Farm's request for the survey results and underlying data. State Farm argues that the survey data and results should be produced because, among other reasons, (1) Plaintiffs relies on the survey and the survey's purported results in their Complaint, and (2) Plaintiffs also represented to the district court in its successful opposition to State Farm's motion to dismiss that State Farm would have the opportunity explore details of the survey and its results during discovery. Motion [ECF No. 184], at 4. As an initial matter, the Court notes that this is an unusual case because the data collected during the survey and the survey results that Plaintiffs rely on to support the factual allegations in their Complaint ultimately will not be the evidence and data Plaintiffs use to attempt to prove their claims at trial. Instead, Plaintiffs say they will rely exclusively upon *State Farm's actual claims files and data* that State Farm is producing in response to Plaintiffs' discovery requests.

3

While the Court cannot say the survey data is not "relevant" in the vernacular sense of that word to help State Farm understand the basis of the factual allegations in Plaintiffs' Complaint, it is more difficult to see how that information is legally relevant within the meaning of Rule 26(b)(1) since Plaintiffs say they ultimately will not rely on that survey data to prove their claims. Rather, all parties agree that Plaintiffs must prove their claims, or not, based upon State Farm's own data and not on the hypothetical construct that Plaintiffs alleged in their Complaint before they had access to State Farm's actual data. Under these circumstances, the Court cannot say the survey results are anything more than minimally relevant within the meaning of Federal Rule of Civil Procedure 26(b)(1) which focuses on the parties' actual claims and defenses. But minimal relevance may be enough. Further, production of that information to State Farm at this stage of the litigation is proportional to the needs of this case within the meaning of Federal Rule of Civil Procedure 26(b)(1) particularly since Plaintiffs have offered to produce it. Accordingly, the Court grants in part State Farm's Motion to the extent that Plaintiffs are ordered to produce "the full data set of survey results" which "consist[s] of over 38,000 data entries and include each of the over 850 survey respondents' demographic information, their answers to every question asked, and the weights used in the survey to reflect the representation of particular racial groups in the population." Plaintiffs' Response [ECF No. 185], at 2-3.

The Court, however, looks differently at State Farm's request for documents and communications by and between Plaintiffs' counsel and their consulting experts about their pre-filing investigative work and analysis related to the survey and its results. State Farm says it needs this information to learn how Plaintiffs' counsel and their experts designed and administered the YouGov survey, to gain insight into Plaintiffs' pre-litigation analysis and strategy, and to determine whether it can seek sanctions under Rule 11 or FHA. The Court disagrees with State Farm that it is entitled to that information based on the arguments it has asserted.

As an initial matter, State Farm argues it needs the discovery so that it can "evaluate the soundness of Plaintiffs' allegations" under Rule 11 and the FHA's sanctions provision. Motion [ECF No. 184], at 4-5. However, there is no evidence in the record, other than State Farm's unsubstantiated speculation, that suggests Plaintiffs, their counsel, or their consulting experts have acted in bad faith or engaged in any misconduct. The Court agrees with Plaintiffs here. Rule 11 "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings." Advisory Comm. Notes, 1993 Amendments, FED. R. CIV. P. 11; *see also Franklin v. Howard Brown Health Ctr.*, 2018 WL 4590010, at *5 (N.D. Ill. Sep. 25, 2018) (finding a claim for discovery based on "speculation," "hopes," or "hunches" "would make the long standing and continued prohibition against fishing expeditions a dead letter"). Nothing in Rule 11 nor the sanctions provision in the FHA authorizes

4

State Farm to go on a fishing expedition for potential sanctionable conduct without a shred of evidence that there has been any misconduct in the first place.

As to the substance of the discovery State Farm is seeking, the Court does not dispute that documents and communications relating to Plaintiffs' counsels' and the consulting experts' pre-filing investigative work and analysis are relevant. Of course, it is. Every party in high stakes, complex litigation like this case would want to have insight into their opposing counsel's pre-filing strategy and insight. Not surprisingly though, courts regularly have found that investigative work (like the information State Farm is seeking here) is protected work product. *See, e.g., In re Turkey Antitrust Litig.*, 2022 WL 797180, at \*7-13 (N.D. Ill. Mar. 16, 2022) (applying work product protections to pre-filing investigation); *Trs. of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr.*, Inc., 2022 WL 2341290, at \*2-3 (N.D. Ill. June 29, 2022) (same); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) ("The work-product doctrine protects documents prepared by attorneys. . . for the purpose of analyzing and preparing the client's case.").

