**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Jacqueline Huskey and Riian Wynn, on behalf of themselves and all others similarly situated,** | Case No.: 22-cv-7014 |
| ***Plaintiffs*,** | Hon. Jeffrey I. Cummings |
| **v.** | Magistrate Judge Karyn L. Bass Ehler |
| **State Farm Fire & Casualty Company,** ***Defendant*.** | |

**PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs move to compel Defendant to produce information in response to Plaintiffs' Sixth Set of Requests for Production ("RFPs"). Ex. 1, Vaughn Decl. As is relevant here, Plaintiffs' Sixth Set of RFPs requests claims data relating to tools State Farm has used during the class period to identify homeowners claims for potential investigation for fraud and the individual claim handlers assigned to each claim and their time of assignment. These requests are relevant and proportional to the needs of this case—a multistate proposed class action challenging the disparate impact of State Farm's use of algorithmic tools in its homeowners insurance claims process. Plaintiffs issued their Sixth Set of RFPs on June 8, 2026. *Id.* Defendant served its responses and objections on July 17, 2026, objecting on many grounds to producing discovery in response to Plaintiffs' requests. Ex. 2, Vaughn Decl.

The parties have met and conferred and resolved disputes with respect to several objections but two disputes remain: First, Defendant refuses to produce data identifying which claims handlers were assigned to claims, and when, as requested by RFP No. 8. Ex. 2 at 34-36. Second, as it has done previously, Defendant refuses to produce claims data relating to the [redacted] tools and [redacted] in response to RFP Nos. 4, 5, and 6, even though these fraud detection tools fall squarely within Plaintiffs' allegations. *Id*. at 22-30. Accordingly, per the Case Management Order, Dkt. 244 ¶ 4, Plaintiffs move to compel.[1]

[1] The parties also have had disputes about Defendant's obligation to produce data in response to Plaintiffs' Sixth Set of RFPs covering a time period through the present and to supplement, pursuant to Fed. R. Civ. P. 26(e), its prior data productions in response to RFP No. 5 of Plaintiffs' Fourth Set of RFPs. As of the time of filing, however, Defendant has offered to produce data through the end of [redacted], and has claimed that further supplementation with [redacted] data is not yet appropriate because [redacted]. Plaintiffs therefore do not move to compel on this issue but reserve their rights to do so once the issue is ripe with respect to data for [redacted] or later time periods.

## I. State Farm Must Produce the Requested Personnel Data (RFP No. 8).

Data is critical to this disparate impact case. Plaintiffs allege that Defendant's policy of using algorithmic tools in its homeowners claims process to identify and screen out potentially complex or fraudulent homeowners claims results in disparate outcomes for Black homeowners, including longer wait times and more scrutiny. To make a prima facie showing of disparate impact, Plaintiffs must "produce statistical evidence demonstrating a causal connection" between Defendant's policy of using algorithmic tools and the disparate outcomes for Black policyholders. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015); *Cty. of Cook v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 990 (N.D. Ill. 2018) ("To state such a claim, a plaintiff must allege not only a statistical disparity, but also that the defendant maintained a specific policy that caused the disparity."). Accordingly, Defendant's data relating to homeowners claims and claims processing is central to Plaintiffs' case. *See* 6/10/25 Hrg. Tr. at 39:2-3 (Magistrate Judge Gilbert noting that Plaintiffs "need claims data"); *id.* at 49-50 (Magistrate Judge Gilbert noting that Plaintiffs "need a production of claims data that's sufficient for them to evaluate . . . [w]hether that [redacted] [by an algorithmic tool] has a disparate impact"); 12/3/25 Hrg. Tr. at 13:1-7 (defense counsel acknowledging that the claims data Defendant was producing "should allow plaintiffs' experts to conduct the analysis of whether or not there's a disparate impact").