State Farm does not dispute that pre-filing investigative work performed by counsel or consulting experts generally is work product. Instead, State Farm argues that Plaintiffs' counsels' and the consulting experts' pre-filing investigative work and analysis do not qualify as work product in this case because the work was performed before Plaintiffs had retained their counsel. This same argument was rejected by another court in this District. *In re Turkey Antitrust Litig.*, 2022 WL 797180, at \*7-13. As that court recognized, "[t]he ability of putative class counsel in complex class actions to investigate, build and file class cases would be seriously hampered" if defendants like State Farm were able to compel production of the investigative materials they are seeking. *Id.* at 12. Another court in this District similarly concluded that questionnaires that were developed and distributed before a case was filed and "upon which [the] plaintiffs' allegations [were] based" were protected from disclosure because the questions would reveal counsel investigative strategy and were prepared in anticipation of litigation. *Trs. of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2022 WL 2341290, at \*3-4.

The Court agrees with the decisions in those cases and likewise will not adopt a narrow view of what constitutes work product that would exclude the pre-filing investigative materials and communications at issue in this case from the definition. The Court is persuaded by the analysis of this issue in the above-cited cases. Under the circumstances here, the material State Farm seeks is classic protected work product, and it should not matter that it was created as part of the process by which Plaintiffs' counsel developed their case theory before they had locked in the eventual Plaintiffs. The work product doctrine prevents State Farm from delving into Plaintiffs' counsels' development, administration, and analysis of the survey and its

5

results, and it suffers no prejudice in defending this case by not having access to that information. *Id.*

In addition, even if this Court were to conclude that the information State Farm wants is not technically protected work product because the investigative work occurred prior to the litigation, the Court alternatively finds that requiring Plaintiffs to produce it would not be proportional to the needs of the case because that information falls at the very least within the penumbra of what the work product doctrine is supposed to protect. *See In re Turkey Antitrust Litig.*, 2022 WL 797180, at *12. Requiring such information to be produced to a litigation opponent would, among other things, have a chilling effect on class action litigation and might prevent class counsel from conducting a diligent investigation prior to filing a lawsuit out of fear their investigatory material would be turned over to their adversaries. *Id.* That is not an outcome that promotes the "just, speedy, and inexpensive determination" of an action or proceeding within the meaning of Federal Rule of Civil Procedure 1. FED. R. CIV. PRO. 1.

Alternatively, State Farm contends that even if the information is protected work product, Plaintiffs waived any work product protection over the survey and its results because they referenced them in their Complaint. State Farm relies on a decision issued by this Court, *OTR Transportation, Inc. v. Data Interfuse, LLC*, 2022 WL 296056 (N.D. Ill. Feb. 1, 2022), to support its argument that Plaintiffs' consulting reports are discoverable and should be produced. The Court again disagrees with State Farm. The facts in *OTR Transportation* are distinguishable from those in the present case. In *OTR Transportation*, the plaintiff hired a consultant, specifically a computer forensics expert, to investigate what caused the plaintiff's computer system to shut down and to help fix the problem, and the consultant's report included the actual computer data at issue in that case, which is not true in the present case. 2022 WL 296056, at *2-3. The court found there was a business purpose for the experts' work in *OTR Transportation* and ordered that it be produced. *Id.*

In this case, however, Plaintiffs' counsel retained consulting experts for the sole purpose of helping counsel perform their due diligence for the present lawsuit, which is the exact type of investigative work that is considered protected work product. *See In re Turkey Antitrust Litigation, supra.* There is no independent business purpose for the consultants' work in this case. Also, the plaintiff in *OTR Transportation* did not disclaim reliance on its consulting expert's report and continued to rely on the report in some respects to support its claims. *Id.* Unlike the plaintiff in *OTR Transportation*, Plaintiffs in this case have stated they will not use any reports prepared by those consultants to attempt to prove its disparate impact claims. Opposition [ECF No. 185], at 5 ("Plaintiffs will deploy a different approach with different data."). For these reasons, the Court finds that its analysis and decision in *OTR Transportation* is not instructive in the present case.