In evaluating the probative value of plaintiffs' measure of causation, courts regularly examine whether plaintiffs' statistical analysis accounts for other "major variables" that might contribute to the measured disparities. *See, e.g.*, *Mozee v. Am. Com. Marine Serv. Co.*, 940 F.2d 1036, 1047 (7th Cir. 1991) ("The plaintiffs' analysis must take into account the major variables one might expect to cause a statistical disparity."); *Cnty. of Cook, Illinois v. Wells Fargo & Co.*,

2022 WL 17752387, at *12 (N.D. Ill. Dec. 19, 2022) (in FHA case challenging mortgage lending practices finding insufficient evidence of causality where statistical analysis did not account for non-racial borrower characteristics). Here, Defendant has made clear that it will argue that any disparity between how Black and white homeowners' claims are handled is due primarily not to its policy of using algorithmic tools but "to the decisions made by the individual claim handlers to whom the claims were assigned." Dkt. 166 at 21; *see also id.* ("handling of that claim will depend upon factors unique to that claim and the discretion of the claim representative"). In other words, Defendant appears ready to claim that this allegedly individualized handling is a contributing factor to the disparate outcomes that must be accounted for. Yet, Defendant refuses to produce information relating to who those "individual claims handlers" were and the dates those individuals "were assigned" to each claim. The Court should order Defendant to do so.

To be clear, Plaintiffs do not agree that Defendant's "individualized determinations" argument should carry the day. But, because Defendant is pursuing it, Plaintiffs need the data they have requested regarding individual claims handlers because it contributes to Plaintiffs' ability to measure the impact of individual claim handlers—i.e., the level (if any) to which individualized conduct impacts the outcomes at issue in this case—in Plaintiffs' analysis of disparities and causality. Moreover, as the Seventh Circuit has recognized, even where individual decisionmaking is partially responsible for some discrimination, there can still be an "incremental causal effect" of company-wide policies that "increase the amount of discrimination" and therefore still provide a basis for disparate impact liability. *McReynolds v. Merrill Lynch, Pierce, Fenner, Smith, Inc.*, 672 F.3d 482, 490 (7th Cir. 2012). Thus, data regarding individual claims handlers is relevant to measuring any such individualized effects (to the extent they exist) and the "incremental causal effect" of Defendant's company-wide policy of using algorithmic tools to initially [redacted] claims to

claims handlers and initially [redacted] claims for review by SIU screeners. *See also Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 436 (7th Cir. 2015) ("an early discriminatory process can taint the entire process"). And should Defendant persist in asserting individual claim handlers must be accounted for, this data would also be relevant to measuring the extent to which individualized claim handler discretion is, to the contrary, a disallowed discriminatory factor. *See Mozee*, 940 F.2d at 1048 ("[A] defendant may not offer as a nondiscriminatory explanation for the disparity in plaintiffs' statistics a factor that is itself a subject of discrimination. . . . "[I]t often remains the plaintiffs' burden following the defendant's proffer of a nondiscriminatory factor to show that that factor was itself tainted with discrimination." (citing *Coates v. Johnson & Johnson*, 756 F.2d 524, 544 (7th Cir. 1985))); *Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of Chi.*, 2021 WL 1020991, at *13-15 (N.D. Ill. Mar. 17, 2021) (finding plaintiff had put forth evidence rebutting the appropriateness of a variable defendant claimed should have been included where plaintiff "produced some evidence to suggest that [it] masks discriminatory effect").

Yet, Defendant objects to producing this data on two grounds: First, Defendant asserts that it is not relevant because it will not account for "claim-specific decisions" and the fact that [redacted]. Vaughn Decl. ¶¶ 11-12; Ex. 2 at 35. Second, Defendant asserts that it is unduly burdensome because it could result in [redacted] of data and could take days to produce. Vaughn Decl. ¶ 13; Ex. 2 at 35-36.[2] Neither of these objections provide a sufficient basis for refusing to produce this data.

[2] In its written objections, Defendant lodged other form objections to these requests, Ex. 2 at 34-35, 36, but based on the parties' conferral, Plaintiffs do not understand Defendant to be standing on those as the basis of its refusal to produce. These form objections are the same as those Defendant raised in relation to the [redacted] tools and [redacted], *see infra* at 9-11, however. Accordingly, to the extent Defendant does intend to stand on these form objections they fail for the same reasons outlined below.