6

Instead, the Court finds *Dover v. British Airways, PLC*, 2014 WL 5090021 (E.D.N.Y. Oct. 9, 2014), more instructive in the context of this case. The plaintiffs in *Dover* conducted a similar pre-filing analysis, cited it in their complaint and similarly relied on it to survive a motion to dismiss. 2014 WL 5090021, at *1. Like Plaintiffs in the present case, the plaintiffs in *Dover* had no intention of relying on their initial investigation and analysis to prove their case but rather intended to prove their claims based on the defendant's own data that was produced in discovery. *Id.* The court in *Dover* recognized that Federal Rule 26(b)(4)(D) protects from disclosure information from non-testifying consultants, like the experts retained in *Dover* and by Plaintiffs' counsel here, but the relevant question was whether the plaintiffs waived the work product protection when they relied on their expert's work in their complaint. *Id.* The court in *Dover* concluded that work product protection was not waived because the plaintiffs had disclaimed future reliance on the analysis conducted by their consulting expert and stated that they would have a different testifying expert who would conduct a new analysis using a different set of data. *Id.* The court determined the data that the plaintiffs cited in the complaint was "no longer at issue" and the defendant would not be put in an unfair or "disadvantaged position" in defending the case by not having access to information the plaintiffs did not intend to rely upon. *Id.* at *2. Because there was no showing of unfairness or prejudice, the court concluded that the work produce protection had not been waived. *Id.*

The analysis in *Dover* is persuasive and applicable in this case. The Court similarly finds that Plaintiffs here did not waive any work product protection for their pre-filing investigation and analysis. The consulting experts in this case were hired for pre-filing investigation only, and Plaintiffs have affirmatively stated they will not be relying on any pre-filing analysis conducted by their consulting expert. Opposition [ECF No. 185], at 5. State Farm, therefore, will not be disadvantaged or suffer any prejudice by not having access to that analysis. The Court acknowledges that the allegations in Plaintiffs' Complaint, which are based on the results of the survey, are still in the operative Complaint in this case. That, however, does not change the Court's decision. For the reasons discussed above, the Court is ordering Plaintiffs to produce, and State Farm therefore will have access to, the underlying factual data that Plaintiffs' counsel obtained from the survey. Ultimately though, whether or not Plaintiffs can prove that State Farm's use of algorithmic tools has a disparate impact on Black policyowners' claims will be based on State Farm's actual data and claim files that it produces in discovery and will not be based on any survey data referenced in Plaintiffs' Complaint or any pre-filing analysis performing by the consulting experts. In the Court's discretion over discovery matters, this is an appropriate balance to strike in this case.

7

For these reasons, State Farm's Motion is denied in all other respects as to the discovery it seeks relating to the YouGov survey referenced in Plaintiffs' Complaint.

## II. State Farm's Requests for Non-Party Litigation Funding Documents

State Farm also seeks discovery of documents and information relating to any third-party litigation funding for Plaintiffs' counsels' work in this case. Motion [ECF No. 184], at 10. State Farm argues that the requested litigation funding documents are relevant because "fee arrangements in proposed class actions may create a conflict of interest that defeats a finding of adequacy of representation." Motion [ECF No. 184], at 11 (citing cases). Plaintiffs disagree and object to producing the requested information.

It is well established in this district that litigation funding information is "generally irrelevant to proving the claims and defenses in a case." *Art Akiane LLC v. Art & Soulworks LLC*, 2020 WL 5593242, at *2 (N.D. Ill. Sep. 18, 2020); *see also In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 2133171, at *4 (N.D. Ill. Apr. 9, 2024) (holding that the court "joins the chorus of courts to find that litigation funding is not relevant to the claims and defenses in the case"); *Fulton v. Foley*, 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) (citing case throughout the country that "that litigation funding information is generally irrelevant to proving the claims and defenses in a case"). If State Farm's general allegation that "fee arrangements in proposed class actions may create a conflict of interest" were enough for a defendant to obtain access to litigation funding information and third-party funding agreements, then that information always would be discoverable in all class cases. That, however, is not the current state of case law.

State Farm points to the fact that Fairmark Partners, which is one of the firms representing Plaintiffs in this case, has "a relationship with at least one third-party litigation funder" in an unrelated case. Motion [ECF No. 184], at 12. In the Court's view, however, that is not enough to establish any special justification for discovery of the information State Farm is seeking at this time. Therefore, the Court finds that Plaintiffs are not obligated to produce information about any litigation funding source in this case at this time.

For all these reasons, State Farm's Motion to Compel Certain Interrogatory Responses and the Production of Certain Documents [ECF No. 184] is denied in large part and granted to the extent that Plaintiffs are ordered to produce "the full data set of survey results" which "consist[s] of over 38,000 data entries and include each of the over 850 survey respondents' demographic information, their answers to every question asked, and the weights used in the survey to reflect the representation of particular racial groups in the population." Plaintiffs' Response [ECF No. 185], at 2-3. Plaintiffs shall produce the data within 10 days of entry of this Order.

8

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 11, 2025