Defendant's relevance argument is not credible. At bottom it is an argument that Plaintiffs may need more than the data they request—such as [redacted]—to measure the full impact of individual claim handlers on claims processing. But it is no defense to producing data to argue that other data might be needed in addition. "[A] relevant fact need not prove the entire case: 'a brick is not a wall.'" *Rayome v. ABT Elecs.*, 2024 WL 4119139, at *3 (N.D. Ill. Sept. 9, 2024) (quoting 1 McCormick on Evidence § 185 (6th ed.2009)). Indeed, although evidence "may ultimately prove to be of no value, either direct or circumstantial, . . . that does not mean that for purposes of discovery the records are not 'relevant.'" *Id*. Defendant may not believe Plaintiffs can prove their case without more data, but that is no basis not to produce the data Plaintiffs have requested. *See also U.S. Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) (ordering defendant in disparate impact case to produce detailed personnel information in employment disparate impact case because "[i]t will also permit the EEOC's experts to analyze whether non-racial demographic factors may have caused a statistical impact."). As described above, to the extent claims handlers at State Farm have individualized approaches and practices—something Defendant has been insistent on, *see* Dkt. 166 at 20 (claiming State Farm "defer[s] to the judgment and discretion of the individuals" handling claims)—controlling for the identity of a particular claims handler controls for that claim handlers' specific approach, practice, or even bias. Defendant's relevance arguments are thus belied by its own prior assertions. *Id*. at 20-21. If Defendant is correct, data that would allow Plaintiffs to account for the identity of the claim handler is clearly relevant. *See Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 503 (N.D. Ill. 2009) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." (internal citations and quotation marks omitted)).

Defendant's undue burden claims fail as well. Although it has the obligation to demonstrate that any burden is undue, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360 (N.D. Ill. 2005), Defendant's undue burden claims are insufficient to provide a basis to refuse discovery. As an initial matter, Defendant's arguments lack credibility because they have shifted over time as the deadline for Plaintiffs' motion to compel has neared. In Defendant's objections, the only factual support Defendant provided for its burden claim was that the requested data could result in approximately [redacted]. Ex. 2 at 36. During Plaintiffs' July 30, 2026, meet-and-confer, Plaintiffs requested additional information about the nature of the burden. Vaughn Decl. ¶ 9. On the parties' follow-up conferral, on August 12, 2026, Defendant offered no additional information regarding its burden in producing this data but instead made additional relevance arguments. *Id.* ¶¶ 10-11. Then, at 7:00 p.m. CT on Sunday, August 16, 2026, the night before Plaintiffs' motion to compel was due, Defendant claimed that the data actually would result in [redacted] and that, although Defendant could not estimate it confidently, running the report "would require, at minimum, on the order of days." Vaughn Decl. ¶ 13. Other than counsel's assertions, Defendant provided no other information to support these claims. *Id.* ¶ 14.

Even to the extent Defendant's undue burden claims can be credited, they still fail. With respect to the volume of data, "[j]ust because materials are voluminous . . . , they are not unduly burdensome." *United States v. Dish Network, L.L.C.*, 2010 WL 5463101, at *4 (C.D. Ill. Dec. 29, 2010). Defendant cannot meet its obligations to show that production of the data is not proportional simply by stating that there is a high volume of it. *See Vega v. Chi. Park Dist.*, 2014 WL 12959464, at *5 (N.D. Ill. Sept. 24, 2014) ("The Park District states that it would be overly burdensome to produce 'a mass of paper for over forty charges.' . . . The Park District has not sufficiently explained what the burden would be on it."). And a vague assertion, that by

Defendant's admission is speculative, that it will take "days" to pull the data is similarly an unsupported, insufficient response. *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990) ("The mere fact that [defendant] will be required to expend a considerable amount of time, effort, or expense in answering [discovery] is not a sufficient reason to preclude discovery.").

In any event, given the relevance of the requested data to a claim Defendant has made clear will be central to both its class and merits arguments, any burden is outweighed by the needs of the case. *Donnelly*, 263 F.R.D. at 502-04 (ordering defendant to produce discovery despite claim it would require records for more than 100 million calls and "several hundred hours to compile" where the discovery was relevant to defendant's likely defense and class arguments).

## II. State Farm Must Produce Documents Relating to the [redacted] Tools and [redacted] (RFP Nos. 4, 5, and 6 to Plfs.' Sixth Set of RFPs).

Plaintiffs have requested data relating to the [redacted] tools and [redacted]. Ex. 1 (RFP Nos. 4, 5, and 6 and Exs. D-F). As outlined in Plaintiffs' prior motion to compel, both tools are used in the process of identifying claims for potential fraud investigation. Dkt. 237 at 2-3, 5-6 (describing tools and citing related evidence of their purpose).

With RFP Nos. 4 and 5, Plaintiffs seek data regarding these tools that is relevant and proportional to Plaintiffs' statistical analysis of the racial disparities resulting from how Defendant processes claims. Specifically, Plaintiffs have requested data [redacted]

[3] Plaintiffs only request information relating to [redacted] for [redacted] because discovery to date has indicated that [redacted] likely maintains data relating to [redacted] for the tools. Ex. 5 (Biddlecome Dep.), Vaughn Decl., at 59:10-60:6 ([redacted]), 234:20-236:9 (State Farm corporate representative does not know [redacted]); Ex. 6 (Golden Dep.), Vaughn Decl., at 199:20-200:23 ([redacted] but State Farm corporate representative [redacted]); 214:11-19 (State Farm corporate representative does not know how [redacted]).

[redacted]. Ex. 1 (Exs. D & E to RFPs). This data goes directly to determining whether either or both tools contributed to the processing of a claim and whether its operation caused a disparate impact. For example, if a particular [redacted] is found through Plaintiffs' statistical analysis to have a statistically significant relationship with heightened [redacted] fraud investigation for Black policyholders, that could provide evidence supporting Plaintiffs' disparate impact claims.

With respect to RFP No. 6, Plaintiffs request information [redacted]. *Id*. (Ex. F to RFPs). This evidence too is directly relevant to Plaintiffs' measurement of which tools contribute to outcomes of certain claims, not only because it provides additional information regarding which tools [redacted], but it also provides information about SIU screeners [redacted]—that is, [redacted].

Defendant categorically refuses to provide data concerning [redacted] and [redacted], and therefore objects to RFP Nos. 4, 5, and 6 on those grounds. Specifically, Defendant refuses to provide any of the data requested in RFP Nos. 4 and 5 solely because [redacted] and [redacted] are the subject of the requests. As to RFP No. 6, Defendant objects solely to the portion of this request that seeks data for [redacted] and [redacted] to the extent these fields include information in relation to the [redacted] tools.[4] Defendant's categorical objections are the same as those lodged in

[4] In its written objections, State Farm objected to providing this information to the extent it is related to the [redacted] tools. Ex. 2 at 29-30. State Farm has agreed to provide a data field that [redacted], *id*. at 30, including [redacted], but this is not responsive to Plaintiffs' request for data reflecting the [redacted]

response to RFP Nos. 7 & 10 of Plaintiffs Fifth Set of RFPs and Plaintiffs Interrogatory Nos. 13 and 14. *Compare* Ex. 2 at 22-27 (Defendant's objections to Plaintiffs' Sixth Set of RFPs) *with* Dkt. 237 at 3-6 (addressing similar objections in relation to Plaintiffs' prior discovery requests). In essence, they boil down to relevance objections. Dkt. 237 at 3.

Plaintiffs addressed these objections in their prior motion to compel, Dkt. 237 at 3-6, and incorporate those arguments here by reference. In short, both [redacted] and [redacted] are algorithmic fraud detection tools, and evidence shows State Farm is [redacted]. Even if these tools are only a first step in the fraud detection process, as State Farm in part argues, they may "taint the entire process" and violate the law. *Chi. Tchrs.*, 797 F.3d at 436. And even if the current named Plaintiffs were not investigated for fraud (although proposed Plaintiff Bernadette Bradley was, *see* Dkt. 225-2 ¶ 19), all Black homeowners suffer devalued policies because these tools [redacted]—the ability to file claims and have them resolved efficiently being the entire purpose of having a homeowners insurance policy. Dkt. No. 237 at 4 (collecting cases). In sum, Defendant's objections are no more meritorious now than they were a month ago. Dkt. 237 at 3-6.

In addition, Defendant raises a number of form objections. These objections are meritless, too.[5] First, Defendant objects that the request is overbroad because it is not limited to the six states currently subject to Plaintiffs' First Amended Complaint. Ex. 2 at 22, 25-26, 28. This objection is moot if Plaintiffs' pending motion for leave to amend the complaint to expand the class to a

---

[redacted]. As outlined in Plaintiffs' request, the [redacted] tools appear to [redacted], *see* Ex. 1 (Ex. F to RFPs ("[redacted]" field citing HUSKEYJAC00006481PROD); Ex. 3 at HUSKEYJAC00006481PROD.

[5] Defendant has made these form objections in relation to other requests but has nonetheless produced the requested data. Though Defendant has not pressed these objections in conferral with Plaintiffs, Plaintiffs address them here solely in an abundance of caution because Defendant has raised (in a cursory fashion) certain similar objections in its recently filed motion for a protective order. Dkt. No. 258.

nationwide class is granted; and production of data for the six states that are the subject of the operative complaint's allegations is clearly relevant and proportional in the meantime.

Second, Defendant asserts the request is overbroad because it requests data from 2018 to the present, despite named Plaintiffs' claims having been resolved in 2021 and 2022 and the statute of limitations period, according to Defendant, only beginning in 2020. *Id.* at 23, 26, 28. But this is a class case, there is no reason to limit the relevant time period for discovery only to the period in which named Plaintiffs' claims were processed, particularly where, as here, discovery to date reveals that [redacted]. *See* Dkt. 239-5 at 6-8; Dkt. 239-6 at 18-19.[6] As for Defendant's resistance to producing data before 2020, even to the extent Defendant is correct regarding the limitations period, discovery related to the challenged policy from the pre-liability period is still relevant. *See Coates*, 756 F.2d 524 at 540 (finding in the disparate treatment context that "courts have recognized that data on employment practices that occurred prior to the liability period do have some probative value."); *Paige v. California*, 291 F.3d 1141, 1149-50 (9th Cir. 2002) (finding admission of pre-liability data into evidence in a disparate impact case was appropriate where discriminatory policy alleged to be continuous). That is particularly the case here, where data from 2018 to 2020 will capture claims processing information allowing Plaintiffs to measure how [redacted], affect the measured disparate impact over time.

Finally, Defendant makes broad and vague objections that the requests require the creation of documents that do not currently exist and that they are overbroad, unduly burdensome, and irrelevant "insofar as any of the data sought . . . is incapable of being ascertained and provided

[6] The reference to pages 18-19 of Dkt. 239-6 are to the PDF pagination.

programmatically." Ex. 2 at 24-25, 27, 29-30. With respect to pre-existing information, Plaintiffs' data requests are based on records produced in discovery indicating State Farm collects the data, Ex. 1 (Exs. D-F to RFPs) (citing record evidence); Exs. 3, 4, Vaughn Decl. (the record evidence cited in the requests). The mere fact that Defendant may need to extract responsive data from a database does not mean it is information that does not currently exist. *See* Comm. Notes on Rules, 2006 Amendment, Fed. R. Civ. P. 34(a) ("Rule 34 applies . . . to information that is stored in a medium from which it can be retrieved and examined."). With respect to the manner in which the data would need to be extracted, Defendant provides no specific information as to how this would render the data irrelevant, overbroad, or unduly burdensome, and indeed, by caveating that the objection is made "insofar as" certain manners of production would be required, the Defendant appears to suggest the concern is speculative. Vague, unsupported, and speculative objections are insufficient. *Fudali v. Napolitano*, 283 F.R.D. 400, 403-04 (N.D. Ill. 2012) (rejecting an "uninformative litany" of overbreadth, undue-burden, and related objections where "[n]o specifics were given").

In sum, Defendant's objections to RFP Nos. 4 & 5 and to providing "[redacted]" and "[redacted]" data relating to the [redacted] tools in response to RFP No. 6 should be overruled.

*****

Defendant's objections to Plaintiffs' Sixth Set of RFPs are meritless. They should be overruled and Defendant should be ordered to produce the requested discovery.

Dated: August 17, 2026

Respectfully submitted,

/s/ *Amanda R. Vaughn*
**FAIRMARK PARTNERS, LLP**
Jamie Crooks (*Pro Hac Vice*)
Amanda Vaughn (*Pro Hac Vice*)
Michael Lieberman (*Pro Hac Vice*)
400 7th Street NW, Suite 304
Washington, DC 20004
Phone: (202) 417-7111
jamie@fairmarklaw.com
amanda@fairmarklaw.com
michael@fairmarklaw.com

**SANFORD HEISLER SHARP MCKNIGHT, LLP**
David Tracey (*Pro Hac Vice*)
Albert Powell (*Pro Hac Vice*)
Emma Stanton (*Pro Hac Vice*)
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 402-5667
dtracey@sanfordheisler.com
apowell@sanfordheisler.com
estanton@sanfordheisler.com

**CENTER ON RACE, INEQUALITY, AND THE LAW AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Deborah N. Archer (*Pro Hac Vice*)
139 MacDougal Street
New York, NY 10012
Phone: (212) 998-6882
deborah.archer@nyu.edu

*Counsel for Plaintiffs and the Proposed Classes*